IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

SEP 0 6 2017

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

| | |
|---|---|
| AMYEVERETT and TJELVAR EVERETT, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) File No. **1:17-CV-3392** |
| COBB COUNTY, GEORGIA; OFFICER JAMES W. HOPKINS, in his individual and official capacities; and LANI MESHELLA MILLER, in her individual capacity; | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

Plaintiffs Amy Everett (hereinafter "Mrs. Everett") and Tjelvar Everett (hereinafter "Mr. Everett") hereby bring this Complaint seeking damages and declaratory and injunctive relief for the violations of their First, Fourth, Tenth, and Fourteenth Amendment rights under the United States Constitution and corollary rights under the Georgia Constitution, and shows as follow:

1

## PARTIES, JURISDICTION, AND VENUE

1.     At all times relevant to this Complaint, Mrs. Everett was a citizen of the State of Alabama, resided in Hoover, Alabama, and had no physical presence in the State of Georgia.

2.     At all times relevant to this Complaint, Mr. Everett was a citizen of the State of Alabama, resided in Hoover, Alabama, and had no physical presence in the State of Georgia.

3.     Defendant Cobb County is a political subdivision of the State of Georgia that can sue and be sued, residing within the Atlanta Division of the Northern District of Georgia, and is subject to the jurisdiction and venue of this Court. Pursuant to Federal Rule of Civil Procedure 5(b)(1), Service of Process may be effected upon the County Attorney. If Defendant Cobb County does not acknowledge service, service may be perfected as allowed by law.

4.     Defendant Officer James W. Hopkins ("Defendant Hopkins") was at all times herein mentioned employed by the Cobb County Police Department. In that capacity, he was acting under color of state law during the relevant acts and omissions alleged herein. He is being sued herein in his individual capacity and in his official capacity. If

2

Defendant Hopkins does not acknowledge service, service may be perfected as allowed by law.

5.     Defendant Lani Meshella Miller ("Defendant Miller") was at all times herein mentioned a resident of the State of Georgia. She is being sued herein in her individual capacity as a private citizen who, through her actions, conspired with co-Defendants to deprive Plaintiffs Everett of their constitutionally protected civil rights. If Defendant Miller does not acknowledge service, service may be perfected as allowed by law.

6.     This action arises under the authority vested in this Court by virtue of 42 U.S.C. § 1983, 42 U.S.C. § 1985, 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1367.

7.     This Court has jurisdiction under 28 U.S.C §§ 1331 and 1343 because this case arises under 42 U.S.C.§ 1983 and the First, Fourth, Tenth, and Fourteenth Amendments to the United States Constitution. Pursuant to 28 U.S.C. §1343 (a)(1) and (3), this action is brought to redress injuries to Mr. Everett and Mrs. Everett's person and property and the deprivation, under color of Georgia law, statutes, ordinances, regulations, customs or usages of rights, privileges and/or immunities

secured by the Constitution of the United States, and/or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States. The Court has supplemental jurisdiction over Mr. Everett and Mrs. Everett's state-law claims under 28 U.S.C. § 1367.

8.  Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred in Cobb County, Georgia, which is within the Northern District of Georgia.

## FACTUAL ALLEGATIONS

9.  On January 1, 2015, Mr. Everett revealed to Mrs. Everett that he had engaged in an extramarital affair with Defendant Miller over the 2006-07 and 2007-08 school years.

10.  At the time of the affair, Plaintiffs Everett and Defendant Miller were teachers at the same school – Hiram High School in Hiram, Georgia.

11.  At the time of the affair, Plaintiffs Everett were married and had an infant son.

12.   At the time of the affair, Defendant Miller was married to her current husband, Clay Miller ("Mr. Miller").

13.   Defendant Miller and Mr. Everett taught in the science department at Hiram High School.

14.   Mrs. Everett taught in the English department at Hiram High School.

15.   Mr. Miller did not work at Hiram High School.

16.   Upon Mr. Everett's confession of his extramarital affair, Mrs. Everett attempted to contact Defendant Miller and Mr. Miller on January 2, 2015 and January 10, 2015, via Facebook Messenger; Mrs. Everett did not receive a response.

17.   On January 13, 2015, Mrs. Everett contacted Defendant Miller via telephone at her current place of employment, Harrison High School.

18.   Harrison High School is located in Kennesaw, Georgia and is part of the Cobb County School District.

19.   The conversation between Mrs. Everett and Defendant Miller began at 3:25 PM ET and lasted for approximately 36 minutes.

20.   During the aforementioned phone conversation:

A. Defendant Miller confirmed that she had engaged in a months-long extramarital affair with Mr. Everett.

B. Defendant Miller provided Mrs. Everett with details of the affair.

C. Defendant Miller told Mrs. Everett of her battle with depression and anxiety and that she took medication to "keep from crying all of the time;" Mrs. Everett had witnessed Defendant Miller crying while working at Hiram High School, sometimes in front of other teachers.

D. Mrs. Everett then suggested that Defendant Miller seek further professional help for her emotional problems before inserting herself into the marriage of the man working in the classroom next to her own.

E. Defendant Miller then stated that she does not have a classroom in the building at Harrison High School and works in a mobile unit, far away from other teachers.

F. Based on Defendant Miller's admission that she had engaged in a sexual affair with Mr. Everett, *even while*

> ***working with Mrs. Everett***, Mrs. Everett expressed concerns that Defendant Miller would engage, or had engaged, in other extramarital affairs with other married co-workers.
>
> G. Mrs. Everett stated that Defendant Miller's family and co-workers should be made aware of her acts.
>
> H. Defendant Miller then stated explicitly to Mrs. Everett: "Do what you are going to do, Amy."

21. Mrs. Everett later sent electronic communications to Defendant Miller's mother and cousin, in which Mrs. Everett exposed Defendant Miller's extramarital affair with Mr. Everett; Mrs. Everett did not receive a response.

22. On August 26, 2015, Mrs. Everett contacted several science department faculty members at Harrison High School, via a multi-party e-mail.

23. The e-mail addresses were found on a publicly-accessible website, and were published for the purpose of soliciting email communications from members of the public.

7

24. The intent of Mrs. Everett's email was to warn colleagues from out of state that Defendant Miller had engaged in an extramarital affair with Mr. Everett while Defendant Miller worked with the married couple at Hiram High School.

25. Detective Hopkins' confirmed this Mrs. Everett's purpose was to warn others about Defendant Miller's history, specifically of the possibility that other teachers' marriages could be at risk.[1] *See: Exhibit A, Criminal Warrant No. 15-w-7865*

26. On August 26, 2015, Defendant Hopkins sent an email to Plaintiffs Everett in which he demanded a cease in all "verbal communication through telephone, cellular phone, email, text message, voice mail, social media, and regular mail" from Plaintiffs Everett.

27. Defendant Hopkins also stated that Plaintiffs Everett were to "cease any communication with anyone personally or professional associated with Mr. or Mrs. Miller." *See: Exhibit B.*

28. Within his email to Plaintiffs Everett, Defendant Hopkins provided his contact information and offered to respond to any

---

[1] In Criminal Warrant No. 15-W-7865, Detective Hopkins states that Mrs. Everett sent emails "warning those individuals that the victim [Defendant Miller] would potentially have an affair with their husbands as well."

questions or concerns that Plaintiffs Everett had with regard to his demand for cease and desist of communications regarding Defendant Miller, her family, and/or Defendant Miller's colleagues.

28.   Defendant Hopkins' demand for cease of communication between Plaintiffs Everett and Defendant Miller included a deadline of "August 26, 2015 at the hour of 1:00 PM." *See: Exhibit B.*

29.   At the time of the actions within the course and scope of this Complaint, Defendants were all domiciled within the State of Georgia.

30.   At the time of the actions within the course and scope of this Complaint, Plaintiffs Everett were both domiciled in the State of Alabama.

31.   The State of Georgia is in the Eastern Time Zone of the United States; the State of Alabama is in the Central Time Zone of the United States.

32.   Defendant Hopkins' demand specified a deadline of 1:00 PM, but was silent on the time zone; Plaintiffs Everett reasonably concluded that such deadline meant to apply their time zone, CST.

33.   From their home in Alabama, Plaintiffs Everett sent one final email notifying Defendant Miller, on a pro se basis, of status as a

9

witness in anticipation of appearing at court to testify in a divorce suit. *See: Exhibit C.*

34.    The email was sent from Alabama at 12:36 PM CST.

35.    In an effort to sort the matter out, Mr. Everett followed the instructions as provided in Defendant Hopkins' email, and attempted to contact Defendant Hopkins with the telephone numbers provided.

36.    Mr. Everett attempted contact with Defendant Hopkins on seven occasions, to wit:

Friday, September 4, 2015

A.    From 205-405-8462 at 2:06 PM to 770-590-5779.

B.    From 205-405-8462 at 2:06 PM to 678-327-8601.

C.    From 205-405-8462 at 2:07 PM to 770-590-5779.

D.    From 205-405-8462 at 2:17 PM to 678-327-8601.

E.    From 205-405-8462 at 3:07 PM to 770-590-5779.

Monday, September 7, 2015

F.    From 205-405-8462 at 8:09 AM to 770-590-5779.

Tuesday, September 8, 2015

G.    From 205-405-8462 at 7:14 AM to 770-590-5779.

37.    Defendant Hopkins did not answer, accept, or return any of Mr. Everett's seven attempts at contact.

38.    On Tuesday, September 8, 2015, at 7:18 AM, Defendant Hopkins answered an *eighth telephone call* placed from Mr. Everett, and a conversation ensued.

39.    During the course of the aforementioned telephone conversation, the following occurred:

> A.    Defendant Hopkins' *first question* to Mr. Everett was whether or not he had an affair with Defendant Miller.
>
> B.    Mr. Everett confirmed to Defendant Hopkins that he had engaged in the extramarital affair with Defendant Miller.
>
> C.    Defendant Hopkins' immediate response to Mr. Everett was the following: "Well, it's too late now; I've already obtained the warrant."

40.    Defendant Hopkins possessed a duty to revisit the warrant's application and update the fact therein to include the fact that Mr. Everett had confirmed an extramarital affair had occurred between he

and Defendant Miller; alternatively, Defendant Hopkins possessed the duty to disclose the same to the assigned solicitor.

41. Defendant Cobb County is responsible for the training of its law enforcement officers; Defendant Cobb County is responsible for any lack of training regarding the requirements of its officers' duty to supply prosecutors and/or solicitors with newly-exculpatory fact.

42. Defendant Cobb County's training also covers Cobb County's Police Department and Internal Affairs Division, the officers of which are charged with the responsibility of enforcing training and disciplining officers who do not fulfill the duties as required; upon notification of Defendant Hopkins' disregard and/or failure to fulfill his duty to notify solicitors assigned to the case of critical exculpatory facts, said Internal Affairs Division declined to find any fault with Defendant Hopkins' disregard and/or failure to fulfill their duty to notify solicitors of critical exculpatory facts discovered after his application for warrant.

43. The criminal case Mrs. Everett covered communications regarding an extramarital affair; the question posited by Defendant Hopkins to Defendant Miller as to was there an actual affair that happened was therefore material and directly relevant to the matter –

any answer to this question was therefore critical the case, and impacted the resulting investigation and charge.

44.   Within three hours of Mr. Everett's telephone conversation with Defendant Hopkins, Mrs. Everett was arrested at her home in Hoover, Alabama, by the Jefferson County Sheriff's Office Warrant Division. When Mrs. Everett was arrested, she was in the middle of teaching a lesson to her students; Mrs. Everett is a certified teacher who teaches English for an online private school.

45.   When Mrs. Everett was arrested, she was interrupted in the middle of teaching a lesson to her students; Mrs. Everett is a certified teacher who teaches English for an online private school.

46.   Mrs. Everett was interrupted by a knock at her residence door; she was taken from her home in handcuffs upon answering her door, was led in handcuffs to a Jefferson County Sheriff's Office vehicle parked some distance from Mrs. Everett's house, thus allowing neighbors and passers-by to witness Mrs. Everett's arrest, and was transported to the Jefferson County Jail in downtown Birmingham, AL for detention intake processing.

47.   Once at the Jefferson County Jail, Mrs. Everett learned that she was being charged as a "Fugitive from Justice," a felony, based on Cobb County's arrest warrant for "Harassing Communications," a misdemeanor.

48.   Although Mrs. Everett had no experience with arrests, jails, or criminal procedures, Mrs. Everett has been an English teacher and college English instructor for many years; this fact led her to question how she could be a "Fugitive" when she was never physically present in Georgia and therefore, did not "flee" Georgia.

49.   Mrs. Everett's question was later shown to be valid[2].

50.   Mrs. Everett was told by Jefferson County Sheriff's Office deputies that Cobb County prosecutors had sought official for enforcement of the arrest warrant issued in Cobb County.

51.   Mrs. Everett was then informed that Cobb County's documentation labeled her as a "Fugitive from Justice," and Jefferson

_____

[2]Gee v. Kansas, 912 F.2d 414, 418 (10th Cir. 1990) ("A fugitive from justice is a person who is 1) suspected of or has been convicted of committing a crime, 2) sought by the jurisdiction so that the jurisdiction may subject the person to its criminal justice system, and 3) has left the jurisdiction and is found within the boundaries of another.") (citations omitted); Moncrief v. Anderson, 342 F.2d 902, 904 (D.C. Cir. 1964) ("Fugitivity means presence in the demanding state when the crime was allegedly committed."); Daugherty v. Hornsby, C.C.A.5 (Ga) 1945, 151 F.2d 799("To be a 'fugitive from justice,' one must have been personally present within demanding state when crime was committed.")

County was constitutionally bound to process the extraditions of "fugitives;"[3] however, a request for rendition based on the constitutional provision and its implementing legislation is ***limited to the extradition of a fugitive from justice found in the asylum state***.[4]

52.    Plaintiffs Everett later learned that Defendant Hopkins' criminal warrant application, signed by Magistrate Hugh Robinson, ***omitted the fact*** that Mrs. Everett was physically located in Alabama, thus creating the belief that Mrs. Everett had a physical presence in Georgia.

53.    Section 6 of the Uniform Criminal Extradition Act was designed to cover situations not clearly reached by the constitutionally-based extradition laws; that is, U.C.E.A. allows for the surrender and rendition of persons whose acts in one state are alleged to have violated a law in another state.

54.    Mrs. Everett was known by Defendant Hopkins to live in Alabama; U.C.E.A. § 6 is known as Alabama Code § 15-9-34 (2015).

---

[3]The Extradition Clause indeed creates ***a mandatory duty*** for states to deliver up fugitives upon proper demand with no discretion residing in the governor or courts of the asylum state. See Puerto Rico v. Branstad,     U.S.     , 97 L. Ed. 2d 187, 107 S. Ct. 2802 (1987).

[4]Jackson v. Pittard, 211 Ga. 427, 428 (86 SE2d 295) (1955); McFarlin v. Shirley, 209 Ga. 794, 798-799 (76 SE2d 1) (1953).

55. Alabama Code § 15-9-34 (2015) provided that, "On demand of the executive authority of any other state, the Governor of this state may also surrender any person in this state charged *on indictment* found in such other state with committing an act in this state intentionally resulting in a crime in such other state, and the provisions of this division not otherwise inconsistent shall apply in such cases, notwithstanding that the accused was not in that state at the time of the commission of the crime and has not fled therefrom."

56. Mrs. Everett was charged with a misdemeanor in Cobb County, an offense *not charged by indictment*; rather, an offense charged by accusation.

57. Had Defendant Hopkins stated the truth when requesting the arrest warrant – that Mrs. Everett was accused of committing acts outside of Georgia to create an effect that violated law within Georgia – the correction would have resulted in denial of any authorization to arrest Mrs. Everett, even as a non-fugitive.[5]

---

[5] "A charge on information and affidavit is insufficient to support the extradition of an accused where the charge was not founded on an indictment in the state requesting the extradition and the accused was not present in that state at the time the crime was allegedly committed." Tolbert v. State, 54 Ala. App. 381, 308 So. 2d 740, 1975.

58.     Defendant Hopkins' concealment of facts intentionally misled every state actor in both Georgia and Alabama to believe Mrs. Everett was physically present in Georgia when she was not.

59.     As a direct result of Defendants Miller and Hopkins' acts, Mrs. Everett was forced to endure a humiliating process for detention.

60.     Mrs. Everett was strip-searched at the Jefferson County Jail and was subsequently required to undergo a second strip-search, "for training purposes."

61.     Mrs. Everett was told by the Jefferson County Jail's on-duty nurse that every scar on Mrs. Everett's body needed to be documented.

62.     The Jefferson County's Jail's on-duty nurse then stated that Mrs. Everett would "probably get her face bashed in" upon entering the cell block, and Jefferson County Jail staff would need to know which scars were present on Mrs. Everett's body before she entered their facility on September 8, 2015.

63.     Mrs. Everett was processed and jailed as a "Fugitive from Justice," a felony-level offense. Unlike those persons accused of felonies, "Fugitives from Justice" are denied any opportunity for release on bond.

64.   After learning of his wife's arrest, incarceration, and the impossibility for her release on bond, Mr. Everett was compelled by circumstance to make an unscheduled trip from Birmingham, Alabama to Marietta, Georgia, to seek legal help for his wife.

65.   On September 8, 2015, at approximately 5:00 PM, Mr. Everett met with defense attorney Melvin Nash ("Mr. Nash") in Marietta, Georgia and discussed Mrs. Everett's arrest as a "Fugitive from Justice" based on Cobb County's misdemeanor charge of "Harassing Communications."

66.   During the aforementioned meeting:

A.   Because of the circumstances of Mrs. Everett's arrest, as told to him by Mr. Everett, Mr. Nash expressed doubt that Mrs. Everett was charged with only a misdemeanor.

B.   Mr. Nash told Mr. Everett that his fee for handling Mrs. Everett's case would be $4000.

C.   Mr. Nash stated that his fee would include his next-day appearance before a Cobb County judge in which he would request that the warrant used to detain Mrs.

Everett be lifted, thus releasing Mrs. Everett from the Jefferson County Jail.

D.   Mr. Nash told Mr. Everett that Jefferson County could keep Mrs. Everett incarcerated "for forever and a day" on a "Fugitive from Justice" warrant.

E.   Mr. Everett paid Mr. Nash $4,000.

67.   On September 9, 2015, Mr. Nash was able to have Mrs. Everett's warrant lifted; however, the unusual, perhaps, unprecedented, circumstances surrounding Cobb County's initial demand for the arrest and extradition of Plaintiff Mrs. Everett, immediately followed by Cobb County's retraction of the "promise to extradite," caused delays in the processing of Mrs. Everett's release from jail.

68.   Mrs. Everett was released at approximately 10:30 PM on September 9, 2015, after having spent approximately 36 hours in jail on a felony charge of "Fugitive from Justice."

69.   Per the conditions of Cobb County's lifting of the warrant, on September 10, 2015, Plaintiffs Everett drove from their home in Hoover, Alabama to the Cobb County Adult Detention Center, and Mrs. Everett turned herself in to authorities.

70.    Mrs. Everett spent approximately eight hours at the Cobb County Detention Center before her release on bond.

71.    The fees incurred for the bond totaled approximately $600.

72.    For the time that Mrs. Everett spent unlawfully incarcerated and detained, Mr. Everett and the Plaintiffs' two elementary-aged children were deprived of Mrs. Everett's presence and utility, for any and all purposes possible, including the following:

        A.    Mrs. Everett was unable to pick her first-grade daughter and fourth-grade son up from school, as she did every day.

        B.    Mrs. Everett was unable to fulfill her duties to supervise and coach her daughter's 20-member cheerleading squad.

        C.    Mrs. Everett was unable to fulfill her work-related duties as a high-school English teacher.

        D.    Mrs. Everett was unable to fulfill her work-related duties as an adjunct university English instructor.

73. On March 11, 2016,the misdemeanor charge of Harassing Communications was dropped by prosecution and resolved in favor of Mrs. Everett.

74. In preparation of defense for the case, Plaintiffs Everett paid $3,500 to attorney Cynthia Counts for consultation and an initial written draft of a pleading designed to move the case's court of record to dismiss the charge of "Harassing Communications."

75. Pursuant to requirements of due process rights, the prosecutor was required to issue to Mrs. Everett and her defense attorney Mr. Nash a set of evidence, facts, statements, police narratives, and other material that shall be hereinafter described as the "State's discovery material."

76. Upon review of Defendant Hopkins' investigative report in the State's discovery material, Plaintiffs Everett learned that *Defendant Miller lied repeatedly throughout the course of this investigation*. Detective Hopkins' investigative report shows the following:

> A. Defendant Miller reported that she had never engaged in an affair with Mr. Everett;

On 08/25/2015 the victim, Ms. Lani Miller, came to Pct 1 to report that she had been receiving multiple emails from the suspect, Amy Everett. She explained that the emails were crude in their nature and accused Ms. Miller of having an affair with Ms. Everett's husband, Tjelvar Everett. Ms. Miller was adamant that she had no such affair.

> B. Defendant Miller reported that Mrs. Everett, "had come to the mistaken idea that Mrs. Miller and the suspect's husband had an affair";

NARRATIVE
Ms. Miller came into Pct 1 to report that she had been receiving harassing emails as well as posts on Face Book for the past several months from the suspect, Ms. Everette. She advised that she and the suspect had worked together at a school in Paulding County several years ago and that the suspect had come to the mistaken idea that Ms. Miller and the suspect's husband had an affair. Ms. Miller provided

> C. Defendant Miller reported that there was "absolutely no truth at all" to Mrs. Everett's accusations that Defendant Miller had an affair with Mr. Everett;

> D. When asked if there was any validity to Mrs. Everett's accusations, Defendant Miller reasserted, "[t]hat she had not had an affair with Mr. Everett at any time."

I asked Ms. Miller if there was any truth to the accusations made by Ms. Everett. Ms. Miller stated that there was absolutely no truth to it at all. I explained to Ms. Miller that whether she did or did not have the affair had no bearing on the fact that Ms. Everett had been harassing her, but that I needed to know simply to keep the facts as clean as possible for the case. She reiterated that she had not had an affair with Ms. Everett at any time.

77. Upon review of Defendant Hopkins' investigative report in the State's discovery material, Plaintiffs Everett also learned that *Defendant Miller concealed facts relevant to the investigation*by

22

neglecting to report the telephone conversation between herself and Mrs. Everett.

78.    The aforementioned telephone conversation was *the one and only communication* that Defendant Miller had with both herself and Mrs. Everett both participating, yet Defendant Miller intentionally concealed this communication when she initiated her complaint against Mrs. Everett for "Harassing Communications," a statute that had long been named "Harassing *Phone Calls*" up until July 1, 2015.

79.    A 36-minute telephone conversation between two adults must be interpreted as "consensual;" at any time, Defendant Miller could have terminated the phone call.

80.    During this consensual telephone conversation, Defendant Miller confirmed and detailed her extramarital affair with Mrs. Everett's husband, Mr. Everett; additionally, Defendant Miller did not request or demand that Mrs. Everett stop communicating with her.

81.    One can reasonably conclude that Defendant Miller concealed the one and only communication that she had with Mrs. Everett because acknowledging the 36-minute conversation would not sustain her statements to Defendant Hopkins as truthful.

82.   Defendant Miller's emphatic and repeated denials of having an affair with Mr. Everett would have been marred by the admission that Defendant Miller had spent 36 minutes, while in her classroom no less, talking to Mrs. Everett on the telephone, even after having received two profanity-laden messages via Facebook Messenger in which Mrs. Everett expressed her disdain for Defendant Miller and her actions.

83.   No reasonable person would believe that any adult would spend one minute (let along 36 minutes)on a phone call with a woman who had "the mistaken idea" that a sexual affair had occurred between herself and the caller's husband, all the while being called vulgar names; this is exactly why Defendant Miller made the conscientious decision to withhold this information from Defendant Hopkins' investigation.

84.   Based on facts and beliefs, Plaintiffs Everett believe that Defendant Miller concealed the phone conversation from Detective Hopkins for the following possible reasons:

        A.   The acknowledgement of the phone conversation would have contradicted Defendant Miller's statements and

made clear that she was not being forthright; this may have detracted law enforcement's sympathy toward her.

B.    The acknowledgement of the phone conversation may have led to an actual investigation by Cobb County law enforcement, and a proper investigation would have revealed that Mrs. Everett's accusations and warnings were valid; not only would this cause outside sympathy toward Defendant Miller to wane, Defendant Miller's immoral acts would have been completely exposed for all to witness.

C.    The acknowledgement of the phone conversation would have supported Mrs. Everett accusations and Mrs. Everett's First Amendment right to warn people of dangers, two things that Defendant Miller desperately wanted to eradicate.

85.    Defendant Miller provided Defendant Hopkins with false statements while simultaneously concealing information being sought

25

by a Law Enforcement Officer during the course and scope of an investigation. *See: Exhibit D, Case Supplemental Report dated 9/3/15.*

86.    A person who knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact; makes a false, fictitious, or fraudulent statement or representation during an official police investigation is guilty of violating O.C.G.A. § 16-10-20. See Sneiderman v. State, 336 Ga. App. 153, 784 S.E.2d 18 (2016).

87.    Unlike Sneiderman who was sought by prosecution for questioning, Defendant Miller ***obstructed the very investigation that she initiated.***

88.    Defendant Miller had knowledge aforethought that her false statement to Defendant Hopkins would influence Defendant Hopkins in such a way as to possibly alter the outcome of the investigation, and with that knowledge, did intend to make a false statement to a police officer in order to conceal underlying material facts surrounding the allegations of "Harassing communications."

89.    Defendant Miller's lies and omissions demonstrate that she willfully subjected Mrs. Everett to strip search, incarceration, financial stress, embarrassment, and emotional injuries that are still present two

years later; however, the worst part of Defendant Miller's actions are that they caused the instantaneous extraction of Mrs. Everett from her life and the lives of her children as they had all known them to be.

90.    Out of sheer embarrassment for her own life's decisions and in an effort to preserve whatever pretense she had established among co-workers and family, Defendant Miller decided to once again make Mrs. Everett and her children the victims. Defendant Miller decided that her ability to manipulate and lie was so great she would be able convince law enforcement that the victim was actually the victimizer, and that is exactly what Defendant Miller accomplished with the help of a Defendant Hopkins.

91.    Upon review of Defendant Hopkins' investigative report in the State's discovery material, Plaintiffs Everett learned that **Defendant Hopkins intentionally violated Georgia law in his quest to chill Mrs. Everett's constitutionally protected speech.**

92.    Detective Hopkins' investigative report establishes that Defendant Hopkins knew that Mrs. Everett lived and worked in Alabama.

93. Neither Defendants Hopkins nor Miller asserted that Mrs. Everett had been physically present in the State of Georgia.

94. Because Mrs. Everett had *no physical presence* in the State of Georgia, any act, whether lawful or unlawful, committed by Mrs. Everett was not within Detective Hopkins' jurisdiction to investigate or regulate.

95. The Due Process Clause of the Fourteenth Amendment provides the most obvious restrictions on states wishing to legislate against persons located outside of its territorial jurisdiction. While application

96. "While no United States Supreme Court case has discussed the application of the Due Process Clause in the criminal legislative context, it seems apparent that if the Clause restricts the power of the state in the civil context, where the imposition on a defendant might be a judgment for damages, it certainly restricts the state in the criminal context, where the defendant might have his liberty restrained." See Kurtz, *Criminal Offenses and Defenses in Georgia* (2016) p. 1005.

97. "Probably the basic reason why the Supreme Court of the United States has not had to face squarely the issue of Due Process

Clause's relationship to extraterritorial application of penal laws is the ***traditional restraint exercised by the states in claiming and exercising such jurisdiction.***" See Kurtz, *Criminal Offenses and Defenses in Georgia* (2016) p. 1005.

98. This is also supported by<u>Anderson v. Deas, 279 Ga. App. 892, 893, 632 S.E.2d 682, 684 (2006)</u> and <u>Huggins v. Boyd, 304 Ga. App. 563, 565, 697 S.E.2d 253, 255 (2010)</u> where the conduct giving rise to the offense of stalking occurs at the place where the maker of the call speaks into the telephone, even when the offense is deemed to occur at the place where the communication was sent or where the communication was received.

99. Detective Hopkins' investigative report establishes that Defendant Hopkins knew that Mrs. Everett was a school teacher.

100. According to O.C.G.A. § 17-4-40(c), "Any warrant for the arrest of a peace officer, law enforcement officer, teacher, or school administrator for any offense alleged to have been committed while in the performance of his or her duties may be issued only by a judge of a superior court, a judge of a state court, or a judge of a probate court."

101. Defendant Hopkins wrote that he, "confirmed...Ms. Everett is a special education teacher at [Barrett Elementary School in Birmingham, Alabama]."

102. Additionally, Mrs. Everett has held valid Georgia administrator and teacher certifications in English, Social Sciences, and Special Education since 2003. This information is easily accessed through the Georgia Professional Standards Commission's website at http://www.gapsc.com/Certification/Lookup.aspx.

103. The offense was alleged to have been committed while Mrs. Everett was in the performance of her duties.

104. The warrant application brought before Judge Robinson states that Mrs. Everett, "did, between 1/15/2015 at 7:32am and 8/26/2015 at 4:00pm... commit the offense of Harassing Communications..."

105. On Thursday, 1/15/2015 at 7:32 AM, a teacher would have been "in the performance of his or her duties."

106. On Wednesday, 8/26/2015 at 4:00 PM, a teacher would have been "in performance of his or her duties."

30

107. Mrs. Everett's email to the several colleagues of Defendant Miller was done so for the purposes of "protected concerted workplace activity," specifically designed to mitigate a threat in the workplace.

108. Georgia law is clear that Magistrate Hugh Robinson had **no authority** to issue an arrest warrant for Mrs. Everett.[6]

109. Although Georgia magistrates "do issue the great bulk of arrest warrants throughout the state, [a] couple of limitations on the authority of magistrates should be noted. Only superior court, state court, or probate court judges may issue a warrant against a peace officer, law enforcement officer, teacher, or school administrator for an offense to have been committed in the performance of his or her duties" (Georgia Magistrate Handbook, Purdom, 2015, §9:1).

110. Defendant    Hopkins'    criminal    warrant    application intentionally conceals relevant information gleaned from his own investigation; that is, Mrs. Everett was not physically present in the State of Georgia for the duration of the case, and Mrs. Everett was a

---

[6] Georgia state law is clear that magistrates have no lawful authority to issue arrest warrants for law enforcement officers, judges, [teachers, and school administrators] accused an offense alleged to have been committed during the performance of work duties. O.C.G.A. § 17-4-40(c). O'Brien v. Polk Cty., No. 4:05-CV-221-RLV, 2006 WL 173633, at *1 (N.D. Ga. Jan. 20, 2006)

school teacher, two statements of fact that would have prevented Magistrate Hugh Robinson from issuing the arrest warrant.

111. A warrant issued by a magistrate who is unqualified under relevant state law is void ab initio, thus invalidating the search under the Fourth Amendment. U.S.C.A. Const.Amend. 4.

112. Toknowinglyorrecklesslyomitfromarrestaffidavit information which, if included, would have vitiated probable cause violates arrestee's Fourth and Fourteenth Amendment rights. Bruning v. Pixler, C.A.10 (Colo.) 1991, 949 F.2d 352, certiorari denied 112 S.Ct. 1943, 504 U.S. 911, 118 L.Ed.2d 548.

113. Defendant Hopkins had alleged within his investigation to have tried to contact Plaintiffs Everett by a particular cell phone number, 205-405-8462, and that the service was disconnected.

114. Plaintiffs Everett had been making use of said aforementioned particular cell phone number, 205-405-8462, for close to a decade without interruption of services.

115. The very same cell phone number that Defendant Hopkins claimed was disconnected is the very same particular cell phone

number, 205-405-8462, that Plaintiffs Everett had been making use of, as alleged in the previous paragraph no. 116.

116. The very same cell phone number that Defendant Hopkins claimed was disconnected is the very same particular cell phone number that Plaintiffs Everett had used when calling Defendant Hopkins seven times, as alleged in the previous paragraph nos. 29-30.

117. Plaintiffs Everett inquired into the circumstances surrounding the felony-level extradition upon the misdemeanor charge associated with this case.

118. Plaintiffs inquired into both policy and laws regarding mandated interstate extradition in both the jurisdictions of Jefferson County, Alabama and Cobb County, Georgia.

119. It was revealed to Plaintiffs Everett that Cobb County Sheriff's Department policy regarding suspects or defendants non-domiciled in Cobb County and not present within Cobb County are uniformly extradited on felony-level fugitive from justice requests; misdemeanor charges levied are treated the same as felony charges.

120.  Plaintiff Amy Everett was required to pose for a mugshot as part of the booking and bonding process when in Jefferson County, Alabama; Mrs. Everett was labeled with a felony-level charge.

121.  Plaintiff Amy Everett's mugshot picture was obtained and posted on a public website designed to humiliate defendants into paying for their mugshots to be removed from publication onto the website. This law applies to only those accused of committing felonies.

122.  Plaintiffs' son was doing a research project assigned in-class that involved searching for Plaintiff Amy Everett's name on the Internet.  Plaintiffs' son discovered an online copy of Plaintiff Amy Everett's mugshot online.  This search was done for in-class school work, and multiple people discovered that Plaintiff had been arrested.

123.  Plaintiff Amy Everett's clean arrest record has been forever blemished as a result of this false charge; the only remedies the State offers for false charges is a records *restriction,* which means the false and malicious arrest still remains in records.

124.  O.C.G.A. § 16-11-39.1 is a statute within the laws of the State of Georgia, and includes the following provision designated to sort out issues of jurisdiction:

"(c)   The offense of harassing communications shall be considered to have been committed in the county where:

(1)   The defendant was located when he or she placed the telephone call or transmitted, sent, or posted an electronic communication; or

(2)   The telephone call or electronic communication was received."

125. Plaintiffs Mrs. Everett are currently both domiciled and physically present within the borders and jurisdiction of the State of Alabama, and was so at all times except when Mrs. Everett was required to turn herself in for booking in order to complete the resolution of the extradition by way of appearance into the State of Georgia.

35

## CAUSES OF ACTION

### Count I:

### First Amendment Violation Under 42 U.S.C. § 1983

126. The allegations of paragraphs 1 through 126 are incorporated into the First Claim for Relief as though fully set forth herein.

127. Senate Bill 72, Act 40, which became effective on July 1, 2015,dramatically changed the statutory language of O.C.G.A. § 16-11-39.1.

128. Although Act 40, SB 72 states that "the Act changes the nature of harassing phone calls to providefor modern technology of texting and other electronic communication," O.C.G.A. § 16-11-39.1 (2015) contains additional revisions that amends the statutory language O.C.G.A. § 16-11-39.1 (2014.)

129. O.C.G.A. § 16-11-39.1 (2015) amends the title of the statute from "Harassing Phone Calls" to "Harassing Communications."

130. Absent from O.C.G.A. § 16-11-39.1(2014), O.C.G.A. § 16-11-39.1(e) explicitly states, "This Code section shall not apply to constitutionally protected speech."

131. Constitutionally protected speech has included protected concerted workplace related expressions, protests, and communications with express purposes such as to issue warnings.

132. In Defendant Hopkins' criminal warrant application for Plaintiff Mrs. Everett's arrest, Defendant Hopkins states explicitly that Plaintiff Mrs. Everett's communications were sent to Defendant Miller's "supervisor and co-workers," for the purpose of "warning those individuals that" Defendant Miller "would potentially have an affair with their husbands as well" (just as Defendant Miller had done while working alongside Plaintiff Mrs. Everett.) See Cobb County Criminal Warrant No. 15-W-7865.

133. The purpose of Plaintiff Mrs. Everett's communication was to warn against potential damages and to protest extramarital affairs.

134. The communication did not meet the definition of criminal purpose as stated within the statute.[7]

135. The purpose of Plaintiff Mrs. Everett's communication, as stated in Defendant Hopkins' own words, shows that Plaintiff

_See_ Towell v. Steger, 154 S.W.3d 471, 475 (Mo. Ct. App. 2005) ("To find a 'course of conduct' to have no legitimate purpose, we must find that the actions were not sanctioned by law or custom, were not lawful, or allowed."); State v. Porelle, 822 A.2d 562, 566 (N.H. 2003) ("A legitimate purpose is onethat is genuine or 'accordant with law.'")

Mrs.Everett's purpose was to warn Defendant Miller's current co-workers at Harrison High School of Defendant Miller's history of engaging in adulterous affairs with co-workers, as Defendant Miller had done while working at Hiram High School, even while working alongside, Plaintiff Mrs. Everett.

136. Defendant Hopkins' direct quotation of Plaintiff Mrs. Everett's use of the words "cunt," "slut," and "whore," in the criminal warrant application for Plaintiff Mrs. Everett's arrest confirms Defendant Hopkins' misapplication of O.C.G.A. § 16-11-39.1 as applied to Plaintiff Mrs. Everett. See Cobb County Criminal Warrant No. 15-W-7865.

137. McKenzie v. State, 279 Ga. 265, 626 S.E.2d 77 (2005)held that the statute subjecting telephone users to prosecution "if the content of users' expression was found to be obscene, lewd, lascivious, filthy, or indecent was an overbroad infringement on First Amendment guarantee of freedom of speech."

138. Defendant Hopkins's written statements show that he relies upon Plaintiff Mrs. Everett's use of the "obscene, lewd, lascivious, filthy,

or indecent" words "cunt," "slut," and "whore," to sustain a violation of O.C.G.A. § 16-11-39.1, a clear violation of First Amendment rights.

139. Although definitions of terms are not provided in O.C.G.A. § 16-11-39.1, according to the rules of statutory interpretation, "Any portion of a body of laws may be invoked to ascertain meaning of words and phrases used in another part." Royal Indem. Co. v. Agnew, 1941, 66 Ga.App. 377, 18 S.E.2d 57.

140. The statute directly preceding O.C.G.A. § 16-11-39.1 Harassing Communications is O.C.G.A. § 16-11-39 Disorderly Conduct.

141. O.C.G.A. § 16-11-39(4) provides that a violation of the statute occurs when a person, "without provocation, uses obscene and vulgar or profane language in the presence of or by telephone to a person under the age of 14 years which threatens an immediate breach of the peace."

142. O.C.G.A. § 16-11-39(4) punishes a person's use of "obscene and vulgar or profane language" when used "in the presence of or by telephone with" when the following conditions exist:

> A. The recipient of the language is "a person under the age of 14 years."

39

B.    The communication, whether in person or by telephone, is "unprovoked" by the "person under the age of 14 years."

C.    The "unprovoked" communication to the "person under the age of 14 years" "threatens an immediate breach of the peace."

143.    As provided in the statutory text of O.C.G.A. § 16-11-39, the statute adjacent O.C.G.A. § 16-11-39.1, Plaintiff Mrs. Everett's use of "obscene and vulgar or profane language" when used "in the presence of or by telephone with" Defendant Miller and all other recipients of Plaintiff Mrs. Everett's communications, would be a clear violation of Plaintiff Mrs. Everett's right to free speech.

144.    TheFirst Amendment allows people to "post messages on the Internet and [to] send out e-mails" Snyder v. Phelps, 562 U.S. 443 (2011)using terms that are "uninhibited," "vehement," and "caustic." New York Times Co. v. Sullivan, 376 U. S. 254, 270 (1964).

145.    The fact that the statute, as-applied to Plaintiff Mrs. Everett, violated the First Amendment was clearly established law of which a reasonable law enforcement officer would have known.  Indeed,

the United States Supreme Court has held that under the First and Fourteenth Amendments, the government may not criminalize the "simple" utterance of a "single... expletive." Cohen v. California, 403 U.S. 15, 26 (1971).

146. In violating Mrs. Everett's rights under the First Amendment, Defendant Hopkins directly and proximately caused her to suffer unlawful arrest, detention, extradition, strip-search of her person, anguish, embarrassment, and humiliation.

147. Defendant Cobb County may be held liable for the violation of Mrs. Everett's First Amendment rights pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978). Monell holds that a municipality can be sued for damages under 42 U.S.C. 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or *decision* officially adopted by that body's officers." Id. at 659 (emphasis added).

148. Defendant Cobb County and its officers had a policy of arresting individuals primarily under the disorderly conduct statute for cursing, but have also included Harassing Communications. This policy was subsequently implemented as the sole basis for Plaintiff

41

Mrs.Everett's unlawful seizure, arrest, strip-search, imprisonment, unlawful extradition detention, and prosecution.

149. Absent from O.C.G.A. § 16-11-39.1(2014), O.C.G.A. § 16-11-39.1(c)(1)(2)provides, that "the offense of harassing communications shall be considered to have been committed in the county where:

> 1. The defendant was located when he or she placed the telephone call or transmitted, sent, or posted an electronic communication; or
>
> 2. The telephone call or electronic communication was received."

150. According to the rules of statutory interpretation a statute presumes to have no extraterritorial application (*statuta suo clauduntur territorio nec ultra territorium disponunt*).

151. This is also supported by Anderson v. Deas, 279 Ga. App. 892, 893, 632 S.E.2d 682, 684 (2006) and Huggins v. Boyd, 304 Ga. App. 563, 565, 697 S.E.2d 253, 255 (2010) where the conduct giving rise to the offense of stalking occurs at the place where the maker of the call speaks into the telephone, even when the offense is deemed to occur at

the place where the communication was sent or where the communication was received.

152. It is well settled that "no state or nation can, by its laws, directly affect, bind, or operate upon property or persons beyond its territorial jurisdiction," and "a statute which purports to have such operation is invalid." Sayles v. Russell, 247 S.C. 506, 508, 148 S.E.2d 373, 374 (1966).

153. Plaintiff Mrs. Everett is a resident of Alabama, was not in the State of Georgia at any time since moving from Georgia in 2010, and these facts were known by Defendant Hopkins and confirmed upon review of his investigative documentation.

154. Defendant Hopkins' misapplication of a Georgia statute upon Plaintiff Mrs. Everett, an Alabama resident who had no physical presence within the territorial jurisdiction of Georgia, resulted in a deprivation of Plaintiff Mrs. Everett's First Amendment rights.

## Count II:

## First Amendment Violation Under 42 U.S.C. § 1983

## (Retaliation)

155. The allegations of paragraphs 1 through 155 are incorporated into the Second Claim for Relief as though fully set forth herein.

156. On September 8th, 2015, Defendant Hopkins actively initiated and procured the extradition for arrest and prosecution of Mrs. Everett in a criminal action in retaliation for her vocal protest and criticism of a County teacher's extramarital affair.

157. Defendant Hopkins acted without even jurisdiction or arguable probable cause in initiating and procuring the extradition and arrest of Mrs. Everett.

158. Defendant Hopkins acted with malice in initiating and procuring the extradition and arrest of Mrs. Everett.

159. Defendant Hopkins' retaliatory acts violated Mrs. Everett's rights under the First Amendment of the United States Constitution.

160. In violating Mrs. Everett's rights under the First Amendment to the United States Constitution, Defendant James Hopkins directly and proximately caused her to suffer unlawful extradition, arrest, detention, strip-search of her person, anguish, embarrassment and humiliation.

161. Defendant Cobb County may be held liable for the unconstitutional retaliation against Mrs. Everett pursuant to <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978) because Defendant Cobb County and its officers had a policy of arresting individuals under the disorderly conduct statute (including the related statute of Harassing Communications) in retaliation for the use of profanity. This policy was subsequently implemented as the sole basis for Mrs. Everett's unlawful seizure-by-extradition, arrest, imprisonment, and prosecution.

## Count III:

## Fourth Amendment Violation Under 42 U.S.C. § 1983

162. The allegations of paragraphs 1 through 162 are incorporated into the Third Claim for Relief as though fully set forth herein.

163. Defendants Hopkins violated Mrs. Everett's Fourth Amendment right to be free of unlawful search and seizure of the person by levying charges against a defendant beyond the scope and bounds of the jurisdiction of his agency, much less that of his agency's

domiciled state, that would lead to Mrs. Everett's arrest without even arguable probable cause to believe that she had committed a crime.

164. That there can be no arguable probable cause to arrest for a nonexistent crime was clearly established law of which a reasonable law enforcement officer would have known. That the allegations occurred from a state territory completely outside the bounds, jurisdiction, and scope of the State of Georgia. That the reported crime was nonexistent follows from the fact that the application of the Harassing Communications statute to Mrs. Everett' lawful conduct is unconstitutional.

165. Mrs. Everett's arrest was objectively unreasonable and opprobrious.

166. In violating Mrs. Everett's rights under the Fourth Amendment to the United States Constitution, Defendant Hopkins directly and proximately caused Mrs. Everett to suffer unlawful extradition, strip-search, arrest, detention, anguish, embarrassment and humiliation.

167. The overwhelming majority of minor code violations are dealt with by citation and not by arrest. The fact that Defendant

Officers Hopkins used the utmost extreme measure – an unlawful detention of Mrs. Everett' liberty – for such a minor action on the part of Mrs. Everett shows the true motivation of the named Defendants in this action.

168.  Defendant Cobb County can be held liable for the violation of Mrs. Everett's right to be free of unlawful seizure of her person pursuant to <u>Monell v. Dept. of Soc. Serv.,</u> 436 U.S. 658 (1978) because it adopted a "policy" of unlawfully seizing and arresting individuals under the disorderly conduct statute simply for cursing, and has now spread that policy to the related statute of Harassing Communications.

## Count IV:

## False Imprisonment

169.  The allegations of paragraphs 1 through 169 are incorporated into the Fourth Claim for Relief as though fully set forth herein.

170.  Defendant Hopkins detained Mrs. Everett by way of agency-in-lieu-of-actor when he deprived her of her liberty by securing an arrest warrant, initiating the extradition process, poaching the resources and manpower of Jefferson County Sheriff's Office to cause

her arrest by vicarious means through the extradition process, and abusing the legal processes available between and within both the States of Georgia and Alabama to effect an out-of-jurisdiction securing of her against her will without even arguable probable cause or jurisdiction to believe that she had committed a crime.

171. The detention of Mrs. Everett was unlawful because it occurred pursuant to a statute that, as-applied to Mrs. Everett, is unconstitutional.

172. Defendant Hopkins therefore falsely imprisoned Mrs. Everett in violation of O.C.GA. § 16-5-41.

### Count V:

### False Arrest

173. The allegations of paragraphs 1 through 173 are incorporated into the Fifth Claim for Relief as though fully set forth herein.

174. Defendant James Hopkins detained Mrs. Everett when he deprived her of her liberty by using Jefferson County Sheriff's Dept. manpower under power of extradition to pull her from her residence

against her will from outside his jurisdiction without even arguable probable cause to believe that she had committed a crime.

175. The arrest of Mrs. Everett was malicious because it was effectuated in direct retaliation for her exercise of her First Amendment right to free expression and in reckless disregard of her constitutional rights.

176. By maliciously securing an arrest warrant and then maliciously abusing the use of the resources and manpower of Jefferson County Sheriff's Office via extradition processes to cause the arrest of Mrs. Everett under process of law, without probable cause and without jurisdiction, Defendant James Hopkins vicariously falsely arrested Mrs. Everett in violation of O.C.GA. § 51-7-1.

## Count VI:

## Malicious Prosecution

177. The allegations of paragraphs 1 through 177 are incorporated into the Sixth Claim for Relief as though fully set forth herein.

178. Defendant Cobb County, by and through its agents, prosecuted Mrs. Everett pursuant to a valid accusation for violating O.C.G.A. § 16-11-39.1.

179. Defendant Cobb County, by and through its agents, prosecuted Mrs. Everett outside of their jurisdiction and bounds, whereby *forcing*Mrs. Everett *into* the State of Georgia in order to address the charge levied unlawfully.

180. Said prosecution was initially done with malice and without probable cause.

181. Defendant Cobb County, by and through its agents, required a second-review in order to stop the prosecution of Mrs. Everett despite initially knowing both the facts and the law, which clearly showed that the statute and ordinance were unconstitutional as applied to her communications and thus could not constitute a valid basis for prosecution. Further, Defendants knowingly and willingly procured the prosecution of Mrs. Everett for her conduct that was both initiated and permitted within the State of Alabama.

182. Ultimately, the prosecution against Mrs. Everett was terminated in her favor.

183. Defendant Cobb County, by and through its agents, thereby maliciously prosecuted Mrs. Everett in violation of O.C.G.A. § 51-7-44.

184. § 51-7-40. Right of action for malicious prosecution: "A criminal prosecution which is carried on maliciously and without any probable cause and which causes damage to the person prosecuted shall give him a cause of action."

185. § 51-7-42. Inquiry before committing court or magistrate as prosecution:

"For purposes of this article, an inquiry before a committing court or a magistrate shall amount to a prosecution."

186. Defendants Hopkins and Miller, directly and/or indirectly, enacted an inquiry to enforce the laws of Georgia upon the out-of-state actions by an out-of-state resident, Mrs. Everett.

187. The Georgia law of Harassing Communications was used to silence a critic, namely Mrs. Everett, for her excoriating expressions to condemn an extramarital affair and to prevent such from re-occurring.

## PRAYERS FOR RELIEF

WHEREFORE, on the basis of the foregoing, Plaintiff prays that this Court:

(1)    Enter an award of economic, compensatory, general, and special damages in an amount to be determined by the enlightened conscience of the jury against Defendants;

(2)    Enter a preliminary and permanent injunction against Defendants, their officers, agents, successors, employees, attorneys, and those acting in concert with them, from any future, non-pending arrest or prosecution under the unconstitutional application of Georgia's Harassing Communications statute, O.C.G.A. § 16-11-39.1, to individuals expressions including profanity that does not rise to the level of "fighting words" and to residents outside the State of Georgia;

(3)    Award Plaintiffs Everett punitive damages in the amount to be determined by the enlightened conscience of the jury against the individual Defendants;

(4)    Grant to Plaintiffs Everett a jury trial on all issues so triable;

(5)    Award to Plaintiffs Everett the costs of the action and reasonable attorneys' fees, as provided by 42 U.S.C. § 1988 and federal and state law; and

(6)    Grant any and all additional relief as this Court deems proper and just.

## JURY DEMAND

Plaintiffs Everett demand a jury trial on all issues so triable.

Dated: September 4, 2017.          Respectfully submitted,

Amy Everett, Pro Se

Tjelvar Everett, Pro Se

2456 Hawksbury Ln,
Hoover, Alabama 35226
Telephone: (205) 405-8462
Email: Tj.everett@live.com