IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

AMY EVERETT, et al.,

   Plaintiffs,

     v.

COBB COUNTY, GEORGIA, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:17-CV-3392-TWT

## OPINION AND ORDER

*Though with their high wrongs I am struck to th' quick,*
*Yet with my nobler reason 'gainst my fury*
*Do I take part. The rarer action is*
*In virtue than in vengeance.*[1]

This is a tort case. It is before the Court on the Defendant Lani Meshella Miller's Motion to Dismiss [Doc. 29]. For the reasons stated below, the Defendant's Motion to Dismiss is GRANTED.

### I. Background

The Plaintiffs Amy and Tjelvar Everett are a married couple currently residing in Alabama.[2] The Defendant Miller is a former coworker of the

---

[1] WILLIAM SHAKESPEARE, THE TEMPEST Act 5, Scene 1.

[2] Compl. ¶¶ 1-2 [Doc. 1].

Plaintiffs and a resident of Georgia.[3] The Plaintiffs allege that on January 1, 2015, Tjelvar Everett revealed to his wife that he had engaged in an extramarital affair with Miller between 2006 and 2008 when the Everetts and Miller were teachers at a high school in Georgia.[4] Upon learning of the affair, Amy Everett attempted to contact Miller and her husband through Facebook, but did not receive a response.[5] Amy Everett then contacted Miller at her current place of employment via telephone.[6] After their conversation, Amy Everett then sent emails and other electronic communications to Miller's extended family and coworkers exposing the affair in an effort to "warn" them.[7]

Miller contacted the Cobb County Police Department to report that she had been receiving harassing emails from Amy Everett.[8] Detective Hopkins, another Defendant in this case, was assigned to investigate the issue.[9] Hopkins interviewed Miller, at which time she "was adamant that she had [had] no such affair."[10] Miller also apparently failed to disclose the phone conversation she had

---

[3] *Id.* at ¶ 5.

[4] *Id.* at ¶¶ 9-10.

[5] *Id.* at ¶ 16.

[6] *Id.* at ¶ 17.

[7] *Id.* at ¶¶ 21-22, 24.

[8] Compl., Ex. D at 1.

[9] *Id.*

[10] *Id.*

had with Amy Everett.[11] Hopkins then sent a cease and desist letter to the Plaintiffs.[12] After Miller received another email from the Plaintiffs, Hopkins applied for and obtained an arrest warrant for the charge of Harassing Communications.[13] Amy Everett was eventually arrested at her home in Alabama.[14]

The case against Amy Everett was eventually resolved in her favor, but not before she alleges she suffered numerous injuries as a result of her arrest.[15] The Plaintiffs then filed suit in this Court against the Defendants alleging three different violations of the Plaintiffs' constitutional rights pursuant to 42 U.S.C. § 1983 (Counts I-III) and three different state law tort claims, including false imprisonment, false arrest, and malicious prosecution (Counts IV-VI).[16] The Court dismissed the Plaintiffs' federal claims against Miller and directed the Plaintiffs to file an amended complaint showing how the Court had jurisdiction

---

[11] Compl. ¶ 77.

[12] *Id.* at ¶¶ 26-28.

[13] *Id.* at ¶ 39.

[14] *Id.* at ¶ 44.

[15] *Id.* at ¶¶ 59-73.

[16] *Id.* at ¶¶ 126-187.

over the remaining state law claims.[17] They did so,[18] and now Miller moves to dismiss the remaining state law claims against her.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.[19] A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely."[20] In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.[21] Generally, notice pleading is all that is required for a valid complaint.[22] Under notice

---

[17] Order Granting Motion to Dismiss [Doc. 20].

[18] *See* Am. Compl. [Doc. 27].

[19] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6).

[20] *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007).

[21] *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

[22] *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986).

pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.[23]

### III. Discussion

The Plaintiffs allege three state law claims.[24] Count IV alleges a claim for false imprisonment.[25] Count V alleges a claim for False Arrest.[26] And Count VI alleges a claim for Malicious Prosecution.[27] As discussed in the Court's previous Order, it is not entirely clear which of these claims are being asserted against Miller.[28] Counts IV and V seem to apply only to the Defendants Hopkins and Cobb County, as there is no mention of Miller. Only Count VI, malicious prosecution, specifically accuses Miller. Given that the Court pointed this out before, and the Plaintiffs were given the opportunity to amend their Complaint,

---

[23] *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

[24] The Plaintiffs also attempt to argue in their response brief that their Complaint supports a common law claim for malicious abuse of process despite the fact that no such claim appears in their Complaint. While it is "unnecessary to set out a legal theory for the plaintiff's claim for relief," *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014), that does not mean that a plaintiff can surreptitiously attempt to add a *wholly new* claim in a response briefing. The Court will not address these arguments.

[25] Compl. ¶¶ 169-72. *See* O.C.G.A. § 16-5-41.

[26] *Id.* at ¶¶ 173-76. *See* O.C.G.A. § 51-7-1.

[27] *Id.* at ¶¶ 177-87. *See* O.C.G.A. § 51-7-40.

[28] Order Granting Motion to Dismiss, at 4-5 [Doc. 20].

the Court can only assume that the only claim against Miller is one for malicious prosecution.

In order to prevail on a claim for malicious prosecution, "a plaintiff must show: (1) prosecution for a criminal offense instigated by defendant; (2) issuance of a valid warrant, accusation, indictment, or summons; (3) termination of the prosecution in favor of plaintiff; (4) malice; (5) want of probable cause; and (6) damage to plaintiff."[29] The only issue in dispute at this stage is whether Miller "instigated" the criminal prosecution of Mrs. Everett.

In Georgia,

> [t]he law draws a fine line of demarcation between cases where a party directly or indirectly urges a law enforcement official to begin criminal proceedings and cases where a party merely relays facts to an official who then makes an independent decision to arrest or prosecute. In the former case there is potential liability for ... malicious prosecution; in the latter case there is not.[30]

The Court already stated in its previous Order dismissing the Plaintiffs' federal claims against Miller that the Complaint shows that Hopkins used his own independent judgment to decide whether to prosecute Miller.[31] However, even in those types of situations, "[a] person may [still] be held liable for unduly

---

[29] *Kaiser v. Tara Ford, Inc.*, 248 Ga. App. 481, 486 (2001).

[30] *Willis v. Brassell*, 220 Ga. App. 348, 350 (1996) (citations and quotations omitted).

[31] Order Granting Motion to Dismiss, at 6-7 [Doc. 20].

influencing the decision to prosecute by providing information that is known to be false, misleading or materially incomplete."[32]

In this case, the Plaintiffs claim that Miller unduly influenced Hopkins' judgment regarding two facts: (1) when she denied the existence of the affair between Miller and Mr. Everett, and (2) when she failed to tell Hopkins about the phone call between her and Mrs. Everett.[33] To unduly mislead someone, however, such facts must be material, meaning that they would have had a significant effect on the official's judgment.[34] The Court fails to see how either of those two facts would have been in any way material to Hopkins' decision to pursue the warrant. In fact, Hopkins explicitly stated that the existence of the affair was immaterial to him.[35] And assuming for a moment that the phone conversation between Mrs. Everett and Miller was "consensual," Georgia's harassing communications statute states that it is illegal to "contact[] another

---

[32] *Kaiser*, 248 Ga. App. at 487 (citations and quotations omitted). *See also Willis*, 220 Ga. App. at 351 ("A person may be liable where 'he gave information [to the investigating officer] which he knew to be false and so unduly influenced the authorities.") (quotations omitted).

[33] Pls.' Resp. to Mot. to Dismiss, at 8-9 [Doc. 36].

[34] *Kaiser*, 248 Ga. App. at 487. *See also Gibbs v. Loomis, Fargo & Co.*, 259 Ga. App. 170, 175 (2003) ("Evidence that a malicious prosecution defendant misrepresented *material* information to the police raises a factual issue as to whether the defendant had a reasonable and honest belief regarding probable cause.") (emphasis added).

[35] Compl., Ex. B at 1 ("Whether there was any infidelity or not has no bearing on this investigation and does not in any way condone harassing a person through any means of communication.").

person repeatedly," for the purpose of "harassing, molesting, threatening or intimidating such person *or the family* of such person."[36] There were a number of other communications Mrs. Everett made that formed the basis of Hopkins' belief that Mrs. Everett was violating this statute.

For example, contrary to the Plaintiffs' brief, the phone conversation between Mrs. Everett and Miller was not Mrs. Everett's only communication to Miller. The Complaint states that Mrs. Everett attempted to contact Miller via Facebook Messenger, and Hopkins' report shows that Miller had received numerous vulgar emails from Mrs. Everett.[37] Additionally, Mrs. Everett sent a litany of harassing communications to Miller's coworkers and family; communications which were often made to look as though they were coming from Miller herself.[38] In the face of such facts, it strains credulity to think that Hopkins would have changed his decision to issue a cease and desist letter had he known about a thirty minute conversation between Miller and Mrs. Everett.

The Court acknowledges that Mrs. Everett suffered serious hardship as the result of mistakenly being arrested on a fugitive warrant, and no doubt some heartache at the actions of her husband and Miller. But when she decided to take out her righteous anger on Miller by harassing her, her coworkers, and her

---

[36] O.C.G.A. § 16-11-39.1.

[37] Compl. ¶¶ 16, 76.

[38] Compl. ¶¶ 16-22; Compl., Ex. D [Doc. 1-4].

family, Miller had every right to report such actions to the police. Miller did not insist on a particular outcome, nor did she attempt to influence Hopkins' judgment. In other words, she did not "instigate" a flawed prosecution against Mrs. Everett. She merely reported what had happened to her. This is not the type of behavior contemplated by the tort of malicious prosecution.[39] Mrs. Everett's remaining state claims against Mrs. Miller are dismissed.

Alternatively, Miller has also moved to dismiss Tjelvar Everett from this action. As the Complaint utterly fails to allege any cause of action Mr. Everett may have, Mr. Everett is dismissed from all remaining claims against all parties.

## IV. Conclusion

The Defendant Miller's Motion to Dismiss [Doc. 29] is GRANTED. The Plaintiffs' state claims against the Defendant Miller are DISMISSED. Additionally, the Clerk is directed to DISMISS Tjelvar Everett as a party in this case.

---

[39] Contrast this case with the number of cases the Plaintiffs cite in their response brief. *See Shepard v. Byrd*, 581 F. Supp. 1374 (N.D. Ga. 1984); *Melton v. LaCalamito*, 158 Ga. App. 820 (1981); and *Adams v. Carlisle*, 278 Ga. App. 777 (2006). In those cases, the Defendants had all taken an active role in the officials' decision to prosecute, either by participating in the investigation, *Shepard*, 581 F. Supp. at 1391, insisting on a particular outcome, *Melton*, 158 Ga. App. at 822-23, or directly challenging an official's inclination to believe the other party, *Adams*, 278 Ga. App. at 786.

SO ORDERED, this 15 day of May, 2018.


                    /s/Thomas W. Thrash
                    THOMAS W. THRASH, JR.
                    United States District Judge