# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| AMY EVERETT and TJELVAR EVERETT,<br><br>Plaintiffs,<br><br>v.<br><br>COBB COUNTY, GEORGIA; OFFICER JAMES W. HOPKINS, in his individual Capacities; and LANI MESHELLA MILLER, in her individual capacity;<br><br>Defendants. | CIVIL ACTION<br>NO. 1:17-CV-3392-TWT |

## DECLARATION OF BRIAN S. BATTERTON

I, Brian S. Batterton, offer this declaration for consideration in the above styled case. All statements in this declaration are true and correct, and within my personal knowledge.

1.

I am a resident of the State of Georgia. I am over the age of 21, *sui juris* and competent to make oath as to the facts contained herein, and all such facts as are made are based upon my personal knowledge and upon my review of documents maintained in the ordinary course of business at the Cobb County Police Department (CCPD). Documents or records referred to in this declaration and attached hereto



EXHIBIT C

were prepared or received in the regular course of business at CCPD and are maintained in the regular course of business. All entries in these records were made at or near the time of the events to which they relate and were made by, or from information transmitted by, persons with knowledge. All documents or records referred to in this declaration or attached hereto were in effect at the times they indicate or, if no time is indicated, were in effect as of 2015 and 2016. Moreover, all copies referred to in this declaration or attached to this declaration are true and correct copies of originals.

2.

I began serving with the Cobb County Police Department in 1995. During my time with CCPD I have served as a Patrol Officer, in the Criminal Investigation Unit, and in the Training Unit. I advanced to be a patrol supervisor, the Adjutant and Legal Officer for the Chief of Police, the Administrative Bureau Commander, and the Academy Director (Training Center Commander). I was appointed to the rank of Major in 2016 and served as the commander of Precinct 5 in West Cobb County.

3.

Presently, I am employed as the Major over Precinct 4 in East Cobb County. As the Commander of the Precinct, I am in charge of all officers and staff serving the Precinct.

4.

In addition to my law enforcement training and experience, I am a member of the State Bar of Georgia. I have been a member of the Bar for 18 years.

5.

As past Commander of the Training Unit, I am familiar with the standards and training required of CCPD officers.

6.

All CCPD officers are required to undergo basic training and be certified by the Georgia Peace Officers Safety and Training Council ("P.O.S.T."), the accrediting agency for law enforcement officers in the State of Georgia. *See* O.C.G.A. § 35-8-8 and §35-8-24. Officers are required to maintain their certification and participate in continuing training throughout employment.

7.

Training is provided primarily through the Cobb County Police Academy. The Academy is certified by P.O.S.T. and designed specifically to train and further the career development of all sworn department personnel. The Training Unit oversees and coordinates all department training. The Unit develops and implements basic police recruit, advanced/specialized, and annual training programs.

8.

Mandate training, consisting of approximately 5-6 months classroom instruction, addresses numerous issues, including criminal statutes such as the communications statute, and false communications, probable cause and arrests, security awareness, community policing, de-escalation, protected speech. The classroom work is followed by at least 50 field training sessions with an experienced field training officer.

9.

The training provided at the Cobb County Police Academy addresses, fulfills, and often exceeds requirements of P.O.S.T.

10.

All Cobb County police officers are trained to comply with all federal, state, and local laws. O.C.G.A. 35-8-1, et seq. This includes the Fourth Amendment to the U.S. Constitution and its application to arrests.

11.

As laws/procedures change, or based upon policy revisions, all CCPD officers are provided with updated information/training as is necessary.

12.

For instance, after legislative changes that impact the police department become effective, such as a change in the law, officers are provided a legislative update that summarizes the changes.

13.

For instance, prior to July 1, 2015, O.C.G.A. § 16-11-39.1 dealt with harassing phone calls; the statute was amended, substituting "communications" for "phone calls", so as to address technological changes in communications such as use of the internet. CCPD officers were provided with a legislative update concerning the statute. (*See* Attachment 1).

14.

Regarding O.C.G.A. § 16-11-39.1, the statute deals with conduct, i.e., sending harassing communications. The language used in the communication may be a part of the totality of circumstances leading to a decision on whether the communication is harassing, but the focus is not just on the use of bad words. An unwanted communication sent repeatedly can be harassment even if devoid of profanity.

15.

If a legislative change is significant, a separate training session will be added to the Academy's annual legal update training for officers. "Roll Call Training" is

conducted to address topics as needed. (Attachment 2). No separate training session is scheduled for "common sense" or minor revisions.

16.

Training may also be scheduled to address CCPD incidents or case law applicable to police practices. (Attachment 3).

17.

If an officer has a question about statutes, changes in the law, venue, probable cause or an arrest, the officer can always request assistance or present questions to a supervisor, the Training Academy staff, or the on-call prosecutor (solicitor/district attorney).

18.

At the time of the incident giving rise to this litigation, I was the Commander of the Training Academy. As Commander, I would not only oversee the training provided to recruits and officers, but I personally participated in providing training; I still do.

19.

In addition to the standard, and update training he received, during his time with CCPD, Detective Hopkins advanced to the rank of Sergeant, became a Field

Training Officer, received certification as a P.O.S.T Instructor, and taught courses at the Police Academy.

20.

CCPD has no policy to violate the First Amendment by the seizure and arrest of individuals under the disorderly conduct statute simply for cursing.

21.

Based on my review of the file regarding the arrest of the Plaintiff in this case, probable cause existed for the arrest based on a violation of the harassing communication statute. The arrest was not based on vulgar/profane language, although language was a part of the totality of circumstances upon which the determination of harassment was made. That totality included the number and frequency of the communications, the use of fake accounts to send the messages, and veiled threats contained in the messages.

22.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

This the 1st day of February, 2019.

_____
BRIAN S. BATTERTON
Major, Cobb County Police Department

**From:** Batterton, Brian
**Sent:** Wednesday, July 01, 2015 2:24 PM
**To:** Batterton, Brian <Brian.Batterton@cobbcounty.org>
**Subject:**

To:     All Personnel
From:   Captain B.S. Batterton
Date:   July 1, 2015
Re:     2015 Legislation

This is an update of the Bills that were passed at the 2015 Legislative Session. I have highlighted the ones that are likely to be of most interests to most officers. All officers should be familiar with all that pertain to their job. The following Legislation was passed this session:

HB 1 – effective 4/16/2015- concerns cannabis oil to treat certain medical conditions – link to full Bill - http://www.legis.ga.gov/Legislation/en-US/display/20152016/HB/1

HB 17-effective 7/1/2015 – "Hidden Predator Act" which extends the statue of limitations for childhood sexual abuse, tolls limitations for a minor cause of action and provides confidentiality of records-link to full Bill - http://www.legis.ga.gov/Legislation/en-US/display/20152016/HB/17

HB 71- effective 7/1/2015 – Affects the Crime Victim Bill of Rights and provides for victim input before pardon is granted or death sentence is reduced to a life sentence – link to full Bill-
http://www.legis.ga.gov/Legislation/en-US/display/20152016/HB/71

HB 110- effective 7/1/2015 – Makes "consumer fireworks" legal to sell, possess and use. These are regular/real exploding fireworks that people previously had to drive to other states to purchase. They are only allowed to be used between the hours of 10am and midnight except on Dec 31/Jan1, July 3/4 when they are useable until 2am. A person must be 18 years old or older to use/possess/purchase. The Bill contains many other provisions that are in this link - http://www.legis.ga.gov/Legislation/en-US/display/20152016/HB/110

HB 225 – effective 5/6/2015 – Defines "for-hire drivers" and specifies insurance requirement. It also allows for Uber and Lift- link to full Bill - http://www.legis.ga.gov/Legislation/en-US/display/20152016/HB/225

HB 233 – effective 7/1/2015 – this Bill relates to rules on asset forfeitures – link to full Bill -
http://www.legis.ga.gov/Legislation/en-US/display/20152016/HB/233

HB 452 – effective 7/1/2015 – Added Criminal Family Violence order to the Protective Order Registry, including stay away orders in bond and probation conditions – link to full Bill -
http://www.legis.ga.gov/Legislation/en-US/display/20152016/HB/452

HB 461 – effective 7/1/2015 – changes metal theft definitions and provides additional penalties for non-reporting- link to full Bill - http://www.legis.ga.gov/Legislation/en-US/display/20152016/HB/461


EXHIBIT 1
Blumberg No. 5208

CAO001572

HB 492 – effective 7/1/2015 – changes the definitions of some weapons that may be carried on school property (Section 9 of Bill) and changes mandatory report of weapons at school (Section 11 of Bill) – specifics can be read in this link - http://www.legis.ga.gov/Legislation/en-US/display/20152016/HB/492

SB 72 – effective 5/1/2015 – Changed crime related to Harassing Phone calls to Harassing Communication to include all forms of electronic communication and establishes venue for the crime (see Section 2-1 of Bill), changed definition of Firearm and Dangerous Weapon in OCGA 16-11-107 and 16-11-121 (see Section 3-3), changed crime related to injuring or killing a police dog (See Section 3-3)- complete Bill can be read at this link - http://www.legis.ga.gov/Legislation/en-US/display/20152016/SB/72

SB 94 – effective 5/6/2015 – Changed procedures related to physical line-ups, photographic line-ups, and show ups (See Section 4 of Bill); also allows for use of Body Cameras inside private residences by law enforcement without consent of residents; provides Open Record Act Limitations related to Body Cameras- link to full Bill - http://www.legis.ga.gov/Legislation/en-US/display/20152016/SB/94
I have pasted the information related to physical line-ups, photo line-ups, and show-ups below:
*17-20-1.*

*As used in this chapter, the term:*

*(1) 'Fillers' means individuals who are not suspects.*

*(2) 'Law enforcement agency' means a governmental unit of one or more individuals employed full time or part time by the state, a state agency or department, or a political subdivision which performs as its principal function activities relating to preventing and detecting crime and enforcing state laws or local ordinances, employees of which unit are authorized to make arrests for crimes while acting within the scope of their authority.*

*(3) 'Live lineup' means an identification procedure in which a suspect and fillers are displayed in person to a witness.*

*(4) 'Photo lineup' means an identification procedure in which a photograph of a suspect and photographs of fillers are displayed to a witness, either in hard copy form or via computer.*

*(5) 'Showup' means an identification procedure in which a witness is presented with a single individual.*

*(6) 'Suspect' means the individual believed by law enforcement to be the possible perpetrator of an alleged crime.*

*(7) 'Witness' means an individual who observes an alleged crime.*

*17-20-2*

*(a) Not later than July 1, 2016, any law enforcement agency that conducts live lineups, photo lineups, or show ups shall adopt written policies for using such procedures for the purpose of determining whether a witness identifies someone as the perpetrator of an alleged crime.*

*(b) Live lineup, photo lineup, and showup policies shall include the following:*

*(1) With respect to a live lineup, having an*

*individual who does not know the identity of the suspect conduct the live procedure;*

*(2) With respect to a photo lineup, having an individual:*

*(A) Who does not know the identity of the suspect conduct the photo lineup; or*

*(B) Who knows the identity of the suspect use a procedure in which photographs are placed in folders, randomly shuffled, and then presented to the witness so that the individual conducting such procedure cannot physically see which photograph is being viewed by the witness until the procedure is complete;*

*(3) Providing the witness with instruction that the perpetrator of the alleged crime may or may not be present in the live lineup or photo lineup;*

*(4) Composing a live lineup or photo lineup so that the fillers generally resemble the witness's description of the perpetrator of the alleged crime;*

*(5) Using a minimum of four fillers in a live lineup and a minimum of five fillers in a photo lineup; and*

*(6) Having the individual conducting a live lineup, photo lineup, or showup seek and document, at the time that an identification of an individual or photograph is made, and in the witness's own words without necessarily referencing a numeric or percentage standard, a clear statement from the witness as to the witness's confidence level that the individual or photograph identified is the individual or photograph of the individual who committed the alleged crime.*

*(c) All law enforcement agency written policies adopted pursuant to this Code section shall be subject to public disclosure and inspection notwithstanding any provision to the contrary in Article 4 of Chapter 18 of Title 50*

SB 134 – effective 5/6/2015 – Concerns the use of speed detection devices revenue collected from fines for such use – link to full Bill – http://www.legis.ga.gov/Legislation/en-US/display/20152016/SB/134

**Captain B.S. Batterton**
**Academy Director**
**Cobb County Department of Public Safety Training Center**
**2109 Valor Drive**
**Marietta, Georgia 30008**
**phone 770-590-5651**

CAO001574



| ROLL CALL TRAINING | Jun-05 |
|---|---|
| **OBSTRUCTION OF A LAW ENFORCEMENT OFFICER** | |

### A. Introduction

The act of obstructing or hindering a law enforcement officer in the lawful discharge of their duties is an offense in the state of Georgia and is punishable as either a misdemeanor or a felony, depending upon the circumstances of the obstruction.

The charge of obstruction is not a catch-all accusation for dealing with a citizen who is simply being uncooperative when probable cause or reasonable suspicion is not present.

### B. Georgia Obstruction Statute

O.C.G.A. 16-10-24.   Obstruction of officers
(a) Except as otherwise provided in subsection (b) of this Code section, a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor.

(b) Whoever knowingly and willfully resists, obstructs, or opposes any law enforcement officer, prison guard, correctional officer, probation supervisor, parole supervisor, or conservation ranger in the lawful discharge of his official duties by offering or doing violence to the person of such officer or legally authorized person is guilty of a felony and shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years.

### C. Elements of the Crime

1. To establish a misdemeanor obstruction case, three elements must be shown:

    - **The defendant must have known the official was a law enforcement officer.**

**EXHIBIT 2**

CAO000444

- This burden is met when the officer identifies themselves and/or shows their badge, whether on-duty or off-duty.

- **The officer must be engaged in the <u>lawful</u> discharge of their duties.**

- An officer is engaged in the lawful discharge of their duties as long as the officer believes they have <u>probable cause</u> to make an arrest, or <u>reasonable suspicion</u> to make an investigatory stop, whether on-duty or off-duty.

- **The defendant must knowingly and willfully obstruct or hinder the officer.**

- *An officer must be able to articulate how the subject's actions hindered any investigation or lawful discharge of duties.*

    Considering that premise, an individual may be charged with obstruction for failure to provide their name when:

    a. They are a <u>suspect</u>, that is, the officer has a reasonable suspicion or probable cause that the person has committed or is about to commit a crime. (Bailey v. State, 190 Ga. App. 683 (1989))

    b. They are a <u>material witness</u>. *(While merely refusing to identify oneself to a police officer is not a crime, one may commit obstruction when his refusal to provide identification to a police officer knowingly and willfully hinders an officer investigating an offense committed by another.)* Thus, if the officer has good reason to believe the person's identification is important in leading to credible evidence in an investigation, it may be obstruction for a person to refuse to provide their name and date of birth. (Clark v. State, 243 Ga. App. 362 (2000); Hudson v. State, 135 Ga. App. 739 (1975))

2. To establish a <u>felony</u> obstruction case, the above three elements must be shown, with the addition of one element -- <u>violence, or a credible threat of violence to the officer.</u>

    - Injury to the officer is not an element of this offense and need not be shown; an <u>offer</u> of violence will suffice. Threats must be substantive and be able to be fulfilled by the subject.

- A citizen has the right to resist an illegal arrest, i.e., an arrest without probable cause.

**D.   Examples**

1. Possible affirmed obstruction:

    - Willfully lying to an officer with the intent of misdirecting them concerning the performance of their official duties can constitute obstruction. (Duke v. State, 205 Ga. App. 689 (1992))

    - Refusal to comply with an officer's orders if it disrupts or hinders an investigation can constitute obstruction. (Imperial v. State, 218 Ga. App. 440 (1995))

    - Fleeing from an officer who commands a subject to halt can constitute obstruction. However, if the subject flees but then halts on the officer's command, it is not obstruction. (Rodriguez v. State, 211 Ga. App. 256, 257 (1993))

    - Warning a subject of a police investigation or inciting others to interfere and hinder an investigation can constitute verbal obstruction. (cited as an obstruction act that did not occur in Woodward v. Gray, 241 Ga. App. 847 (2000))

2. Non-affirmed obstruction:

    - A passenger is a vehicle who is not a suspect or witness necessary for an accident investigation may be asked their name, but the name cannot be ordered or compelled. Refusal to provide their name is not obstruction.

    - Merely refusing to identify oneself to an officer is not a crime in and of itself where there is no evidence the defendant has committed an offense or was hindering the investigation of an offense. (Wagner v. State, 206 Ga. App. 180 (1992))

**E.   Related Charges**

1. O.C.G.A. 40-5-29 License to be carried and exhibited on demand.
    - Use this charge for a driver's failure to show a driver's license.

2. O.C.G.A. 16-10-25 Giving false name to officers.
    - Use this charge when a subject provides a false name, address, or DOB **when the officer is engaged in the lawful performance of his official duties. Note: Providing a false name/DOB during a**

> **consensual encounter does not violate O.C.G.A. 16-10-25. Similarly, a passenger in a car that was stopped for purely a traffic violation who provides a false name/dob is not violating this statute. See Holt v. State, 227 Ga. App. 46 (1997).**

3. O.C.G.A. 16-11-36 Loitering or prowling.
   - Failure of a subject to provide their name gives support to a loitering or prowling charge.

4. O.C.G.A. 16-11-39(a)(3) Disorderly conduct – use of "fighting words."
   - Use this charge when a subject uses "fighting words". They are those words which by their utterance inflict injury or tend to incite an immediate breach of the peace. Derogatory or obscene references directed at an officer such as "pig", "bitch", "S.O.B.", or more extreme profanities are not protected 1st Amendment speech, and are uttered only to provoke. (Bolden v. State, 148 Ga. App. 305 (1978); State v. Klinakis, 206 Ga. App. 318 (1992))

F. **Recent Case Law**

Hiibel v. Sixth Judicial District Court of Nevada, Humboldt County, et al., 542 U.S. 177, 124 S. Ct. 245 (2004) – The United States Supreme Court upheld the arrest of a person who was lawfully detained when he failed to provide identification in violation of Nevada law.

**Note: Georgia does NOT have a specific criminal statute that requires a person subject to a lawful detention to provide identification to police.** However, when police are conducting a valid investigative detention (one based upon articulable suspicion), refusing to provide a name/dob may possibly constitute a violation of O.C.G.A. 16-10-24(a) providing that the officer can articulate how the suspect's refusal to provide identification "obstructed or hindered the officer" in the course of his lawful investigation.

In summary, the requirements are:

1. The officer must have a valid "Terry" stop.
2. The officer can ask the subject for their name.
3. In order to arrest under O.C.G.A. 16-10-24 that the officer must articulate how the suspect's refusal to provide identification "obstructed or hindered the officer" in the course of his lawful investigation.

G. **Closing Statement**

The charge of obstruction is an effective tool for the law enforcement officer when legally applied. Improper application will usually end in the dismissal of charges against the subject and possibly civil, policy violation, and/or criminal charges against the officer. Remember that if you are engaged in the lawful discharge of your duties, i.e., reasonable suspicion exists for a <u>valid</u> stop, or probable cause exists for a <u>valid</u> arrest, you will be serving the community by applying the complete arsenal of laws at your disposal. Nothing here prevents an officer from engaging in a consensual encounter with a citizen. The totality of the circumstances will always be a factor in your determining the appropriate, if any, charges.

CAO000448

Use in DC and Obstruction Section after we discuss the video of CCPD incident

## ELEVENTH CIRCUIT DISCUSSES PROBABLE CAUSE AND THE FIRST AMENDMENT

By Brian S. Batterton, J.D.

On August 9, 2016, the Eleventh Circuit Court of Appeals decided *Carr v. Cadeau*[i], in which they examined the issues of arguable probable cause to arrest and First Amendment protected speech. The relevant facts of *Carr*, taken directly from the case, are as follows:

> Carr and Gibson live in the Castleberry Hill neighborhood of downtown Atlanta. On the evening of October 5, 2013, the street in front of their home was closed to car traffic for a public arts event called the Flux Festival. The City of Atlanta had granted a permit for the event and arranged for off-duty police officers to provide security. Carr and Gibson were returning from the Flux Festival late at night when they heard [the officer] tell them to get off the street. [The officer] did not identify himself as a police officer. At the time [The officer] yelled at them, Carr and Gibson were walking about 20 to 30 feet from the entrance to their home. Carr responded "what, what the fuck." She then pointed at her door and said, "I live here. This is my home." The couple then continued walking toward their home.

> When they reached their home, Gibson began to open the garage door by entering a code into a keypad next to the door. As he entered this code, "a bright flashlight was shined into his face." Gibson looked around the street but couldn't see who was holding the light. He then walked through the garage door and hit the button to close the door behind him. Once he entered the garage, he saw that [the officer] was in the garage chasing his wife into their home. [The officer] began "grabbing Plaintiff Carr and twisting her arm violently behind her, shoving her head-first into a parked car in the garage, then dragging her backwards, passing Plaintiff Gibson, out onto the street area." [The officer] then told another police officer to arrest Gibson "while continuing to drag Plaintiff Carr to his police vehicle where she was arrested."

> Carr and Gibson were both taken to the Atlanta City Jail and held until the next morning. Both Carr and Gibson were eventually given citations for violations of the City of Atlanta's municipal code. Carr's citation charged her with disorderly conduct while under the influence, and Gibson's charged him with disorderly conduct. When

**EXHIBIT 3**

CAO000370

the couple appeared in court to answer their citations, the charges were dismissed."

Carr and Gibson sued the officer for violating their Fourth and First Amendment rights. The officer filed a motion for summary judgment and qualified immunity and the district court denied the motion. The officer then appealed the denial of qualified immunity to the Eleventh Circuit Court of Appeals.

The first issue on appeal was whether the officer violated Carr and Gibson's Fourth Amendment rights when he entered their home and arrested them without probable cause.

The court first noted two legal principles that apply to this issue. The court stated

> At the time Carr and Gibson were arrested, "our binding precedent clearly established . . . that an arrest made without arguable probable cause violates the Fourth Amendment's prohibition on unreasonable searches and seizures." Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1143 (11th Cir. 2007). **Arguable probable cause exists "where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest."** Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002).[iii] [emphasis added]

Thus, arguable probable is present if another reasonable officer in the same situation would believe probable cause existed to make an arrest. If an officer has arguable probable cause, he is entitled to qualified immunity from suit.

In this case, the officer argued three reasons why he believed arguable probable cause to arrest Carr and Gibson was present. First, he argued that he had arguable probable cause to arrest Carr and Gibson because they refused to get off the street. The court noted that the evidence indicated that Carr and Gibson continued to walk toward their residence and were arrested as they entered their residence. This is in contradiction to the officer's position that they disobeyed his command.

Second, the officer argued that the fact that Carr said "what, what the fuck" and "I live here" when he told them to get off the street provided arguable probable cause to support their arrest. This argument is addressed in the First Amendment component to Carr's suit. The court did note that

> **The First Amendment very clearly protects "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest."** City of Houston, Tex. v. Hill, 482 U.S. 451, 462-63, 107 S. Ct. 2502, 2510 (1987); see also id. at 461, 107 S. Ct. at 2509 **("[T]he First Amendment protects a**

**significant amount of verbal criticism and challenge directed at police officers. Speech is often provocative and challenging. But it is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.")** (quotation omitted and alteration adopted).[iv] [emphasis added]

**The officer does not argue that he perceived a reasonable belief of clear and present danger based on the speech so that argument also fails.**

Last, the officer argued that arguable probable cause arose when Gibson pressed the "close" button on the **garage** door as he was arresting Carr. However, the court observed that the officer entered the garage and attempted to arrest Carr prior to Gibson pressing the "close" button on the door. Thus, the court stated that the record does not support how attempting to close the garage door provided arguable probable cause for an arrest that was already in progress.

Thus, the Eleventh Circuit held that arguable probable cause did not exist to arrest Carr and Gibson.

The second issue was whether the officer violated the First Amendment by arresting Carr and Gibson in retaliation for what Carr said to him. The court noted that there are two principles that apply. They are as follows:

- **[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. Speech is often provocative and challenging. But it is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.**[v] [emphasis added]

- **When a police officer has probable cause to believe that a person is committing a particular public offense, he is justified in arresting that person, even if the offender may be speaking at the time that he is arrested.** Redd v. City of Enterprise, 140 F.3d 1378 (11th Cir. 1998)[vi] [emphasis added]

**Thus, if a person is uttering words that present a threat or a danger, they may be arrested if they are committing an offense, and this would not violate the First Amendment.** However, the court noted that here, the officer did not present evidence that Carr's words present a danger or threat beyond annoyance or unrest. Instead, the officer argued that Carr was just "speaking at the time she was arrested."[vii] In fact, the court noted that this argument is contradictory to his Fourth Amendment defense where he stated that what she

said gave him arguable probable cause to arrest her, and here, he is argued that she was not arrested because of what she said.

Therefore, because the law is clearly established that an arrest of a person in retaliation for exercising their First Amendment rights violates the constitution, and because the complaint alleges sufficient facts to demonstrate that the plaintiff's were arrested in retaliation for exercising those rights, the court held that the officer was not entitled to qualified immunity.

As such, the court of appeals affirmed the district court's denial of qualified immunity in this case.

---

[i] No. 16-10735 (11th Cir. Decided August 9, 2016 Unpublished)
[ii] Id. at 2-6
[iii] Id. at 5
[iv] Id. at 7
[v] Id.
[vi] Id. at 9
[vii] Id.