IN THE MATTER OF

# Everett

VS

# Cobb County, Georgia, et al.

## TRANSCRIPT OF DEPOSITION OF

# Brian S. Batterton

On November 14, 2018

_____

*Reported by* Natalie E. Sandi
*Certified Court Reporter*

_____



**DONOVAN REPORTING & VIDEO CONFERENCING**
*Certified Court Reporters*
237 Roswell Street / Marietta, GA 30060
770.499.7499    800.547.1512
**Book online at <www.donovanreporting.com>**

```
           IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF GEORGIA
                    ATLANTA DIVISION

AMY EVERETT and TJELVAR EVERETT,
         Plaintiffs,


         vs.              CASE NO. 1:17-cv-3392-TWT


COBB COUNTY, GEORGIA,

OFFICER JAMES HOPKINS,
individually and in his official
capacity; and,

LANI MESHELLA MILLER,
         Defendants.

                    - - -

                 Deposition of
              BRIAN S. BATTERTON,

           Taken by John P. Batson,

            Before Natalie E. Sandi,
           Certified Court Reporter,

                    At the
            Cobb County Attorney's Office,
                Marietta, Georgia,

           On Wednesday, November 14, 2018,
         Beginning at 11:08 a.m. & ending at 12:49 p.m.


                 VOLUME OF TESTIMONY
         (EXHIBITS CONTAINED IN SEPARATE VOLUME)
```

```
1    APPEARANCES OF COUNSEL

2    For the Plaintiffs:

3            JOHN P. BATSON
             Law Office of John P. Batson
4            1104 Milledge Road
             Augusta, GA 30904
5            706.737.4040

6
     For the Defendants:
7
             EDDIE SNELLING JR.
8            Cobb County Attorney's Office
             Suite 350
9            100 Cherokee Street
             Marietta, GA 30090
10           770.528.4014

11   ALSO PRESENT:

12            Amy Everett
              James Hopkins
13            Laura Murphree

14

15

16

17

18

19

20

21

22

23

24

25
```

**2**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

```
 1                INDEX TO PROCEEDINGS
 2                 EXAMINATION INDEX
 3    BRIAN S. BATTERTON
 4    Examination by Mr. Batson                    5
 5    Errata Sheet                                67
 6    Certificate Page                            68
 7    _____
 8                   EXHIBIT INDEX
 9    Plaintiffs' Exhibits
10     8     PowerPoint presentation:          18
             Legal Update-2015 Annual Training
11           (JPB000826 - 833)
12     9     Email to All Personnel from        7
             Captain BS Batterton, 07-01-2015,
13           Re: 2015 Legislation
14
      Defendants' Exhibit
15
       6     Criminal warrant issued by the    27
16           Magistrate Court of Cobb County
             (JPB0066)
17
      (REPORTER'S NOTE:  Defendants' Exhibit 6 as
18    listed above was marked in a previous deposition
      and is attached for reference.  Defendants'
19    Exhibit was provided to the court reporter at a
      later time and not at the conclusion of the
20    deposition.  The court reporter has attached the
      exhibit in the form in which it was provided per
21    agreement of Counsel.)
22
      (End of Index)
23
24
25
```

**3**

Donovan Reporting, PC                                    770.499.7499

Electronically signed by Natalie Sandi (401-071-744-9134)                              ae252137-37e0-440e-b7a3-3996acc89ee2

```
 1              November 14, 2018
 2                11:08 a.m.
 3          (Whereupon the reporter provided a written
 4          disclosure to all counsel pursuant to
 5          Article 8.B. of the Rules and Regulations
 6          of the Board of Court Reporting.)
 7               MR. BATSON:  This is the deposition
 8   of -- is it Major Batterton?
 9               THE WITNESS:  It is.
10               MR. BATSON:  Okay.  And this
11   deposition is taken pursuant to at least
12   notice -- I don't remember if I sent a subpoena
13   or not -- did send a subpoena -- and all
14   objections except as to form of question are
15   reserved until such time as this deposition is
16   tendered in this or any other action.  Any other
17   conditions?
18               MR. SNELLING:  That is acceptable,
19   and we will read and sign.
20               MR. BATSON:  All right.  Could you
21   state your name for the record, please?
22               THE WITNESS:  My name is Brian
23   Batterton.
24               MR. BATSON:  All right.  And what is
25   your current rank?
```

**4**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

```
 1              Oh, we've got to swear him in.
 2    Thanks.
 3    BRIAN S. BATTERTON,
 4         being first duly sworn, was examined and
 5         testified as follows:
 6    EXAMINATION
 7    BY MR. BATSON:
 8         Q     Is that still your name?
 9         A     It's still my name.  Brian Batterton.
10         Q     Brian Batterton.  All right.  So
11    what's your rank?
12         A     Major.
13         Q     All right.  And how long have you
14    been with Cobb County?
15         A     About 24 years, give or take a
16    little, few months.
17         Q     All right.  Did you ever work for any
18    other law enforcement agency?
19         A     I worked for Georgia State University
20    for about less than a year.
21         Q     Okay.  And when did you assume a
22    training role?
23         A     I worked at training from, let's see,
24    mid-2000 -- or maybe it was 2001, yeah, to 2003
25    as a corporal.  And I was over police recruits at
```

**5**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

```
 1   the time.  I had a sergeant over me, but I was
 2   like their main supervisor.  And then I went
 3   and -- I've worked at training like as an adjunct
 4   instructor every year since then, since '01, but
 5   the assignments were '01 to '03 and 2012 to 2016.
 6   And there then I was the academy director.
 7         Q     All right.  And is that the Cobb
 8   County Academy?
 9         A     Correct.  Cobb County Department of
10   Public Safety Training Center.  And it's the
11   police academy side, not the fire academy side.
12         Q     Okay.  And what was your rank during
13   2012 to 2016?
14         A     Captain.
15         Q     Okay.  And we had asked you to appear
16   as a 30(b)(6) witness.  Were you made aware of
17   that was why you would be attending this?
18         A     Yes.
19         Q     Okay.  And in that manner, did you
20   review the topics that we listed in the notice?
21         A     I did.
22         Q     Okay.  So you feel prepared to
23   address any of -- all those?
24         A     I'll address whatever questions you
25   ask me --
```

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

1      Q      Okay.

2      A      -- to the best of my ability.

3      Q      All right.  Basically, I do have to

4    kind of clear that up.  In other words, you

5    addressed yourself and thought about each of

6    these --

7      A      Yes.

8      Q      -- topics that we listed?  Okay.  And

9    then I have to finish asking my question, and

10   I'll try and let you finish answering the

11   question.  Okay.

12          (Whereupon a document was identified as

13          Plaintiffs' Exhibit 9.)

14     Q      First thing we'll cover is Exhibit 9.

15   Could you tell us what Exhibit 9 is?

16     A      This is a 2015 legislative update

17   that I sent out on July 1, 2015.  It was an email

18   that was sent to the entire police department,

19   and it lists various House bills and Senate bills

20   that have potential impact for police officers.

21   And then it includes -- it's a summary of them,

22   and then it includes a link to the actual

23   statute.

24             And the summary was pulled off of --

25   cut and paste right out of the legislative

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

1    website.

2        Q    Are you the one who composed all the

3    updates that relate to law enforcement, or is

4    there some central post office that sends these

5    out, sends out what the updates are?

6        A    There's a variety of folks that

7    send -- there's some private companies that email

8    updates.  And if you subscribe, then you get that

9    update.  And sometimes we'll email that to the

10   whole police department.  So I compose some of

11   them, not all of them.  There's a variety of

12   places they come from.

13       Q    So I notice on Exhibit 9, it does

14   say, July 1, 2015.  Do you believe that's when

15   you sent this email out?

16       A    I do.

17       Q    Okay.  Is there any way to check

18   whether each officer acknowledges that they

19   received it?

20       A    There is not.

21       Q    Okay.

22       A    Could I add something?

23       Q    Sure.

24       A    Okay.  The reason I included this one

25   is because it included the crime of -- the law

**8**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

```
 1    change related to harassing phone calls and
 2    changed it to harassing communication.  That's
 3    Senate Bill 72.  It's on the second page near the
 4    top.
 5        Q     All right.  And do you recall what
 6    the difference was between -- or before July 2015
 7    and then after July 2015, what was the difference
 8    about the electronic kind of communications?
 9        A     The format of the law changed, the
10    way they outlined the statute, and they include
11    electronic communications and any other form of
12    communications in addition to telephone.  It used
13    to just be telephone.
14        Q     Okay.  Now, you're going right to our
15    30(b)(6) notice here.  The first topic I was
16    interested in here is the -- first, I want to get
17    into the process of how the training would have
18    occurred for a new law coming out July 2015 and
19    when Mr. Hopkins would have gotten his cycle
20    through to get more detail about that.
21        A     Well, some statutes that are
22    significant changes and officers encounter a lot
23    will actually have separate training sessions for
24    them.  So when Georgia changed the gun law
25    several years ago, we would -- I did a class.  It
```

**9**

Donovan Reporting, PC                                    770.499.7499

Electronically signed by Natalie Sandi (401-071-744-9134)                ae252137-37e0-440e-b7a3-3996acc89ee2

1  was like an hour or two -- I think a two-hour

2  legal update on that specific statute.  And

3  everybody in the department over the period of a

4  week came and attended, physically, in person,

5  the class.

6            For something like this, where these

7  statutes were kind of changed in a minor way, and

8  particularly the harassing communication one,

9  there wasn't really a need to do that because the

10 substance of the law did not change.  The only

11 thing that's changed was it became a crime to

12 commit harassing communications by more methods.

13           So, for example, before, it was just

14 telephone, and now email was included as well as

15 other forms of electronic communications, so

16 that's pretty self-explanatory.  So that's not

17 one where we're going to physically pull people

18 in for.

19      Q    Okay.  So basically, you'd be saying

20 that there was no separate class right away to

21 train on the change in the harassing

22 communications statute?

23      A    No, sir.  It was obvious.

24      Q    Okay.  That process.  All right.  Did

25 you-all get any information about -- or had you

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

1   had any prior training about the distinction

2   between phone calls and emails as to whether

3   they -- whether they're -- what's harassing about

4   a phone call versus what is harassing about an

5   email?

6        A     I'm not sure I'm understanding the

7   question.

8        Q     All right.  Were you aware of Georgia

9   law existing at least as of 2010 that what was

10  harassing about a phone call was the ringing of

11  the phone within the house and of the tying up of

12  the line within that house?  Were you aware of

13  that?

14       A     That's part of it, but what can also

15  be is the actual speech.  I'm also an attorney in

16  Georgia, and I'm aware of some other case laws

17  that indicate that a person who calls -- I think

18  it was Moss versus State, Georgia Court of

19  Appeals case, where a person called a DA's

20  investigator repeatedly and used profanity at the

21  investigator after being told to stop and over

22  getting charges dismissed.

23            And that person was charged and

24  convicted of harassing communications, and that

25  was within the statute.

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

1     Q     Okay.  Just to clarify, you know, the

2   person that's 30(b)(6), you didn't have any role

3   in reviewing the actual conduct of Mr. Hopkins in

4   this case, did you?

5     A     No.

6     Q     Okay.  All right.

7     A     After the fact -- I mean, I looked at

8   the report and the incident after the fact.

9     Q     Okay.  Well, I can't ask you about

10  that, so.

11          Were you aware of any changes in the

12  law about venue because of the email issue or

13  even phones, I guess?

14    A     The -- prior to the law change, the

15  general venue statute, jurisdiction statutes,

16  were applied to that, and there was some case law

17  on that too.  I don't recall the case name, but

18  in 2015, they added a subsection to control venue

19  on harassing communications which pretty much

20  codified it specific to that, which is anywhere

21  that the communication was sent from or was

22  received.

23          So it didn't actually change.  It

24  just included it as a subsection within that Code

25  section.

**12**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

```
 1        Q     So the training prior to July 1,
 2   2015, would have been that a phone call made from
 3   outside the state, as long as it harasses
 4   somebody inside the state, would be a harassing
 5   phone call and could generate probable cause even
 6   though the caller was in some foreign state?
 7        A     That was the state of the law then,
 8   yes, sir.
 9        Q     Okay.  And then when they did the
10   change in July 2015, they just added emails, and
11   the same logic stuck with the statute.  Is that
12   your view of it?
13        A     Well, they added email and other
14   forms of communication, and they actually took
15   that venue and stuck it within the Code section
16   as a subsection in the 16-11-39.1.
17        Q     Okay.  And no separate training was
18   done about the venue issue?
19        A     No, because venue didn't change.  It
20   was just added to that Code section.
21        Q     Okay.  All right.  So did you ever do
22   any training that there might be some question
23   about the jurisdictional reach of someone who
24   wasn't in Georgia at the time that they sent an
25   email?
```

Donovan Reporting, PC                              770.499.7499

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

1        A        The Code section says that there's

2    not a jurisdictional problem, that if harassing

3    communications takes place that venue is where

4    they send it from or where it was received.  So

5    there is no venue issue in this incident.  And it

6    did not change, so, no, we did not do any

7    specific new training.

8        Q        Okay.  And the difference between an

9    email and a phone message is, email, you have to

10   open it up to read it; right?  And it doesn't

11   really harass you by a ringing or anything, does

12   it?

13       A        Not by a ring -- I mean, there's, I

14   guess, a tone if you have a tone, or it could be

15   on silent, or it could be a vibration, you know,

16   all the different ways you can be notified.

17       Q        And you can set up your emails to not

18   have a tone when they come in by your own

19   settings.  You set your computer as to what kind

20   of notice you get about emails; right?

21       A        Generally, your personal computer, I

22   guess, and I don't know -- I wouldn't even know

23   how to do it on my County computer.

24       Q        You would have an IT department who

25   could do that?

**14**

Donovan Reporting, PC                                        770.499.7499

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

```
 1       A      I would.
 2       Q      Yeah.  Do you still -- you last
 3  trained -- you left training in 2016; is that
 4  correct?
 5       A      Yes, sir.
 6       Q      Since then, have you -- before that,
 7  did you do any training on the law with respect
 8  to whether an email -- whether you can arrest for
 9  an email -- in Georgia for an email that's sent
10  outside of -- from outside of Georgia based on
11  federal law?
12       A      We don't enforce federal law.
13       Q      All right.  Well, you have to follow
14  the federal constitution?
15       A      Correct.
16       Q      All right.  Which would limit what
17  kind of state law you could impose or enforce;
18  correct?
19       A      State statutes can be later held to
20  be unconstitutional, and we certainly have to
21  comply with the Fourth Amendment with search and
22  seizure.
23       Q      Okay.  Have you, since July of 2015,
24  taught anything about pulling back on a belief
25  that Georgia statutes have venue over someone who
```

**15**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

1    sends an email that might be unlawful from, say,

2    Alabama?

3        A    No.  That would be up to the courts

4    to decide.  If Georgia came up with some -- if

5    Georgia had some case law from the Georgia Court

6    of Appeals or the Supreme Court of Georgia or

7    there was some federal case law on that, then

8    that is something that we would put out as kind

9    of a change.

10            But I'm aware of no case law on that,

11    and I do not believe that to be to the state of

12    the law.  I believe the state of the law is that

13    it's appropriate -- the venue is appropriate

14    where the email is received as well as where it

15    was sent from.  So it's an either/or.  You can do

16    it either place.

17        Q    All right.  Let's talk about what is

18    or is not protected.  Because you are aware that

19    the 16-11-39.1 says that that Code section shall

20    not apply to constitutionally protected speech;

21    correct?

22        A    Correct.

23        Q    So before August of 2015, what

24    training was given as to the fact and law that

25    obscenity is not protected, but things like

**16**

Electronically signed by Natalie Sandi (401-071-744-9134)                ae252137-37e0-440e-b7a3-3996acc89ee2

```
 1   profanity, vulgarity, rudeness is protected
 2   speech?  Did you train on that?
 3        A    Again, you said -- just to make sure
 4   I'm clear, did you say profanity is not protected
 5   and vulgarity is protected?
 6        Q    No.  Profanity and vulgarity are
 7   protected, but obscenity is not.
 8        A    I didn't train on it in those
 9   specific terms, but training that related to what
10   is protected speech -- primarily what we would
11   focus on is looking at what speech, when directed
12   at a police officer, was a violation of, say, a
13   disorderly conduct statute.  And that's where the
14   First Amendment interplayed as well as some
15   issues on videotaping the police.  That's also a
16   First Amendment question.
17             So the main focus of training at the
18   training center in the time period that you're
19   speaking of was related to speech directed at
20   police officers.
21        Q    Okay.
22        A    And it did encompass things such as,
23   you know, isolated profanity is not the same as
24   fighting words and what constitutes fighting
25   words.  We would discuss that.
```

**17**

Electronically signed by Natalie Sandi (401-071-744-9134)    ae252137-37e0-440e-b7a3-3996acc89ee2

```
 1          (Whereupon a document was identified as
 2          Plaintiff's Exhibit 8.)
 3          Q      All right.  Let me show you what we
 4   have marked as Plaintiffs' Exhibit 8.  And if you
 5   would, identify that if you can.
 6          A      All right.  This is a 2015 annual
 7   training legal update PowerPoint.
 8          Q      Okay.  All right.  And the officers
 9   would have been taught, based on this, that a
10   citizen could tell an officer he's, you know, a
11   fucker, and that wouldn't be basis to arrest him
12   for disorderly conduct; right?
13          A      Correct.
14          Q      And that what has to happen is there
15   has to be some physical threatening conduct
16   associated with or near about the time of the
17   speech, and it's the conduct that generates the
18   arrest for the disorderly conduct; right?
19          A      Well, or it's the totality of the
20   circumstances where the speech is being uttered.
21   So there could be -- I think your statement's a
22   little bit too narrow.  I can't come up with an
23   example off the top of my head.  But you just
24   have to look at the totality of the
25   circumstances.
```

**18**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton         Everett vs Cobb County, Georgia, et al.         November 14, 2018

```
 1              So some words said face-to-face, you
 2   to me right here in this room, that included
 3   profanity or vulgarity may not amount to fighting
 4   words directed at a police officer but may amount
 5   to fighting words directed at a civilian.
 6              But then those same words directed at
 7   me as a police officer in a parking lot of an
 8   apartment complex where there's an angry crowd of
 9   a hundred people crowding around us, then those
10   exact same words may amount to fighting words
11   because the totality of the circumstances can end
12   up being in combination with the words what
13   creates that threat to the officer.
14        Q     Okay.  In the totality of
15   circumstances with respect to an email, there's
16   no crowd present.  Nobody's in danger of getting
17   hurt just when you open up an email; right?
18        A     Correct.
19        Q     And did you have training in before
20   August of 2015 that speech or videos about child
21   pornography would be a basis to arrest?
22        A     We did not talk about the child
23   pornography arrest situations like that.  Now,
24   there could have been various Internet-based
25   crime classes that were taught at the training
```

**19**

Electronically signed by Natalie Sandi (401-071-744-9134)                                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

1    center that dealt with the sending of child

2    pornography, but that was not something that I

3    trained.

4              You know, the thing is, though, on

5    the harassing communications statute, the

6    language doesn't have to specifically constitute

7    a threat to constitute harassing communications.

8    So the language used repeatedly in a short amount

9    of time, the language sent to various people

10   where a victim is also carbon copied on that

11   email, it's the whole totality of the

12   circumstances.  Because we're not looking at a

13   disorderly conduct charge reference, the

14   harassing communications statute.  It's a whole

15   separate thing.

16             The theme of that statute is an email

17   or other type of communication that's sent to

18   harass, molest, or threaten.  So there's an "or"

19   in there.  So language that is harassing or

20   repeated that is intended to harass can amount to

21   a violation of the harassing communication

22   statute even where no threat was issued.

23        Q    Are you aware that the federal law

24   might be that harassing speech is still protected

25   speech?

Donovan Reporting, PC                              770.499.7499

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton         Everett vs Cobb County, Georgia, et al.         November 14, 2018

```
 1       A     It's not always protected speech.
 2       Q     Can you tell us when it isn't,
 3   relative to email?
 4       A      When it is not?
 5       Q      Yeah.
 6       A      Well, what I can tell you is that the
 7   language of the harassing communication statute
 8   where it pertains to the communication where it
 9   says to harass, molest, or threaten did not
10   change from the harassing communication or the
11   harassing phone calls statute.
12              So with respect to what would
13   constitute a violation of harassing
14   communications and not pose a First Amendment
15   issue as per the Georgia Court of Appeals case
16   law prior to that law change that encompasses
17   emails would still be relevant, or persuasive at
18   the very least.
19              And the case that I told you about
20   where there was profanity-laced phone calls
21   repeatedly to an ADA -- or an ADA investigator,
22   that would still be relevant in the context of
23   email.  It's just the method of communication has
24   changed.
25              So if there were case law contrary to
```

**21**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

```
 1   that, then I would -- I would be able to more
 2   clearly go with what you're saying, but I'm not
 3   aware of any, and not all speech is protected.
 4        Q    Do you think you were just talking
 5   about the Moss case?
 6        A    I was.
 7        Q    Okay.  Well, how do you teach -- or
 8   before August of 2015, how did you teach what
 9   speech was harassing and unprotected versus
10   harassing speech that is protected or the
11   circumstances that make something illegal?
12        A    It would be the totality of the
13   circumstances.  And it's one of those things like
14   you were talking about obscenity.  What the
15   Supreme Court said about some obscenity is it may
16   be hard to define, but you know it when you see
17   it, or you know it when you hear it, or you know
18   it when you read it.
19             I mean, it's an application of common
20   sense and the whole totality of the circumstances
21   as to would a reasonable person feel harassed by
22   that communication, or would a reasonable person
23   be expected to let, you know, that communication
24   roll off their shoulders.
25             There's -- and what's expected of
```

**22**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

1   police is a higher standard.  We're expected to

2   tolerate more when email or communication is

3   directed at us than your average civilian.

4        Q    Okay.  Do you recall whether Cobb

5   County had, you know, prior to August of 2015,

6   had any training about speech between private

7   parties about what can be said as long as it's

8   pure speech either in a letter or an email?

9        A    Each Code section is discussed in

10  mandate, in basic mandate, in the criminal law

11  class.  So criminal law is -- I guess some

12  academies, it's a two-day class.  I think in our

13  academy, it's a three-day class.  I'm not sure

14  when Detective Hopkins went to mandate or where

15  he went to mandate, whether he got the two-day or

16  the three-day, but it's still each statute is

17  discussed and examples are provided based on the

18  instructor's experience and how the instructor

19  explains it.

20           I was not his basic mandate

21  instructor, I don't think.  So I'm not sure how

22  it was explained to him.  But that would be

23  covered in basic mandate.

24       Q    Okay.  Between 2015 and 2016 when you

25  left the training aspect of the department, do

**23**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

1   you recall any training that was put out by you

2   guys to the Cobb County people about what kind of

3   speech private persons can have between

4   themselves either in emails or letters that is or

5   is not harassing or that might trigger this

6   statute?  Any special training like that?

7        A    I don't -- I can't think of any, no,

8   on emails?

9        Q    Okay.  All right.  And probably none,

10  obviously, on letters?

11       A    Correct.

12       Q    Do you recall any training that,

13  between 2015 and the time that you left, that --

14  about defamation and where defamation fits within

15  the harassing communications statute?

16       A    I can't recall any --

17       Q    All right.

18       A    -- in that time frame.

19       Q    So do you train about what is

20  perjurious speech or false speech?

21       A    What is false speech?

22       Q    Yeah, or a false report?  Perjury is

23  not protected speech.  You would agree with that?

24       A    Correct.

25       Q    One of the questions I asked about

**24**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

1    was training your officers about what perjury is.

2         A    We, in basic mandate, we teach them

3    about the fact that if you make a false statement

4    in conjunction with obtaining a warrant, that can

5    constitute a Fourth Amendment violation, a Franks

6    violation.  And we talk about what a false

7    statement would be considered in that, and it

8    would be one that -- we train them that it would

9    be one that would affect probable cause.

10            So if a statement is material, it

11   affects probable cause.  If it affects probable

12   cause, you have to disclose it to the magistrate.

13   So that's the context of perjured testimony

14   that -- of training that's given to officers.

15            Now, the code sections that deal with

16   perjury and false statements, they're taught that

17   information in criminal law.  As for perjury,

18   lying under oath in a court proceeding, I mean,

19   that is a very commonsense Code section.  You

20   don't -- it doesn't take a whole lot of training

21   to tell somebody, don't lie in court, and you

22   don't ever have to worry about perjury.  False

23   statements, same thing.  False swearing, same

24   thing.

25         Q    Now, do you teach the officers that

**25**

Electronically signed by Natalie Sandi (401-071-744-9134)                ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

```
1     like purported victim comes in and the victim's
2     story to the officer, even though they didn't
3     sign anything saying, I swear this is true, is
4     that something -- is that the kind of speech that
5     can lead to a perjury charge or a false statement
6     charge?  Do you train the officers on that?
7          A    They get trained that if a person
8     comes in and lies to the police officer in a
9     matter of making a report, it can be a false
10    report of a crime.  And if they lie to an officer
11    in the course of an investigation, there's a
12    higher charge of false statements --
13         Q    Okay.
14         A    -- which is a felony and that,
15    depending on what they're lying about, there's a
16    potential for that to be a statute that's
17    violated by the person speaking to the officer.
18    And that could be a witness.  It could be the
19    victim.  It could be the suspect, if they've
20    elected to speak to the police.
21         Q    What was the misdemeanor charge you
22    mentioned?
23         A    False report of the crime.
24         Q    False report.  All right.
25         A    That gets applied to people that
```

Donovan Reporting, PC                                     770.499.7499

Electronically signed by Natalie Sandi (401-071-744-9134)                     ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

1    drive drunk, crash their car, run home, and

2    report it stolen, that kind of thing.  That's a

3    typical scenario for false report of a crime.

4        Q     All right.  You sort of covered this,

5    but what would Hopkins have been trained about

6    what should or should not be stated in a warrant

7    application?

8        A     He would have been trained that he

9    needs to state the facts that amount to probable

10   cause.  The other thing, though, about the

11   warrant application is the warrant application is

12   based on written and sworn verbal testimony to a

13   magistrate judge.

14             So when you take out a warrant using

15   the computer system that we have to take out a

16   warrant, when you put in the statute, it like

17   gives you some basic language.  And then you type

18   in additional facts into that language to make it

19   specific to your incident.

20             And then beyond that, you also

21   provide sworn testimony to the magistrate judge

22   to complete your basis for probable cause.

23       Q     (Whereupon a document previously marked as

24       Defendants' Exhibit 6 was identified.)

25       Q     All right.  Just to clear that up

Donovan Reporting, PC                                    770.499.7499

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton         Everett vs Cobb County, Georgia, et al.         November 14, 2018

```
 1    about that computer system, I'm going to show you
 2    what we've marked in a previous deposition as
 3    Defendants' Exhibit 6, and I've penciled it real
 4    lightly so I can erase it.
 5              And can you tell from that document
 6    whether that was one that went through the
 7    process you discussed about a computer-generated
 8    beginning in reference to the statute or
 9    something and then it gets filled in?  Or can you
10    tell from maybe Hopkins' signature that that was
11    electronic?
12         A    I'm reading it now.
13         Q    Okay.  That's what I want you to do.
14    Let me know.  You don't have to kill yourself on
15    it because I'll be able to ask Mr. Hopkins at
16    lunch or after lunch, so.
17         A    Yes, sir.  This looks like it was
18    done on the EWI system, the electronic warrant
19    system.
20         Q    Okay.  All right.  Now, what would be
21    the process?  You fill out your electronic
22    warrant, send paperwork -- well, other paperwork
23    along with the warrant over to the magistrate's
24    office, get it -- magistrate says, come over here
25    at 10:00 or call you, or how's that all work?
```

Donovan Reporting, PC                          770.499.7499

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

```
 1        A     It's been quite a while since I've
 2   had to take a warrant, but -- so I'll speak in
 3   general terms, and maybe you can clear up
 4   specifics with Detective Hopkins.
 5        Q     If you can --
 6        A     But in general terms --
 7        Q     Let me interrupt you.  If you can,
 8   try and think about it in terms of August 2015.
 9        A     Right.  It's been longer than that
10   since I've had to take a warrant.
11        Q     Okay.  All right.
12        A     But you would -- you log in.  You go
13   to open up a warrant affidavit.  You fill in the
14   charge like from a dropdown box of what the
15   violation is, and it gives you some initial
16   language.  And you type in the date -- you know,
17   between dates and times and the locations.  And
18   then you type in some specifics of what the crime
19   was.  And then you call the judge, and you let
20   him know that you have one pending.
21              And if he's available right then,
22   he'll talk to you right then.  He'll pull it up.
23   You'll be on face -- webcam, face-to-face with
24   the judge on a webcam.  And then the judge will
25   say, tell me what you've got.  And then you
```

**29**

Donovan Reporting, PC                                    770.499.7499

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

```
1    verbally explain it to him.  He reads the
2    affidavit.
3              And I guess the point -- one of the
4    points of that system was it kind of puts it into
5    a format that's sufficient as a warrant.  So they
6    don't have to do much, if any, editing to the
7    actual warrant.  They can just import it right
8    into the warrant.
9              And then you sign it on a pad --
10   which I believe was a pad, or there's some kind
11   of way to electronically sign the thing.  And the
12   judge signs it, and then you can print the
13   warrant.
14       Q    All right.  Now, if there had been
15   exhibits like the emails in this case, how would
16   the magistrate have been able to see those
17   through this process?
18       A    You know, I mean, however the judge
19   wanted to see them.  Things could be scanned and
20   emailed if the judge wanted to see them, or it's
21   possible that simply telling the judge or reading
22   some of the substance to the judge could have
23   been sufficient for the judge.  It's whatever the
24   judge wants to hear evidentiary-wise to establish
25   probable cause.
```

**30**

Donovan Reporting, PC                              770.499.7499

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

```
1       Q    And do you know if those tapes are
2   saved or that interview with the judge, testimony
3   to the judge, is saved?
4       A    I don't think so, but I'm not
5   positive.  Years ago, it wasn't.  But I don't
6   know now.
7       Q    Okay.  So obviously you don't use
8   past tapes of that process as a training tool, or
9   you haven't in the past?
10      A    No, sir.  There are no tapes of that.
11      Q    Okay.  All right.  Can you tell me as
12  of August 2015 what training was done by the
13  department about cease and desist letters done by
14  officers?
15      A    We did no training on cease and
16  desist letters.  But the -- for example, the
17  letter that was sent in this case was much more
18  akin to a courtesy warning than anything because,
19  you know, from a review of the case file, the
20  probable cause was established prior to the
21  sending of that letter.  The email that was sent
22  right after the letter was sent is minimal in
23  comparison to what took place prior.
24           So the conduct -- I mean, it states
25  it right here in the warrant that you handed me,
```

**31**

Donovan Reporting, PC                                       770.499.7499

Brian S. Batterton        Everett vs Cobb County, Georgia, et al.        November 14, 2018

```
 1   the Plaintiffs' Exhibit 13.
 2         (Whereupon the witness refers to
 3         Defendants' Exhibit 6.)
 4    A     It states facts from January 2015 and
 5   August 2015, so -- and references phrases,
 6   derogatory names that were used through that time
 7   period.
 8              So the probable cause that was
 9   established wasn't because of violation of that
10   letter.  That letter was a courtesy warning.
11    Q     So any emails that were received
12   before July 1 wouldn't have been covered; right?
13    A     Emails received before the law
14   changed is what you're saying?
15    Q     Yeah, yeah.
16    A     Correct, by that statute.  However,
17   they could be viewed in the totality of the
18   circumstances to form -- frame the totality of
19   the circumstances.  And they just wouldn't
20   constitute a violation of that particular
21   statute.
22              But from what I saw, the vast
23   majority of the harassing communication occurred
24   from August 24 to August 26, particularly
25   August 24 and August 26, the majority of it being
```

**32**

```
 1   August 24, so -- which was after the statute
 2   change.
 3        Q     All right.  And so tell me what
 4   training is done on cease and desist letters and
 5   then what training is done on what you're
 6   distinguishing -- courtesy warning?  What word
 7   did you use?
 8        A     It was like a courtesy warning.
 9        Q     Okay.  So tell me what training is
10   done on those two things.
11        A     There -- it's all part of an
12   officer's discretionary authority.  So training
13   that's done is that officers are trained that
14   they have some measure of discretion in how they
15   handle various incidents.  So there are --
16   there's more than one right way to handle a
17   situation.
18             Officers don't have to do it my way.
19   They have to be reasonable.  And as far as the
20   law goes and as far as the Fourth Amendment goes
21   and the First Amendment, officers need to be
22   reasonable.
23             So within that reasonable behavior,
24   there's a range.  And that range can include
25   giving somebody a warning, and it can include
```

**33**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

1    arresting somebody.  So he -- as far as how to

2    write a cease and desist letter, we did no

3    training.  But officers are trained on the fact

4    that they have some discretion in how they handle

5    their workload, especially detectives.

6              And he started low, if you will, with

7    a warning.  Don't talk to her anymore.  If you

8    have any questions, contact me, meaning the

9    detective.  And then when there was additional

10   contact, then the officer or the detective, it

11   appears, went ahead and acted on probable cause

12   that was already established based on conduct

13   that had already occurred.

14       Q     What training do you give about the

15   writing of cease and desist letters where the

16   officer puts in a condition that all

17   communication shall stop by a certain deadline?

18   Do you give any training about that?

19       A     No.

20       Q     Okay.  That would --

21       A     But, again, it just falls under

22   officers' discretion.

23       Q     Okay.  Do you give any training about

24   making sure that the officer is clear about time

25   zones when somebody's in a different time zone

**34**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

1   and they're setting a conditional deadline?

2       A    No, no.  It looks like for that, I

3   mean, I would imagine that common sense would

4   dictate the time zone would be where the letter

5   was mailed from.

6            But absent that, the courtesy letter

7   wasn't required, so even if there was a

8   misunderstanding on the courtesy letter as per

9   time zones, the probable cause had already been

10  established based on conduct that had already

11  occurred, so --

12      Q    All right.  When you say --

13      A    -- it really doesn't matter.

14      Q    Okay.  Did you notice in your review

15  of the file whether there was any evidence at any

16  point from January 1, 2015, to late August 2015

17  that Ms. Miller had told Ms. Everett to stop?

18      A    The file contained email, and there

19  was no email that was sent back from the victim,

20  from Ms. Miller, to Ms. Everett saying stop.

21  That was not included.

22            There was, however, an email in -- I

23  think it was August 24 where a phone number was

24  emailed and said, if you want to talk about this,

25  here's the number, or something like that.

**35**

Donovan Reporting, PC                                    770.499.7499

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

```
 1              And then there was another email, I
 2    believe that same date, that said something to
 3    the effect of, I want to see you cry.  I'll come
 4    to your school.  And then it said, poor --
 5    whatever her first name -- Lani doesn't want to
 6    be -- I guess she doesn't want to be contacted.
 7    And then it called her a name, a derogatory,
 8    profane name.  And then there was additional
 9    email that was sent after that email.
10              So from that, a reasonable officer
11    could infer that she didn't want to be contacted,
12    meaning Ms. Miller didn't want to be contacted,
13    yet the email flow continued.
14        Q     So is that all part of your training
15    that you did this review, or you're testifying as
16    an expert for the County?
17              MR. SNELLING:  Object to the form.
18        A     Well, I'm looking at this from a
19    training aspect because you're asking me what
20    kind of training needs to be given.  And as I
21    look at this, it emphasizes to me that there are
22    certain things that are common sense that don't
23    require training.
24              So I'm pointing out things that a
25    reasonable officer would look at and be able to
```

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

```
 1    make some logical inferences from.  And when you
 2    see those, it emphasizes the fact that we don't
 3    need -- I mean, we can't train on every single
 4    thing because there isn't enough time, nor is
 5    there enough creativity in a person to
 6    conceptualize every possible circumstance and
 7    manner of crime that could occur.
 8            So my review would show me, of this,
 9    that training is sufficient in order to point an
10    officer or a detective in the proper direction.
11    And that's the context at which I'm testifying.
12        Q     Okay.  And in that regard, did you
13    find it material that in the beginning of the
14    whole complaint from Ms. Miller that she was
15    saying, Ms. Everett was saying, that Ms. Miller
16    had an affair with her husband, and Ms. Miller
17    was claiming that was not true to Mr. Hopkins?
18    Did that pop up anywhere in your review of
19    anything?
20        A     I did see that, and the -- so I
21    looked at that from the standpoint of would there
22    need to be training regarding that type of a
23    statement or a misstatement if it was a -- or an
24    untruth if it were untrue.  And there is no
25    justification for an affair to be able to commit
```

**37**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

1    the crime of harassing communication.

2              So it really isn't relevant to

3    whether or not there's a violation of the statute

4    of harassing communications as to whether there

5    was an affair because the justification statute

6    for Georgia doesn't include that.  So

7    justifications could be self-defense, government

8    official, like a police officer or a deputy

9    carrying out the duties of their office, etc.

10             But there isn't one for this

11   circumstance, so I didn't deem it as relevant as

12   to whether or not there was probable cause for

13   that -- that particular charge or relevant to

14   whether there needs to be training related to

15   that because the detective stated it correctly.

16             I believe it was in one of the

17   supplemental reports maybe, or maybe it was in

18   the letter.  I just don't recall.  But I read it

19   where he said one party was claiming that there

20   was an affair; the other party was denying it.

21             But that in the context of the

22   statute or harassing communications, it wasn't

23   relevant as to whether or not one person is

24   attempting to harass, molest, or threaten another

25   person.  So I hope that answers your question in

**38**

Electronically signed by Natalie Sandi (401-071-744-9134)          ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

```
 1   a big, circular way.  I apologize.
 2        Q    So the officers are taught to put
 3   material things in their warrants; is that
 4   correct?
 5        A    Or disclose them to the judge, yes.
 6        Q    Okay.  And if -- do you realize or
 7   recognize that the topics of those emails was all
 8   about an allegation about an affair and that's
 9   what Ms. Everett was ticked about?  Is that
10   right?
11        A    That's what it appears to be, yes,
12   sir.
13        Q    Okay.  So if you take that -- if
14   that's not relevant, whether there's an affair or
15   not, then the other things are just words and
16   don't have any connection or meaning, right, like
17   slut, cunt, whore; right?
18        A    I disagree that they don't have
19   meaning.
20        Q    Okay.  All right.  So what was it
21   if -- you're saying that the fact about the
22   affair, that had nothing to do with the totality
23   of the circumstances?
24        A    I'm saying that the context or
25   content of the email is what was harassing
```

**39**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

```
 1    regardless of the reason for Ms. Everett sending
 2    the email.  I -- you know, a person would
 3    naturally be upset regarding an affair, but it
 4    doesn't give them the ability to commit the crime
 5    of harassing communications.
 6         Q     All right.  But the statute protects
 7    constitutionally protected speech; right?
 8               MR. SNELLING:  Object to the form.
 9         A     It does in the Code section, yes.
10         Q     Yeah.  Okay.  Do you know that
11    harassing speech can be protected under certain
12    circumstances?
13         A     Under certain circumstances.
14         Q     Okay.  And was there any chance that
15    Ms. Everett was going to hit Ms. Miller --
16               MR. SNELLING:  Object.
17         Q     -- when Ms. Miller's opening up those
18    emails?
19               MR. SNELLING:  Object to the form.
20         A     At the time she opened up the email,
21    as one was in Alabama and one was in Georgia, no.
22    But there was an email in there that said she
23    wanted to see her cry and that she would or may
24    come to Harrison High School.  So that would --
25    that would give an indication that there may be a
```

**40**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

```
 1   face-to-face confrontation.
 2        Q     And that's enough reason and probable
 3   cause to arrest someone, that there may be a
 4   confrontation?
 5        A     I'm saying that the totality of the
 6   circumstances.
 7        Q     Okay.  All right.  In your review of
 8   the file, did you notice that apparently
 9   Ms. Miller had withheld or made a false statement
10   to Mr. Hopkins about the affair?  Did you notice
11   that?
12        A     I didn't notice that it was ever
13   established conclusively.
14        Q     Do you know whether Hopkins ever
15   cleared that up in his mind?
16        A     I don't know.  I never asked him.  I
17   never spoke to him about it.
18        Q     Okay.  If a phone call lasts for,
19   say, 36 minutes, would you consider that to be a
20   consensual phone call if neither party told the
21   other party to hang up?
22        A     Depending what's being said on the
23   phone call.
24        Q     Well, one person can always hang up;
25   right?
```

**41**

Donovan Reporting, PC                                          770.499.7499

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

```
 1       A     One person can hang up unless there's
 2   reasons given to not hang up.  I mean, that was a
 3   very broad-based, hypothetical situation.
 4       Q     Okay.  All right.  Did you give
 5   officers training, you know, between July 1,
 6   2015, to August 2015, did you -- is there any
 7   training with Cobb County to tell citizens, if
 8   they don't like the emails that are coming in,
 9   don't open them or put them on spam?
10       A     Are you asking if we gave training to
11   the citizens on that?
12       Q     No, to officers to tell the citizens
13   that.
14       A     No.  But that, again, falls under
15   officers tell people all the time, you know,
16   ignore them.  If somebody comes to their door to
17   fight them, don't answer your door.  Call us
18   instead, things like that.
19             But in this, I believe there was some
20   fake email account made to try to slide past spam
21   filters is what 24 years' experience reading
22   it -- if an email was sent to me and it had my
23   name on it as the sender, that would certainly
24   spark my curiosity as to who has the same name as
25   me that's sending me an email.  So then I would
```

**42**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

1    be very likely to open it, so.

2        Q    So when you open up an email,

3    generally you're not captive to the person who's

4    sending the email, are you?

5        A    You're not, but you are captive of

6    whatever emotion it conjures up depending on the

7    totality of the circumstance.

8        Q    So --

9        A    I've certainly read email over my

10   years that has made me mad and has made me mad

11   for an extended period of time.

12       Q    Okay.  And does that go into the

13   training of what Hopkins might have been trained

14   as to what emails he can take all the way to

15   having somebody arrested for?

16       A    I think where it goes is it goes back

17   to the training on being reasonable under the

18   Fourth Amendment, and it goes back to applying

19   common sense, that when you look at a

20   situation -- when a person comes in and he makes

21   a report that they're being harassed and an

22   officer views that, they view it as, you know,

23   would a -- how would a reasonable person in this

24   same situation see it.

25            So that's the type of training they

**43**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

1    get is officers have to be reasonable in their

2    conduct, and you view these things from that

3    perspective.

4           And so being called a bunch of

5    names -- if a random stranger started emailing a

6    particular individual and calling that individual

7    the names that were called in these emails and

8    there was no connection between them, it would

9    very likely constitute harassing communications

10   if it persisted and persisted.

11       Q    Where does the officer look to see if

12   something's persisting?  How does an officer make

13   that determination, and how do you train the

14   officers to make that determination?

15       A    We look at the totality of the

16   circumstance.  In this case --

17       Q    No.  How do you train it?

18       A    How do we train it?

19       Q    Yeah, how do you train it?

20       A    Oh, we tell people to be reasonable,

21   and you know what persisting is.  It's a

22   matter -- it's an application of common sense.

23   Persisting is you look at the amount of time, and

24   you look at the frequency, and you balance that

25   with what's being said.  And if it's statements

**44**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

1    that are intended to harass, annoy, or threaten

2    or intimidate, and you apply common sense to

3    that.

4              There's no specific training as to

5    this amount of days and this amount of emails

6    operates to be considered persisting.

7         Q    Do you train as a matter of common

8    sense that the person sending the emails should

9    have been warned, stop this, I don't want this

10   anymore, before it crosses a line?

11        A    Well, as a matter common sense

12   looking at this case --

13        Q    No.  Do you train it?

14        A    We train as a matter common sense and

15   as being reasonable.  And looking at this case,

16   the officer could tell that Ms. Everett knew she

17   didn't want to be contacted.  She stated it in an

18   email.

19        Q    All right.  Let me ask you the

20   question and see if you can answer it directly.

21             Do you train that when you're

22   teaching someone about when to arrest, about

23   persistent communications, that one of the

24   factors they should look at is whether the

25   receiver has told the sender, stop, I don't want

**45**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

1    these communications anymore?  Do you train that?

2    Yes or no?

3         A     We train does the person know or

4    likely to know that the person that they're

5    contacting doesn't want to be contacted.

6         Q     And how do you -- do you train them

7    to ask the question:  Have you told them to stop?

8         A     Not specifically in those exact

9    terms, no.

10        Q     Well, what terms do you tell them to

11   look at that issue?

12        A     To establish the elements of the

13   crime.

14        Q     To establish that it's not wanted

15   communications?

16        A     We train them to establish the

17   elements of the crime.

18        Q     You don't give them any training

19   about what to look at as to whether the

20   communication is accepted, wanted, continued, who

21   knows?

22        A     That's part of establishing the

23   elements of the crime, and Detective Hopkins did

24   so in this case based on the content of the

25   emails that were sent by Ms. Everett.

**46**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

1        Q      Yeah.  So how do you know Ms. Miller
2    wasn't just entrapping Ms. Everett if those are
3    the standards you use?
4               MR. SNELLING:  Object to the form.
5        A      In that situation, there would have
6    been potentially with the courtesy warning letter
7    that was sent an opportunity for Ms. Everett to
8    say, whoa, I haven't been sending these emails,
9    whatever you're talking about.  I don't even know
10   what you're talking about.
11              That could have been said.  She could
12   have called.  So there was that opportunity
13   there.
14       Q      Did you ever check and see whether
15   Hopkins really made the phone calls to the
16   Everetts he claims he made?
17       A      I reviewed the incident report so
18   that I had context and could review it from a
19   training perspective.
20       Q      So did you ever review the emails in
21   this case?
22       A      I did.
23       Q      Okay.  Did you find whether they were
24   covered by the Constitution or not, protected by
25   the Constitution?

**47**

Donovan Reporting, PC                                770.499.7499

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

```
 1        A     In my --
 2        Q     Each one, one at a time?
 3              MR. SNELLING:  Object to the form.
 4        A     The Constitution doesn't require you
 5   to view each individual thing in isolation.  The
 6   Constitution is the whole standard of
 7   reasonableness under the Fourth Amendment.  It
 8   looks at totality of the circumstance, and
 9   officers are trained that repeatedly.
10        Q     Do you believe that the Constitution
11   says that emails are pure speech?
12        A     Repeat that question, please.
13        Q     Do you believe that the Constitution
14   would say that emails are pure speech.
15        A     I don't know what you mean by "pure."
16        Q     All right.  Thank you.  Okay.  Let's
17   see.  Do you believe that a book is pure speech?
18              MR. SNELLING:  Object to the form.
19        A     I believe books and email are speech.
20   I don't know why you're using the term pure in
21   there, but.
22        Q     Okay.  How about a newspaper?
23        A     That is speech.
24        Q     Okay.  And an email's speech?  Same
25   level of protection?
```

**48**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

1        A       The press is given additional

2    protection.

3        Q       Do you know what public fora speaking

4    is?

5        A       I do.

6        Q       Okay.  And is speech in a public fora

7    protected even though it's from a private person?

8        A       Sometimes, not every time.

9        Q       Okay.  And did you always -- is it

10   good, clear training to everybody as of August

11   2015, if they have a question about whether

12   speech is protected, they're supposed to ask

13   somebody?

14       A       That's always the case.  All of our

15   officers know that if they have a question on any

16   application of their job that they can contact

17   their supervisor.  Or if it's legal related, they

18   can contact me.  Or they can contact their

19   supervisor, and their supervisor will contact me.

20               Or they can contact the on-call

21   solicitor, or they can contact an on-call ADA if

22   they need to.  So there's plenty of people that

23   can be contacted if need be.

24       Q       So if an officer's clear that there's

25   been a violation of a law, they would just go

**49**

Electronically signed by Natalie Sandi (401-071-744-9134)                ae252137-37e0-440e-b7a3-3996acc89ee2

1    ahead and take out a warrant; right?

2        A       Correct.

3        Q       Okay.  But a method to resort to when

4    they're unclear about whether there might be a

5    violation of the law, they send a cease and

6    desist letter; right?

7                MR. SNELLING:  Object to the form.

8        A       Well, I can't speak to what the

9    detective's mindset was, but I can speak to what

10   my belief was upon reading the email, and that

11   was that he had already established probable

12   cause.  And that was just a courtesy warning, a

13   way to handle the situation that was amenable to

14   both and would be the least invasive way to

15   handle the situation.

16               So as for unsure, I wasn't unsure

17   upon reading it, and you'll have to ask the

18   detective whether or not he was unsure.

19       Q       And the officer also was putting in

20   the arrest warrant and in the cease and desist

21   letter information about the affair; right?

22       A       I don't believe I saw it in the

23   arrest warrant, and I would have to read the

24   cease and desist letter again.

25       Q       All right.  We'll show you what we

**50**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

```
 1   previously marked as Defendants' 6 from a prior
 2   deposition.
 3        A     This is the same --
 4        Q     Same thing.
 5        A     Okay.  Okay.  The arrest warrant
 6   says, "emails to the victim claiming the victim
 7   had engaged in an extramarital affair with the
 8   accused's husband."
 9        Q     So the officer found that was
10   material when he wrote his warrant; right?
11        A     It appears to be.
12        Q     Okay.  And the officer put something
13   about that -- did he put that in the cease and
14   desist?
15        A     Could you show me --
16        Q     Sure.
17        A     -- the cease and desist?  And I'll
18   give you a definitive answer.  Thank you.
19              Yes, sir.  I see it in the first
20   paragraph.
21        Q     All right.  And were you aware that
22   when Officer Hopkins called up Mr. Everett, when
23   they finally spoke and the arrest warrant had
24   already been issued, that the first question out
25   of Mr. Hopkins' mouth was, well, tell me about
```

**51**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

1   the affair.  Did it happen or not?  Are you aware

2   of that conversation?

3        A    Not specifically.

4        Q    Okay.  And were you aware that

5   Mr. Hopkins was told that the affair did happen?

6   He said, too late, let that warrant go through.

7   Are you aware about that?

8        A    Not specifically.  However, it still

9   doesn't change the nature of the harassing

10  communications.

11       Q    Okay.

12       A    It's not exculpatory.  It doesn't

13  negate probable cause.  It would clearly be

14  upsetting for someone.  I totally understand

15  that.  But it's not justification.

16       Q    Do you know what prior restraint is?

17       A    Not in the context that I bet you're

18  asking me.

19       Q    Well, tell me if you are able to

20  relate prior restraint to these cease and desist

21  letters.

22       A    I'm not.

23            MR. BATSON:  Okay.

24            MR. SNELLING:  If you don't

25  understand his context, you can ask him to

**52**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

1    explain.

2              THE WITNESS:  I don't understand his

3    context.

4        Q    All right.  Do you understand -- tell

5    me what your understanding of prior restraint is.

6        A    I don't -- I don't understand what

7    you're talking about.

8        Q    Tell me your understanding of prior

9    restraint.  You're a trainer.  Do you teach prior

10   restraint?

11       A    Not in those terms.  You'll have to

12   tell me what you're talking about, and then I'll

13   be able to tell you if we have some different

14   term for it.

15       Q    Unfortunately, you just have to

16   answer my questions.

17             Do you teach prior -- what prior

18   restraint is to the officers of Cobb County, or

19   did you when you were a trainer?

20             MR. SNELLING:  Object to the form.

21       A    I'm not -- I do not understand the

22   context of the question.

23       Q    Do you understand what you taught

24   when you were a trainer in Cobb County?

25       A    I do --

**53**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

```
 1        Q      Did you --
 2        A      But I also understand that we may
 3   train exactly what you're talking about under a
 4   different name, so I can't answer that question
 5   not understanding what you're asking.
 6        Q      What's your understanding -- what is
 7   your understanding through all your training
 8   you've had -- you're a lawyer.  What is your
 9   training and understanding of what prior
10   restraint relates to?
11            MR. SNELLING:  Object to the form.  I
12   think the witness has responded to your question.
13   If you want to explain to him your context of
14   what you're talking about --
15            MR. BATSON:  No.  I'm entitled to ask
16   questions --
17            MR. SNELLING:  All right.
18            MR. BATSON:   -- and get some
19   cross-examination on what --
20            MR. SNELLING:  And he's entitled to
21   say he doesn't understand.
22        Q      You don't know what prior restraint
23   is?
24            MR. SNELLING:  In the context that
25   you're asking.
```

**54**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

```
1        A      Not in the context that you're
2   asking.
3        Q      No.  I did not ask in the context.
4   I'm asking you, in general, as a lawyer, what's
5   your understanding of prior restraint?
6        A      I don't know.  I don't understand the
7   question in the context of police work.
8        Q      Do you know that a cease and desist
9   is usually something issued by a judge and it's a
10  civil issue?  Is that correct?
11       A      That's correct.  This is a courtesy
12  warning letter.  He used the term cease and
13  desist.  He could have very easily said, please
14  stop so that I don't have to arrest you.  He
15  could have easily said that too.
16       Q      All right.
17       A      He used the term cease and desist to
18  sound official, but the point is it wasn't a
19  court order.  It wasn't an official from-a-judge
20  order to cease and desist.  It was not an
21  injunction.  It was not a restraining order.  It
22  was a courtesy warning, and any language
23  whatsoever that conveyed the, please stop doing
24  this so I don't have to take out a warrant on
25  you, would have been sufficient.
```

**55**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

```
 1      Q     All right.  Did that letter also have
 2   a condition in it that all communications had to
 3   stop by a certain time?
 4      A     It did, but it didn't need to.
 5      Q     That's -- isn't the person receiving
 6   the letter entitled to rely on what's stated in
 7   the letter from this official?
 8      A     There could have been a contact for
 9   clarification on that, but it wasn't --
10   certainly, it wasn't a letter saying, between now
11   and when you think the correct time is, say
12   anything you want.  The whole point was to cease
13   the harassment, the harassing communications.
14      Q     And if the last communication didn't
15   independently violate the law, then there was no
16   reason to arrest; isn't that right?
17            MR. SNELLING:  Object to the form.
18      A     Totally incorrect in my opinion.
19      Q     Why is that?
20      A     Because the crime had already
21   occurred.  Based on the totality of the
22   circumstances, everything taken together, in
23   other words, probable cause existed.  So that was
24   prior to the sending of the letter.
25            So just because he gave somebody a
```

**56**

Donovan Reporting, PC                                        770.499.7499

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

 1    courtesy warning and then decided to not do the
 2    courtesy warning -- because the person proved
 3    that it wasn't going to stop them from having
 4    contact with the other party and that the matter
 5    would continue and continue.  And so he elected
 6    to obtain a warrant based on facts and crimes
 7    that had already occurred.  It's irrelevant, the
 8    time on there.  It's irrelevant what that last
 9    contact was.
10         Q    Okay.  And the totality of the
11    circumstance is the fact that the alleged victim
12    never told the alleged perpetrator to stop.  That
13    didn't matter.  And the fact that the affair was
14    the whole topic of the thing, that didn't matter?
15    It just was the words.  It was just the words
16    that were used out of the context of what was
17    trying to be said?
18              MR. SNELLING:  Object to the form.
19         A    There was an offer of a phone call
20    that was never taken up, apparently.  From
21    reading the report, there was no mention that
22    there was ever that phone call made, and --
23         Q    But there's a conditional time line
24    that says, if you send any more communications
25    after a certain time, you're going to get

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

1    arrested.  I'm going to take out a warrant --

2         A    I was talking about --

3         Q    I'm going to get you arrested.

4         A    I'm sorry.  I was talking about

5    Ms. Everett sending an email with her phone

6    number to Lani Miller to discuss the matter.  And

7    there was not a phone call made to discuss the

8    matter.

9         Q    Oh, by Ms. Miller?

10        A    Correct.

11        Q    And there was not a --

12        A    And then there was a subsequent

13   email, I believe from Ms. Everett, that ended

14   with, I guess Lani doesn't want to be contacted.

15   And then it called her a derogatory term, the

16   C-word or something like that.  So it's -- there

17   seemed to be, what a reasonable officer could

18   infer with some clarity, knowledge on the part of

19   Ms. Everett that Ms. Miller didn't want to be

20   contacted.

21        Q    Okay.  Do you know whether

22   Ms. Everett had been told that directly by

23   Ms. Miller?  No, she had not.

24        A    I did not know that.

25        Q    Yeah.  So you let the police step in

**58**

Donovan Reporting, PC                                    770.499.7499

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

```
 1   and operate on behalf of one private party to try
 2   and end a dispute about whether there was an
 3   affair or not?
 4              MR. SNELLING:  Object to the form.
 5   Is this about training or the 30(b)(6)?
 6        A     No, sir.
 7        Q     Okay.  Is that your -- is that kind
 8   of the bottom line in what you're saying here?
 9              MR. BATSON:  No.  It isn't about
10   training.  No, it isn't.
11              MR. SNELLING:  Is this beyond a
12   30(b)(6)?
13              MR. BATSON:  Oh, absolutely, it is.
14              MR. SNELLING:  Okay.  I just want to
15   make clear.
16        Q     Yeah.  Okay.  So do you know whether
17   the department now is training that emails are
18   pure speech and that the content of the email is
19   protected unless it's obscenity?
20        A     I don't believe that that is an
21   accurate statement of the law.  So, no, we're not
22   training that.
23        Q     What would you say the accurate
24   statement of the law is?
25        A     The accurate statement of the law
```

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

1    would be email that's sent that's not intended to

2    harass, molest, threaten, or intimidate could be

3    considered protected speech, or the converse of

4    that would be the correct state of law.  I know

5    of no case law from the 11th Circuit or the

6    Supreme Court that would invalidate our current

7    harassing communication statute.

8         Q     All right.  So --

9         A     But if there is some, we would train

10   on it.

11        Q     So you know that unwanted speech can

12   be protected speech; right?

13        A     Some can, yes.

14        Q     So how do you train between the

15   difference between unwanted speech and harassing

16   speech?

17        A     It's common sense.

18        Q     Okay.  Just based on the speech?

19   Nothing to do with any other --

20        A     No, based on the totality of the

21   circumstances.

22             MR. BATSON:  Okay.  All right.  Let's

23   take a break, but it shouldn't be long.

24             MR. SNELLING:  Yes, sir.

25             - - -

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton                Everett vs Cobb County, Georgia, et al.                November 14, 2018

1          (Proceedings in recess, 12:28 p.m. to

2          12:41 p.m.)

3          Q    So did -- when you were the trainer,

4     did you train on the fact that officers can't do

5     things to chill protected speech?

6          A    Yes, in the context of seizing video,

7     when people video the actions of the police,

8     things like that, and that was part of the topic

9     of discussion.

10          Q    Okay.  How did you train officers to

11     handle a situation when somebody was videoing the

12     police?

13          A    We trained them to -- that the person

14     had a right to videotape the actions of police

15     and that if a supervisor -- an example was given

16     along the lines of if it was a use-of-force-type

17     incident and the person videoed it, that a

18     supervisor could go to them and ask nicely for

19     consent to view it to help us in our

20     investigation of a particular use of force.

21          But we couldn't take their phone away

22     from them and that we could not force them to

23     show us the video.  We could ask them to email us

24     the video.  We could ask them to show us the

25     video.  But that other than that, there isn't a

Donovan Reporting, PC                                                    770.499.7499

Electronically signed by Natalie Sandi (401-071-744-9134)                                ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

```
 1    lot we can do.
 2        Q     All right.  What did you do -- what
 3    was your training in 2015 about whether officers
 4    could tell or give a warning saying, stop that
 5    video?  What would you tell the officers about
 6    that?
 7        A     Well, that training that I'm telling
 8    you about, I think it was in 2012 or 2013.  And
 9    we told them that they could not tell people that
10    they could not video.
11        Q     Okay.
12        A     So that's it.
13        Q     So what if they give them a warning,
14    I'm warning you, I want you to stop videoing.  Is
15    that the same -- what you're telling me, you
16    can't even tell them, if you don't stop videoing,
17    I'm going to arrest you?
18        A     Correct.  It's not good in a
19    situation like that to tell somebody to not video
20    because you can't back that up by forcing them to
21    stop videoing.  So you can ask somebody to do
22    anything you want as a matter of consent.  But as
23    for telling them not to video, you can't -- you
24    shouldn't bother doing that because you can't
25    back it up.
```

**62**

Electronically signed by Natalie Sandi (401-071-744-9134)                              ae252137-37e0-440e-b7a3-3996acc89ee2

1          Whereas in this situation, the
2    officer could tell Ms. Everett not to video -- or
3    I'm sorry, correction -- not to send any more
4    emails because he could take action in that
5    situation based on what had happened previously.
6          Q      All right.  The fact that Ms. Everett
7    was in Alabama, could a judge from Georgia have
8    ordered her to not send any more emails?
9          A      Unlikely, but a judge from Georgia
10   could certainly issue a warrant for the crime of
11   harassing communications based on the venue
12   statute.
13         Q      Where would the actus reus be on
14   behalf of Ms. Everett?  Where would she be
15   performing anything that was in violation of the
16   law?
17         A      The venue statute covers that when it
18   says that the crime can be considered as
19   committed for venue purposes where the email was
20   sent from or where the email was received.
21         Q      Isn't there a presumption that the
22   sender under those circumstances is, in fact,
23   within the jurisdiction of Georgia?  Isn't that
24   the presumption or the interpretation of the
25   statute?

**63**

Electronically signed by Natalie Sandi (401-071-744-9134)                              ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

```
 1        A      I believe no because even the
 2   jurisdiction law for Georgia talks about crimes
 3   that are committed in two states can be
 4   considered or handled in Georgia as long as part
 5   of it is committed in Georgia.
 6              So in this situation, part of it,
 7   which would be the receiving of the email, would
 8   be committed in Georgia in the county where the
 9   email was received.
10        Q      So you're saying the effect of
11   reading the email establishes jurisdiction -- the
12   effect of reading the email in Georgia
13   establishes jurisdiction over a sender in another
14   state?
15        A      A plain reading of the statute would
16   indicate that to a police officer.  So if there
17   is a constitutional challenge to that or a state
18   challenge to that and it's determined not to be,
19   then training would be given in that area.
20              But as of right now, that I'm aware
21   of, there is none.  And so a reasonable officer
22   in that same situation would believe that he was
23   good in charging where the email was received.
24        Q      Wouldn't the question be what prior
25   case law would be imposed or superimposed on the
```

**64**

Donovan Reporting, PC                                    770.499.7499

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

1   statute to begin with?

2       A      Well, if that were the case, then one

3   would believe that the statute wouldn't have been

4   enacted had there been prior case law that

5   prohibited a statute such as that.  That's why

6   there's judicial committees at the legislature to

7   ensure that that's not the case.

8            But beyond that, certainly a police

9   officer is not required to conduct copious

10  amounts of legal research prior to enforcing a

11  statute.  They can rely on the statute.

12      Q      Does the legislature and -- don't

13  officers and the legislature presume that

14  statutes legislated in Georgia only legislate to

15  Georgia violations of the law?

16           MR. SNELLING:  Object to the form.

17      A      Georgia's venue statute that's been

18  around for ages says that crimes committed in

19  whole or in part in the state can be prosecuted

20  in the state.  So in a situation where an email's

21  sent from one state into the state of Georgia,

22  where it's opened in Cobb County, for example,

23  that would be committed in part in the state of

24  Georgia.

25      Q      If the email does what?

**65**

Donovan Reporting, PC                                              770.499.7499

```
 1      A      Harasses, annoys -- it's harasses,

 2   molests, or threatens, I believe.

 3      Q      So any of these repeated emails that

 4   I get that are harassing me, I can come to Cobb

 5   County and have you guys start arresting these

 6   various businesses that are sending harassing

 7   emails to me?  Is that your deal?

 8              MR. SNELLING:  Object to the form.

 9      A      I don't know what email -- if you're

10   in Cobb and you get a harassing email, you can

11   make a report, and we'll look at it.

12              MR. SNELLING:  We'll let him get

13   legal counsel on that.

14              MR. BATSON:  We'll do that after

15   lunch.  I don't think we have anything else.

16              MR. SNELLING:  We'll read and sign.

17        (Proceedings adjourned, 12:49 p.m.)

18

19

20

21

22

23

24

25
```

**66**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton          Everett vs Cobb County, Georgia, et al.          November 14, 2018

```
 1   I, BRIAN S. BATTERTON, Deponent,
 2   do hereby certify that I have read the foregoing
 3   deposition, and the same is a true and accurate
 4   transcript of my testimony, except for the
 5   changes listed below, if any.
 6   PAGE/LINE/CHANGE                        REASON
 7   _____
 8   _____
 9   _____
10   _____
11   _____
12   _____
13   _____
14   _____
15   _____
16   _____
17   _____
18   _____
19   _____
     If additional space is needed, please attach
20   separate sheet(s) and indicate number of
     additional page(s) here:_____
21

22
     _____
23   BRIAN S. BATTERTON, Deponent
24   Donovan Reporting, P.C. FAX: 770-428-5801
     237 Roswell Street, Marietta, GA  30060
25   Date of Deposition: 11-14-2018 CR: NS
```

**67**

Donovan Reporting, PC                                    770.499.7499

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

1         CERTIFICATE OF COURT REPORTER

2    STATE OF GEORGIA

3    COUNTY OF COBB

4              I hereby certify that the foregoing

5    deposition was reported as stated in the caption,

6    and the questions and answers thereto were

7    reduced to writing by me;

8              That the witness's right to read and

9    sign the deposition was reserved;

10             That the foregoing pages 1 through 69

11   represent a true, correct, and complete

12   transcript of the evidence given on the

13   above-referenced date by the witness,

14   BRIAN S. BATTERTON, who was first duly sworn by

15   me;

16             That I am not of kin or counsel to

17   any of the attorneys or parties in this case.

18             I do hereby disclose pursuant to

19   Article 10.B. of the Rules and Regulations of the

20   Board of Court Reporting of the Judicial Council

21   of Georgia that I am a Georgia Certified Court

22   Reporter; that I am an employee of Donovan

23   Reporting PC; that Donovan Reporting PC was

24   contacted by the attorney taking the deposition

25   to provide court reporting services for this

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

1    deposition; that I am not taking this deposition

2    under any contract that is prohibited by OCGA

3    15-14-37 (a) and (b) or Article 7.C. of the Rules

4    and Regulations of the Board; and I am not

5    disqualified for a relationship of interest under

6    OCGA 9-11-28(c).

7              There is no contract to provide

8    reporting services between myself or any person

9    with whom I have a principal and agency

10   relationship nor any attorney at law in this

11   action, party to this action, party having a

12   financial interest in this action, or agent for

13   an attorney at law in this action, party to this

14   action, or party having a financial interest in

15   this action.  Any and all financial arrangements

16   beyond my usual and customary rates have been

17   disclosed and offered to all parties.

18              This 29th day of November, 2018.

19

20

21              _____
                NATALIE SANDI, CCR

22              5677-0274-4622-6944
                Certified Court Reporter

23

24

25

**69**

Electronically signed by Natalie Sandi (401-071-744-9134)                    ae252137-37e0-440e-b7a3-3996acc89ee2

Brian S. Batterton                    Everett vs Cobb County, Georgia, et al.                    November 14, 2018

**A**

**a.m** 1:17 4:2
**ability** 7:2 40:4
**able** 22:1 28:15 30:16
  36:25 37:25 52:19
  53:13
**above-referenced**
  68:13
**absent** 35:6
**absolutely** 59:13
**academies** 23:12
**academy** 6:6,8,11,11
  23:13
**acceptable** 4:18
**accepted** 46:20
**account** 42:20
**accurate** 59:21,23,25
  67:3
**accused's** 51:8
**acknowledges** 8:18
**acted** 34:11
**action** 4:16 63:4
  69:11,11,12,13,14
  69:15
**actions** 61:7,14
**actual** 7:22 11:15
  12:3 30:7
**actus** 63:13
**ADA** 21:21,21 49:21
**add** 8:22
**added** 12:18 13:10,13
  13:20
**addition** 9:12
**additional** 27:18 34:9
  36:8 49:1 67:19,20
**address** 6:23,24
**addressed** 7:5
**adjourned** 66:17
**adjunct** 6:3
**affair** 37:16,25 38:5
  38:20 39:8,14,22
  40:3 41:10 50:21
  51:7 52:1,5 57:13
  59:3
**affect** 25:9
**affidavit** 29:13 30:2
**agency** 5:18 69:9
**agent** 69:12
**ages** 65:18
**ago** 9:25 31:5
**agree** 24:23

**agreement** 3:21
**ahead** 34:11 50:1
**akin** 31:18
**Alabama** 16:2 40:21
  63:7
**allegation** 39:8
**alleged** 57:11,12
**amenable** 50:13
**Amendment** 15:21
  17:14,16 21:14 25:5
  33:20,21 43:18 48:7
**amount** 19:3,4,10
  20:8,20 27:9 44:23
  45:5,5
**amounts** 65:10
**Amy** 1:3 2:12
**angry** 19:8
**annoy** 45:1
**annoys** 66:1
**annual** 3:10 18:6
**answer** 42:17 45:20
  51:18 53:16 54:4
**answering** 7:10
**answers** 38:25 68:6
**anymore** 34:7 45:10
  46:1
**apartment** 19:8
**apologize** 39:1
**apparently** 41:8
  57:20
**Appeals** 11:19 16:6
  21:15
**appear** 6:15
**APPEARANCES** 2:1
**appears** 34:11 39:11
  51:11
**application** 22:19
  27:7,11,11 44:22
  49:16
**applied** 12:16 26:25
**apply** 16:20 45:2
**applying** 43:18
**appropriate** 16:13,13
**area** 64:19
**arrangements** 69:15
**arrest** 15:8 18:11,18
  19:21,23 41:3 45:22
  50:20,23 51:5,23
  55:14 56:16 62:17
**arrested** 43:15 58:1,3
**arresting** 34:1 66:5

**Article** 4:5 68:19 69:3
**asked** 6:15 24:25
  41:16
**asking** 7:9 36:19
  42:10 52:18 54:5,25
  55:2,4
**aspect** 23:25 36:19
**assignments** 6:5
**associated** 18:16
**assume** 5:21
**ATLANTA** 1:2
**attach** 67:19
**attached** 3:18,20
**attempting** 38:24
**attended** 10:4
**attending** 6:17
**attorney** 11:15 68:24
  69:10,13
**Attorney's** 1:15 2:8
**attorneys** 68:17
**August** 16:23 19:20
  22:8 23:5 29:8
  31:12 32:5,24,24,25
  32:25 33:1 35:16,23
  42:6 49:10
**Augusta** 2:4
**authority** 33:12
**available** 29:21
**average** 23:3
**aware** 6:16 11:8,12
  11:16 12:11 16:10
  16:18 20:23 22:3
  51:21 52:1,4,7
  64:20

**B**

**b** 69:3
**back** 15:24 35:19
  43:16,18 62:20,25
**balance** 44:24
**based** 15:10 18:9
  23:17 27:12 34:12
  35:10 46:24 56:21
  57:6 60:18,20 63:5
  63:11
**basic** 23:10,20,23
  25:2 27:17
**basically** 7:3 10:19
**basis** 18:11 19:21
  27:22
**Batson** 1:12 2:3,3 3:4

**4**:7,10,20,24 5:7
  52:23 54:15,18 59:9
  59:13 60:22 66:14
**Batterton** 1:11 3:3,12
  4:8,23 5:3,9,10 67:1
  67:23 68:14
**beginning** 1:17 28:8
  37:13
**behalf** 59:1 63:14
**behavior** 33:23
**belief** 15:24 50:10
**believe** 8:14 16:11,12
  30:10 36:2 38:16
  42:19 48:10,13,17
  48:19 50:22 58:13
  59:20 64:1,22 65:3
  66:2
**best** 7:2
**bet** 52:17
**beyond** 27:20 59:11
  65:8 69:16
**big** 39:1
**Bill** 9:3
**bills** 7:19,19
**bit** 18:22
**Board** 4:6 68:20 69:4
**book** 48:17
**books** 48:19
**bother** 62:24
**bottom** 59:8
**box** 29:14
**break** 60:23
**Brian** 1:11 3:3 4:22
  5:3,9,10 67:1,23
  68:14
**broad-based** 42:3
**BS** 3:12
**bunch** 44:4
**businesses** 66:6

**C**

**C-word** 58:16
**call** 11:4,10 13:2,5
  28:25 29:19 41:18
  41:20,23 42:17
  57:19,22 58:7
**called** 11:19 36:7 44:4
  44:7 47:12 51:22
  58:15
**caller** 13:6
**calling** 44:6

**calls** 9:1 11:2,17
  21:11,20 47:15
**capacity** 1:7
**Captain** 3:12 6:14
**caption** 68:5
**captive** 43:3,5
**car** 27:1
**carbon** 20:10
**carrying** 38:9
**case** 1:4 11:16,19
  12:4,16,17 16:5,7
  16:10 21:15,19,25
  22:5 30:15 31:17,19
  44:16 45:12,15
  46:24 47:21 49:14
  60:5 64:25 65:2,4,7
  68:17
**cause** 13:5 25:9,11,12
  27:10,22 30:25
  31:20 32:8 34:11
  35:9 38:12 41:3
  50:12 52:13 56:23
**CCR** 69:21
**cease** 31:13,15 33:4
  34:2,15 50:5,20,24
  51:13,17 52:20 55:8
  55:12,17,20 56:12
**center** 6:10 17:18
  20:1
**central** 8:4
**certain** 34:17 36:22
  40:11,13 56:3 57:25
**certainly** 15:20 42:23
  43:9 56:10 63:10
  65:8
**Certificate** 3:6 68:1
**Certified** 1:14 68:21
  69:22
**certify** 67:2 68:4
**challenge** 64:17,18
**chance** 40:14
**change** 9:1 10:10,21
  12:14,23 13:10,19
  14:6 16:9 21:10,16
  33:2 52:9
**changed** 9:2,9,24 10:7
  10:11 21:24 32:14
**changes** 9:22 12:11
  67:5
**charge** 20:13 26:5,6
  26:12,21 29:14

Case 1:17-cv-03392-TWT    Document 71-17    Filed 03/04/19    Page 72 of 79

Brian S. Batterton                    Everett vs Cobb County, Georgia, et al.                    November 14, 2018

Page 71

38:13
**charged** 11:23
**charges** 11:22
**charging** 64:23
**check** 8:17 47:14
**Cherokee** 2:9
**child** 19:20,22 20:1
**chill** 61:5
**Circuit** 60:5
**circular** 39:1
**circumstance** 37:6
   38:11 43:7 44:16
   48:8 57:11
**circumstances** 18:20
   18:25 19:11,15
   20:12 22:11,13,20
   32:18,19 39:23
   40:12,13 41:6 56:22
   60:21 63:22
**citizen** 18:10
**citizens** 42:7,11,12
**civil** 55:10
**civilian** 19:5 23:3
**claiming** 37:17 38:19
   51:6
**claims** 47:16
**clarification** 56:9
**clarify** 12:1
**clarity** 58:18
**class** 9:25 10:5,20
   23:11,12,13
**classes** 19:25
**clear** 7:4 17:4 27:25
   29:3 34:24 49:10,24
   59:15
**cleared** 41:15
**clearly** 22:2 52:13
**Cobb** 1:5,15 2:8 3:16
   5:14 6:7,9 23:4 24:2
   42:7 53:18,24 65:22
   66:4,10 68:3
**code** 12:24 13:15,20
   14:1 16:19 23:9
   25:15,19 40:9
**codified** 12:20
**combination** 19:12
**come** 8:12 14:18
   18:22 28:24 36:3
   40:24 66:4
**comes** 26:1,8 42:16
   43:20

**coming** 9:18 42:8
**commit** 10:12 37:25
   40:4
**committed** 63:19 64:3
   64:5,8 65:18,23
**committees** 65:6
**common** 22:19 35:3
   36:22 43:19 44:22
   45:2,7,11,14 60:17
**commonsense** 25:19
**communication** 9:2
   10:8 12:21 13:14
   20:17,21 21:7,8,10
   21:23 22:22,23 23:2
   32:23 34:17 38:1
   46:20 56:14 60:7
**communications** 9:8
   9:11,12 10:12,15,22
   11:24 12:19 14:3
   20:5,7,14 21:14
   24:15 38:4,22 40:5
   44:9 45:23 46:1,15
   52:10 56:2,13 57:24
   63:11
**companies** 8:7
**comparison** 31:23
**complaint** 37:14
**complete** 27:22 68:11
**complex** 19:8
**comply** 15:21
**compose** 8:10
**composed** 8:2
**computer** 14:19,21
   14:23 27:15 28:1
**computer-generated**
   28:7
**conceptualize** 37:6
**conclusion** 3:19
**conclusively** 41:13
**condition** 34:16 56:2
**conditional** 35:1
   57:23
**conditions** 4:17
**conduct** 12:3 17:13
   18:12,15,17,18
   20:13 31:24 34:12
   35:10 44:2 65:9
**confrontation** 41:1,4
**conjunction** 25:4
**conjures** 43:6
**connection** 39:16

44:8
**consensual** 41:20
**consent** 61:19 62:22
**consider** 41:19
**considered** 25:7 45:6
   60:3 63:18 64:4
**constitute** 20:6,7
   21:13 25:5 32:20
   44:9
**constitutes** 17:24
**constitution** 15:14
   47:24,25 48:4,6,10
   48:13
**constitutional** 64:17
**constitutionally** 16:20
   40:7
**contact** 34:8,10 49:16
   49:18,18,19,20,21
   56:8 57:4,9
**contacted** 36:6,11,12
   45:17 46:5 49:23
   58:14,20 68:24
**contacting** 46:5
**contained** 1:19 35:18
**content** 39:25 46:24
   59:18
**context** 21:22 25:13
   37:11 38:21 39:24
   47:18 52:17,25 53:3
   53:22 54:13,24 55:1
   55:3,7 57:16 61:6
**continue** 57:5,5
**continued** 36:13
   46:20
**contract** 69:2,7
**contrary** 21:25
**control** 12:18
**conversation** 52:2
**converse** 60:3
**conveyed** 55:23
**convicted** 11:24
**copied** 20:10
**copious** 65:9
**corporal** 5:25
**correct** 6:9 15:4,15
   15:18 16:21,22
   18:13 19:18 24:11
   24:24 32:16 39:4
   50:2 55:10,11 56:11
   58:10 60:4 62:18
   68:11

**correction** 63:3
**correctly** 38:15
**Council** 68:20
**counsel** 2:1 3:21 4:4
   66:13 68:16
**county** 1:5,15 2:8
   3:16 5:14 6:8,9
   14:23 23:5 24:2
   36:16 42:7 53:18,24
   64:8 65:22 66:5
   68:3
**course** 26:11
**court** 1:1,14 3:16,19
   3:20 4:6 11:18 16:5
   16:6 21:15 22:15
   25:18,21 55:19 60:6
   68:1,20,21,25 69:22
**courtesy** 31:18 32:10
   33:6,8 35:6,8 47:6
   50:12 55:11,22 57:1
   57:2
**courts** 16:3
**cover** 7:14
**covered** 23:23 27:4
   32:12 47:24
**covers** 63:17
**CR** 67:25
**crash** 27:1
**creates** 19:13
**creativity** 37:5
**crime** 8:25 10:11
   19:25 26:10,23 27:3
   29:18 37:7 38:1
   40:4 46:13,17,23
   56:20 63:10,18
**crimes** 57:6 64:2
   65:18
**criminal** 3:15 23:10
   23:11 25:17
**cross-examination**
   54:19
**crosses** 45:10
**crowd** 19:8,16
**crowding** 19:9
**cry** 36:3 40:23
**cunt** 39:17
**curiosity** 42:24
**current** 4:25 60:6
**customary** 69:16
**cut** 7:25
**cycle** 9:19

**D**

**DA's** 11:19
**danger** 19:16
**date** 29:16 36:2 67:25
   68:13
**dates** 29:17
**day** 69:18
**days** 45:5
**deadline** 34:17 35:1
**deal** 25:15 66:7
**dealt** 20:1
**decide** 16:4
**decided** 25:1
**deem** 38:11
**defamation** 24:14,14
**Defendants** 1:9 2:6
**Defendants'** 3:14,17
   3:18 27:24 28:3
   32:3 51:1
**define** 22:16
**definitive** 51:18
**denying** 38:20
**department** 6:9 7:18
   8:10 10:3 14:24
   23:25 31:13 59:17
**depending** 26:15
   41:22 43:6
**Deponent** 67:1,23
**deposition** 1:11 3:18
   3:20 4:7,11,15 28:2
   51:2 67:3,25 68:5,9
   68:24 69:1,1
**deputy** 38:8
**derogatory** 32:6 36:7
   58:15
**desist** 31:13,16 33:4
   34:2,15 50:6,20,24
   51:14,17 52:20 55:8
   55:13,17,20
**detail** 9:20
**detective** 23:14 29:4
   34:9,10 37:10 38:15
   46:23 50:18
**detective's** 50:9
**detectives** 34:5
**determination** 44:13
   44:14
**determined** 64:18
**dictate** 35:4
**difference** 9:6,7 14:8
   60:15

Brian S. Batterton                 Everett vs Cobb County, Georgia, et al.                 November 14, 2018

**different** 14:16 34:25
  53:13 54:4
**directed** 17:11,19
  19:4,5,6 23:3
**direction** 37:10
**directly** 45:20 58:22
**director** 6:6
**disagree** 39:18
**disclose** 25:12 39:5
  68:18
**disclosed** 69:17
**disclosure** 4:4
**discretion** 33:14 34:4
  34:22
**discretionary** 33:12
**discuss** 17:25 58:6,7
**discussed** 23:9,17
  28:7
**discussion** 61:9
**dismissed** 11:22
**disorderly** 17:13
  18:12,18 20:13
**dispute** 59:2
**disqualified** 69:5
**distinction** 11:1
**distinguishing** 33:6
**DISTRICT** 1:1,1
**DIVISION** 1:2
**document** 7:12 18:1
  27:23 28:5
**doing** 55:23 62:24
**Donovan** 67:24 68:22
  68:23
**door** 42:16,17
**drive** 27:1
**dropdown** 29:14
**drunk** 27:1
**duly** 5:4 68:14
**duties** 38:9

**E**

**E** 1:13
**easily** 55:13,15
**EDDIE** 2:7
**editing** 30:6
**effect** 36:3 64:10,12
**either** 16:16 23:8 24:4
**either/or** 16:15
**elected** 26:20 57:5
**electronic** 9:8,11
  10:15 28:11,18,21

**electronically** 30:11
**elements** 46:12,17,23
**email** 3:12 7:17 8:7,9
  8:15 10:14 11:5
  12:12 13:13,25 14:9
  14:9 15:8,9,9 16:1
  16:14 19:15,17
  20:11,16 21:3,23
  23:2,8 31:21 35:18
  35:19,22 36:1,9,9
  36:13 39:25 40:2,20
  40:22 42:20,22,25
  43:2,4,9 45:18
  48:19 50:10 58:5,13
  59:18 60:1 61:23
  63:19,20 64:7,9,11
  64:12,23 65:25 66:9
  66:10
**email's** 48:24 65:20
**emailed** 30:20 35:24
**emailing** 44:5
**emails** 11:2 13:10
  14:17,20 21:17 24:4
  24:8 30:15 32:11,13
  39:7 40:18 42:8
  43:14 44:7 45:5,8
  46:25 47:8,20 48:11
  48:14 51:6 59:17
  63:4,8 66:3,7
**emotion** 43:6
**emphasizes** 36:21
  37:2
**employee** 68:22
**enacted** 65:4
**encompass** 17:22
**encompasses** 21:16
**encounter** 9:22
**ended** 58:13
**enforce** 15:12,17
**enforcement** 5:18 8:3
**enforcing** 65:10
**engaged** 51:7
**ensure** 65:7
**entire** 7:18
**entitled** 54:15,20 56:6
**entrapping** 47:2
**erase** 28:4
**Errata** 3:5
**especially** 34:5
**establish** 30:24 46:12
  46:14,16

**established** 31:20
  32:9 34:12 35:10
  41:13 50:11
**establishes** 64:11,13
**establishing** 46:22
**Everett** 1:3,3 2:12
  35:17,20 37:15 39:9
  40:1,15 45:16 46:25
  47:2,7 51:22 58:5
  58:13,19,22 63:2,6
  63:14
**Everetts** 47:16
**everybody** 10:3 49:10
**evidence** 35:15 68:12
**evidentiary-wise**
  30:24
**EWI** 28:18
**exact** 19:10 46:8
**exactly** 54:3
**Examination** 3:2,4
  5:6
**examined** 5:4
**example** 10:13 18:23
  31:16 61:15 65:22
**examples** 23:17
**exculpatory** 52:12
**exhibit** 3:8,14,17,19
  3:20 7:13,14,15
  8:13 18:2,4 27:24
  28:3 32:1,3
**exhibits** 1:19 3:9
  30:15
**existed** 56:23
**existing** 11:9
**expected** 22:23,25
  23:1
**experience** 23:18
  42:21
**expert** 36:16
**explain** 30:1 53:1
  54:13
**explained** 23:22
**explains** 23:19
**extended** 43:11
**extramarital** 51:7

**F**

**face** 29:23
**face-to-face** 19:1
  29:23 41:1
**fact** 12:7,8 16:24 25:3

                 34:3 37:2 39:21
  57:11,13 61:4 63:6
  63:22
**factors** 45:24
**facts** 27:9,18 32:4
  57:6
**fake** 42:20
**falls** 34:21 42:14
**false** 24:20,21,22 25:3
  25:6,16,22,23 26:5
  26:9,12,23,24 27:3
  41:9
**far** 33:19,20 34:1
**FAX** 67:24
**federal** 15:11,12,14
  16:7 20:23
**feel** 6:22 22:21
**felony** 26:14
**fight** 42:17
**fighting** 17:24,24 19:3
  19:5,10
**file** 31:19 35:15,18
  41:8
**fill** 28:21 29:13
**filled** 28:9
**filters** 42:21
**finally** 51:23
**financial** 69:12,14,15
**find** 37:13 47:23
**finish** 7:9,10
**fire** 6:11
**first** 5:4 7:14 9:15,16
  17:14,16 21:14
  33:21 36:5 51:19,24
  68:14
**fits** 24:14
**flow** 36:13
**focus** 17:11,17
**folks** 8:6
**follow** 15:13
**follows** 5:5
**fora** 49:3,6
**force** 61:20,22
**forcing** 62:20
**foregoing** 67:2 68:4
  68:10
**foreign** 13:6
**form** 3:20 4:14 9:11
  32:18 36:17 40:8,19
  47:4 48:3,18 50:7
  53:20 54:11 56:17

                 57:18 59:4 65:16
  66:8
**format** 9:9 30:5
**forms** 10:15 13:14
**found** 51:9
**Fourth** 15:21 25:5
  33:20 43:18 48:7
**frame** 24:18 32:18
**Franks** 25:5
**frequency** 44:24
**from-a-judge** 55:19
**fucker** 18:11

**G**

**GA** 2:4,9 67:24
**general** 12:15 29:3,6
  55:4
**generally** 14:21 43:3
**generate** 13:5
**generates** 18:17
**Georgia** 1:1,5,16 5:19
  9:24 11:8,16,18
  13:24 15:9,10,25
  16:4,5,5,6 21:15
  38:6 40:21 63:7,9
  63:23 64:2,4,5,8,12
  65:14,15,21,24 68:2
  68:21,21
**Georgia's** 65:17
**getting** 11:22 19:16
**give** 5:15 34:14,18,23
  40:4,25 42:4 46:18
  51:18 62:4,13
**given** 16:24 25:14
  36:20 42:2 49:1
  61:15 64:19 68:12
**gives** 27:17 29:15
**giving** 33:25
**go** 22:2 29:12 43:12
  49:25 52:6 61:18
**goes** 33:20,20 43:16
  43:16,18
**going** 9:14 10:17 28:1
  40:15 57:3,25 58:1
  58:3 62:17
**good** 49:10 62:18
  64:23
**gotten** 9:19
**government** 38:7
**guess** 12:13 14:14,22
  23:11 30:3 36:6

Donovan Reporting, PC                                                              770.499.7499

Brian S. Batterton                Everett vs Cobb County, Georgia, et al.                November 14, 2018

Page  73

58:14
**gun** 9:24
**guys** 24:2 66:5

**H**

**handed** 31:25
**handle** 33:15,16 34:4
   50:13,15 61:11
**handled** 64:4
**hang** 41:21,24 42:1,2
**happen** 18:14 52:1,5
**happened** 63:5
**harass** 14:11 20:18
   20:20 21:9 38:24
   45:1 60:2
**harassed** 22:21 43:21
**harasses** 13:3 66:1,1
**harassing** 9:1,2 10:8
   10:12,21 11:3,4,10
   11:24 12:19 13:4
   14:2 20:5,7,14,19
   20:21,24 21:7,10,11
   21:13 22:9,10 24:5
   24:15 32:23 38:1,4
   38:22 39:25 40:5,11
   44:9 52:9 56:13
   60:7,15 63:11 66:4
   66:6,10
**harassment** 56:13
**hard** 22:16
**Harrison** 40:24
**he'll** 29:22,22
**head** 18:23
**hear** 22:17 30:24
**held** 15:19
**help** 61:19
**High** 40:24
**higher** 23:1 26:12
**hit** 40:15
**home** 27:1
**hope** 38:25
**Hopkins** 1:6 2:12
   9:19 12:3 23:14
   27:5 28:15 29:4
   37:17 41:10,14
   43:13 46:23 47:15
   51:22 52:5
**Hopkins'** 28:10 51:25
**hour** 10:1
**house** 7:19 11:11,12
**how's** 28:25

**hundred** 19:9
**hurt** 19:17
**husband** 37:16 51:8
**hypothetical** 42:3

**I**

**identified** 7:12 18:1
   27:24
**identify** 18:5
**ignore** 42:16
**illegal** 22:11
**imagine** 35:3
**impact** 7:20
**import** 30:7
**impose** 15:17
**imposed** 64:25
**incident** 12:8 14:5
   27:19 47:17 61:17
**incidents** 33:15
**include** 9:10 33:24,25
   38:6
**included** 8:24,25
   10:14 12:24 19:2
   35:21
**includes** 7:21,22
**incorrect** 56:18
**independently** 56:15
**Index** 3:1,2,8,22
**indicate** 11:17 64:16
   67:20
**indication** 40:25
**individual** 44:6,6 48:5
**individually** 1:7
**infer** 36:11 58:18
**inferences** 37:1
**information** 10:25
   25:17 50:21
**initial** 29:15
**injunction** 55:21
**inside** 13:4
**instructor** 6:4 23:18
   23:21
**instructor's** 23:18
**intended** 20:20 45:1
   60:1
**interest** 69:5,12,14
**interested** 9:16
**Internet-based** 19:24
**interplayed** 17:14
**interpretation** 63:24
**interrupt** 29:7

**interview** 31:2
**intimidate** 45:2 60:2
**invalidate** 60:6
**invasive** 50:14
**investigation** 26:11
   61:20
**investigator** 11:20,21
   21:21
**irrelevant** 57:7,8
**isolated** 17:23
**isolation** 48:5
**issue** 12:12 13:18
   14:5 21:15 46:11
   55:10 63:10
**issued** 3:15 20:22
   51:24 55:9
**issues** 17:15

**J**

**James** 1:6 2:12
**January** 32:4 35:16
**job** 49:16
**John** 1:12 2:3,3
**JPB000826** 3:11
**JPB0066** 3:16
**JR** 2:7
**judge** 27:13,21 29:19
   29:24,24 30:12,18
   30:20,21,22,23,24
   31:2,3 39:5 55:9
   63:7,9
**judicial** 65:6 68:20
**July** 7:17 8:14 9:6,7
   9:18 13:1,10 15:23
   32:12 42:5
**jurisdiction** 12:15
   63:23 64:2,11,13
**jurisdictional** 13:23
   14:2
**justification** 37:25
   38:5 52:15
**justifications** 38:7

**K**

**kill** 28:14
**kin** 68:16
**kind** 7:4 9:8 10:7
   14:19 15:17 16:8
   24:2 26:4 27:2 30:4
   30:10 36:20 59:7
**knew** 45:16

**know** 12:1 14:15,22
   14:22 17:23 18:10
   20:4 22:16,17,17,23
   23:5 28:14 29:16,20
   30:18 31:1,6,19
   40:2,10 41:14,16
   42:5,15 43:22 44:21
   46:3,4 47:1,9 48:15
   48:20 49:3,15 52:16
   54:22 55:6,8 58:21
   58:24 59:16 60:4,11
   66:9
**knowledge** 58:18
**knows** 46:21

**L**

**language** 20:6,8,9,19
   21:7 27:17,18 29:16
   55:22
**Lani** 1:8 36:5 58:6,14
**lasts** 41:18
**late** 35:16 52:6
**Laura** 2:13
**law** 2:3 5:18 8:3,25
   9:9,18,24 10:10
   11:9 12:12,14,16
   13:7 15:7,11,12,17
   16:5,7,10,12,12,24
   20:23 21:16,16,25
   23:10,11 25:17
   32:13 33:20 49:25
   50:5 56:15 59:21,24
   59:25 60:4,5 63:16
   64:2,25 65:4,15
   69:10,13
**laws** 11:16
**lawyer** 54:8 55:4
**lead** 26:5
**left** 15:3 23:25 24:13
**legal** 3:10 10:2 18:7
   49:17 65:10 66:13
**legislate** 65:14
**legislated** 65:14
**Legislation** 3:13
**legislative** 7:16,25
**legislature** 65:6,12,13
**let's** 5:23 16:17 48:16
   60:22
**letter** 23:8 31:17,21
   31:22 32:10,10 34:2
   35:4,6,8 38:18 47:6

50:6,21,24 55:12
   56:1,6,7,10,24
**letters** 24:4,10 31:13
   31:16 33:4 34:15
   52:21
**level** 48:25
**lie** 25:21 26:10
**lies** 26:8
**lightly** 28:4
**limit** 15:16
**line** 11:12 45:10
   57:23 59:8
**lines** 61:16
**link** 7:22
**listed** 3:18 6:20 7:8
   67:5
**lists** 7:19
**little** 5:16 18:22
**locations** 29:17
**log** 29:12
**logic** 13:11
**logical** 37:1
**long** 5:13 13:3 23:7
   60:23 64:4
**longer** 29:9
**look** 18:24 36:21,25
   43:19 44:11,15,23
   44:24 45:24 46:11
   46:19 66:11
**looked** 12:7 37:21
**looking** 17:11 20:12
   36:18 45:12,15
**looks** 28:17 35:2 48:8
**lot** 9:22 19:7 25:20
   62:1
**low** 34:6
**lunch** 28:16,16 66:15
**lying** 25:18 26:15

**M**

**mad** 43:10,10
**magistrate** 3:16
   25:12 27:13,21
   28:24 30:16
**magistrate's** 28:23
**mailed** 35:5
**main** 6:2 17:17
**Major** 4:8 5:12
**majority** 32:23,25
**making** 26:9 34:24
**mandate** 23:10,10,14

Brian S. Batterton                Everett vs Cobb County, Georgia, et al.                November 14, 2018

Page  74

23:15,20,23 25:2
**manner** 6:19 37:7
**Marietta** 1:16 2:9
  67:24
**marked** 3:18 18:4
  27:23 28:2 51:1
**material** 25:10 37:13
  39:3 51:10
**matter** 26:9 35:13
  44:22 45:7,11,14
  57:4,13,14 58:6,8
  62:22
**mean** 12:7 14:13
  22:19 25:18 30:18
  31:24 35:3 37:3
  42:2 48:15
**meaning** 34:8 36:12
  39:16,19
**measure** 33:14
**mention** 57:21
**mentioned** 26:22
**MESHELLA** 1:8
**message** 1:4
**method** 21:23 50:3
**methods** 10:12
**mid-2000** 5:24
**Milledge** 2:4
**Miller** 1:8 35:17,20
  36:12 37:14,15,16
  40:15 41:9 47:1
  58:6,9,19,23
**Miller's** 40:17
**mind** 41:15
**mindset** 50:9
**minimal** 31:22
**minor** 10:7
**minutes** 41:19
**misdemeanor** 26:21
**misstatement** 37:23
**misunderstanding**
  35:8
**molest** 20:18 21:9
  38:24 60:2
**molests** 66:2
**months** 5:16
**Moss** 11:18 22:5
**mouth** 51:25
**Murphree** 2:13

**N**

**name** 4:21,22 5:8,9

12:17 36:5,7,8
  42:23,24 54:4
**names** 32:6 44:5,7
**narrow** 18:22
**Natalie** 1:13 69:21
**naturally** 40:3
**nature** 52:9
**near** 9:3 18:16
**need** 10:9 33:21 37:3
  37:22 49:22,23 56:4
**needed** 67:19
**needs** 27:9 36:20
  38:14
**negate** 52:13
**neither** 41:20
**never** 41:16,17 57:12
  57:20
**new** 9:18 14:7
**newspaper** 48:22
**nicely** 61:18
**Nobody's** 19:16
**NORTHERN** 1:1
**NOTE** 3:17
**notice** 4:12 6:20 8:13
  9:15 14:20 35:14
  41:8,10,12
**notified** 14:16
**November** 1:17 4:1
  69:18
**NS** 67:25
**number** 35:23,25
  58:6 67:20

**O**

**oath** 25:18
**Object** 36:17 40:8,16
  40:19 47:4 48:3,18
  50:7 53:20 54:11
  56:17 57:18 59:4
  65:16 66:8
**objections** 4:14
**obscenity** 16:25 17:7
  22:14,15 59:19
**obtain** 57:6
**obtaining** 25:4
**obvious** 10:23
**obviously** 24:10 31:7
**occur** 37:7
**occurred** 9:18 32:23
  34:13 35:11 56:21
  57:7

**OCGA** 69:2,6
**offer** 57:19
**offered** 69:17
**office** 1:15 2:3,8 8:4
  28:24 38:9
**officer** 1:6 8:18 17:12
  18:10 19:4,7,13
  26:2,8,10,17 34:10
  34:16,24 36:10,25
  37:10 38:8 43:22
  44:11,12 45:16
  50:19 51:9,12,22
  58:17 63:2 64:16,21
  65:9
**officer's** 33:12 49:24
**officers** 7:20 9:22
  17:20 18:8 25:1,14
  25:25 26:6 31:14
  33:13,18,21 34:3
  39:2 42:5,12,15
  44:1,14 48:9 49:15
  53:18 61:4,10 62:3
  62:5 65:13
**officers'** 34:22
**official** 1:7 38:8 55:18
  55:19 56:7
**Oh** 5:1 44:20 58:9
  59:13
**Okay** 4:10 5:21 6:12
  6:15,19,22 7:1,8,11
  8:17,21,24 9:14
  10:19,24 12:1,6,9
  13:9,17,21 14:8
  15:23 17:21 18:8
  19:14 22:7 23:4,24
  24:9 26:13 28:13,20
  29:11 31:7,11 33:9
  34:20,23 35:14
  37:12 39:6,13,20
  40:10,14 41:7,18
  42:4 43:12 47:23
  48:16,22,24 49:6,9
  50:3 51:5,5,12 52:4
  52:11,23 57:10
  58:21 59:7,14,16
  60:18,22 61:10
  62:11
**on-call** 49:20,21
**open** 14:10 19:17
  29:13 42:9 43:1,2
**opened** 40:20 65:22

**opening** 40:17
**operate** 59:1
**operates** 45:6
**opinion** 56:18
**opportunity** 47:7,12
**order** 37:9 55:19,20
  55:21
**ordered** 63:8
**outlined** 9:10
**outside** 13:3 15:10,10

**P**

**P** 1:12 2:3,3
**P.C** 67:24
**p.m** 1:17 61:1,2 66:17
**pad** 30:9,10
**page** 3:6 9:3
**page(s)** 67:20
**PAGE/LINE/CHA...**
  67:6
**pages** 68:10
**paperwork** 28:22,22
**paragraph** 51:20
**parking** 19:7
**part** 11:14 33:11
  36:14 46:22 58:18
  61:8 64:4,6 65:19
  65:23
**particular** 32:20
  38:13 44:6 61:20
**particularly** 10:8
  32:24
**parties** 23:7 68:17
  69:17
**party** 38:19,20 41:20
  41:21 57:4 59:1
  69:11,11,13,14
**paste** 7:25
**PC** 68:23,23
**penciled** 28:3
**pending** 29:20
**people** 10:17 19:9
  20:9 24:2 26:25
  42:15 44:20 49:22
  61:7 62:9
**performing** 63:15
**period** 10:3 17:18
  32:7 43:11
**perjured** 25:13
**perjurious** 24:20
**perjury** 24:22 25:1,16

25:17,22 26:5
**perpetrator** 57:12
**persisted** 44:10,10
**persistent** 45:23
**persisting** 44:12,21
  44:23 45:6
**person** 10:4 11:17,19
  11:23 12:2 22:21,22
  26:7,17 37:5 38:23
  38:25 40:2 41:24
  42:1 43:3,20,23
  45:8 46:3,4 49:7
  56:5 57:2 61:13,17
  69:8
**personal** 14:21
**Personnel** 3:12
**persons** 24:3
**perspective** 44:3
  47:19
**persuasive** 21:17
**pertains** 21:8
**phone** 9:1 11:2,4,10
  11:11 13:2,5 14:9
  21:11,20 35:23
  41:18,20,23 47:15
  57:19,22 58:5,7
  61:21
**phones** 12:13
**phrases** 32:5
**physical** 18:15
**physically** 10:4,17
**place** 14:3 16:16
  31:23
**places** 8:12
**plain** 64:15
**Plaintiff's** 18:2
**Plaintiffs** 1:3 2:2
**Plaintiffs'** 3:9 7:13
  18:4 32:1
**please** 4:21 48:12
  55:13,23 67:19
**plenty** 49:22
**point** 30:3 35:16 37:9
  55:18 56:12
**pointing** 36:24
**points** 30:4
**police** 5:25 6:11 7:18
  7:20 8:10 17:12,15
  17:20 19:4,7 23:1
  26:8,20 38:8 55:7
  58:25 61:7,12,14

Case 1:17-cv-03392-TWT    Document 71-17    Filed 03/04/19    Page 76 of 79

Brian S. Batterton                    Everett vs Cobb County, Georgia, et al.                    November 14, 2018

Page 75

64:16 65:8
**poor** 36:4
**pop** 37:18
**pornography** 19:21 19:23 20:2
**pose** 21:14
**positive** 31:5
**possible** 30:21 37:6
**post** 8:4
**potential** 7:20 26:16
**potentially** 47:6
**PowerPoint** 3:10 18:7
**prepared** 6:22
**present** 2:11 19:16
**presentation** 3:10
**press** 49:1
**presume** 65:13
**presumption** 63:21 63:24
**pretty** 10:16 12:19
**previous** 3:18 28:2
**previously** 27:23 51:1 63:5
**primarily** 17:10
**principal** 69:9
**print** 30:12
**prior** 11:1 12:14 13:1 21:16 23:5 31:20,23 51:1 52:16,20 53:5 53:8,9,17,17 54:9 54:22 55:5 56:24 64:24 65:4,10
**private** 8:7 23:6 24:3 49:7 59:1
**probable** 13:5 25:9 25:11,11 27:9,22 30:25 31:20 32:8 34:11 35:9 38:12 41:2 50:11 52:13 56:23
**probably** 24:9
**problem** 14:2
**proceeding** 25:18
**Proceedings** 3:1 61:1 66:17
**process** 9:17 10:24 28:7,21 30:17 31:8
**profane** 36:8
**profanity** 11:20 17:1 17:4,6,23 19:3
**profanity-laced** 21:20

prohibited 65:5 69:2
**proper** 37:10
**prosecuted** 65:19
**protected** 16:18,20 16:25 17:1,4,5,7,10 20:24 21:1 22:3,10 24:23 40:7,11 47:24 49:7,12 59:19 60:3 60:12 61:5
**protection** 48:25 49:2
**protects** 40:6
**proved** 57:2
**provide** 27:21 68:25 69:7
**provided** 3:19,20 4:3 23:17
**public** 6:10 49:3,6
**pull** 10:17 29:22
**pulled** 7:24
**pulling** 15:24
**pure** 23:8 48:11,14,15 48:17,20 59:18
**purported** 26:1
**purposes** 63:19
**pursuant** 4:4,11 68:18
**put** 16:8 24:1 27:16 39:2 42:9 51:12,13
**puts** 30:4 34:16
**putting** 50:19

___

**Q**

**question** 4:14 7:9,11 11:7 13:22 17:16 38:25 45:20 46:7 48:12 49:11,15 51:24 53:22 54:4,12 55:7 64:24
**questions** 6:24 24:25 34:8 53:16 54:16 68:6
**quite** 29:1

___

**R**

**random** 44:5
**range** 33:24,24
**rank** 4:25 5:11 6:12
**rates** 69:16
**reach** 13:23
**read** 4:19 14:10 22:18 38:18 43:9 50:23

66:16 67:2 68:8
**reading** 28:12 30:21 42:21 50:10,17 57:21 64:11,12,15
**reads** 30:1
**real** 28:3
**realize** 39:6
**really** 10:9 14:11 35:13 38:2 47:15
**reason** 8:24 40:1 41:2 56:16 67:6
**reasonable** 22:21,22 33:19,22,23 36:10 36:25 43:17,23 44:1 44:20 45:15 58:17 64:21
**reasonableness** 48:7
**reasons** 42:2
**recall** 9:5 12:17 23:4 24:1,12,16 38:18
**received** 8:19 12:22 14:4 16:14 32:11,13 63:20 64:9,23
**receiver** 45:25
**receiving** 56:5 64:7
**recess** 61:1
**recognize** 39:7
**record** 4:21
**recruits** 5:25
**reduced** 68:7
**reference** 3:18 20:13 28:8
**references** 32:5
**refers** 32:2
**regard** 37:12
**regarding** 37:22 40:3
**regardless** 40:1
**Regulations** 4:5 68:19 69:4
**relate** 8:3 52:20
**related** 9:1 17:9,19 38:14 49:17
**relates** 54:10
**relationship** 69:5,10
**relative** 21:3
**relevant** 21:17,22 38:2,11,13,23 39:14
**rely** 56:6 65:11
**remember** 4:12
**Repeat** 48:12
**repeated** 20:20 66:3

repeatedly 11:20 20:8 21:21 48:9
**report** 12:8 24:22 26:9,10,23,24 27:2 27:3 43:21 47:17 57:21 66:11
**reported** 68:5
**reporter** 1:14 3:19,20 4:3 68:1,22 69:22
**REPORTER'S** 3:17
**reporting** 4:6 67:24 68:20,23,23,25 69:8
**reports** 38:17
**represent** 68:11
**require** 36:23 48:4
**required** 35:7 65:9
**research** 65:10
**reserved** 4:15 68:9
**resort** 50:3
**respect** 15:7 19:15 21:12
**responded** 54:12
**restraining** 55:21
**restraint** 52:16,20 53:5,9,10,18 54:10 54:22 55:5
**reus** 63:13
**review** 6:20 31:19 35:14 36:15 37:8,18 41:7 47:18,20
**reviewed** 47:17
**reviewing** 12:3
**right** 4:20,24 5:10,13 5:17 6:7 7:3,25 9:5 9:14 10:20,24 11:8 12:6 13:21 14:10,20 15:13,16 16:17 18:3 18:6,8,12,18 19:2 19:17 24:9,17 26:24 27:4,25 28:20 29:9 29:11,21,22 30:7,14 31:11,22,25 32:12 33:3,16 35:12 39:10 39:16,17,20 40:6,7 41:7,25 42:4 45:19 48:16 50:1,6,21,25 51:10,21 53:4 54:17 55:16 56:1,16 60:8 60:12,22 61:14 62:2 63:6 64:20 68:8
**ring** 14:13

ringing 11:10 14:11
**Road** 2:4
**role** 5:22 12:2
**roll** 22:24
**room** 19:2
**Roswell** 67:24
**rudeness** 17:1
**Rules** 4:5 68:19 69:3
**run** 27:1

___

**S**

**S** 1:11 3:3 5:3 67:1,23 68:14
**Safety** 6:10
**Sandi** 1:13 69:21
**saved** 31:2,3
**saw** 32:22 50:22
**saying** 10:19 22:2 26:3 32:14 35:20 37:15,15 39:21,24 41:5 56:10 59:8 62:4 64:10
**says** 14:1 16:19 21:9 28:24 48:11 51:6 57:24 63:18 65:18
**scanned** 30:19
**scenario** 27:3
**school** 36:4 40:24
**search** 15:21
**second** 9:3
**section** 12:25 13:15 13:20 14:1 16:19 23:9 25:19 40:9
**sections** 25:15
**see** 5:23 22:16 30:16 30:19,20 36:3 37:2 37:20 40:23 43:24 44:11 45:20 47:14 48:17 51:19
**seizing** 61:6
**seizure** 15:22
**self-defense** 38:7
**self-explanatory** 10:16
**Senate** 7:19 9:3
**send** 4:13 8:7 14:4 28:22 50:5 57:24 63:3,8
**sender** 42:23 45:25 63:22 64:13
**sending** 20:1 31:21

Brian S. Batterton                Everett vs Cobb County, Georgia, et al.                November 14, 2018

40:1 42:25 43:4
45:8 47:8 56:24
58:5 66:6
**sends** 8:4,5 16:1
**sense** 22:20 35:3
36:22 43:19 44:22
45:2,8,11,14 60:17
**sent** 4:12 7:17,18 8:15
12:21 13:24 15:9
16:15 20:9,17 31:17
31:21,22 35:19 36:9
42:22 46:25 47:7
60:1 63:20 65:21
**separate** 1:19 9:23
10:20 13:17 20:15
67:20
**sergeant** 6:1
**services** 68:25 69:8
**sessions** 9:23
**set** 14:17,19
**setting** 35:1
**settings** 14:19
**Sheet** 3:5
**sheet(s)** 67:20
**short** 20:8
**shoulders** 22:24
**show** 18:3 28:1 37:8
50:25 51:15 61:23
61:24
**side** 6:11,11
**sign** 4:19 26:3 30:9,11
66:16 68:9
**signature** 28:10
**significant** 9:22
**signs** 30:12
**silent** 14:15
**simply** 30:21
**single** 37:3
**sir** 10:23 13:8 15:5
28:17 31:10 39:12
51:19 59:6 60:24
**situation** 33:17 42:3
43:20,24 47:5 50:13
50:15 61:11 62:19
63:1,5 64:6,22
65:20
**situations** 19:23
**slide** 42:20
**slut** 39:17
**SNELLING** 2:7 4:18
36:17 40:8,16,19

47:4 48:3,18 50:7
52:24 53:20 54:11
54:17,20,24 56:17
57:18 59:4,11,14
60:24 65:16 66:8,12
66:16
**solicitor** 49:21
**somebody** 13:4 25:21
33:25 34:1 42:16
43:15 49:13 56:25
61:11 62:19,21
**somebody's** 34:25
**something's** 44:12
**sorry** 58:4 63:3
**sort** 27:4
**sound** 55:18
**space** 67:19
**spam** 42:9,20
**spark** 42:24
**speak** 26:20 29:2 50:8
50:9
**speaking** 17:19 26:17
49:3
**special** 24:6
**specific** 10:2 12:20
14:7 17:9 27:19
45:4
**specifically** 20:6 46:8
52:3,8
**specifics** 29:4,18
**speech** 11:15 16:20
17:2,10,11,19 18:17
18:20 19:20 20:24
20:25 21:1 22:3,9
22:10 23:6,8 24:3
24:20,20,21,23 26:4
40:7,11 48:11,14,17
48:19,23,24 49:6,12
59:18 60:3,11,12,15
60:16,18 61:5
**spoke** 41:17 51:23
**standard** 23:1 48:6
**standards** 47:3
**standpoint** 37:21
**start** 66:5
**started** 34:6 44:5
**state** 4:21 5:19 11:18
13:3,4,6,7 15:17,19
16:11,12 27:9 60:4
64:14,17 65:19,20
65:21,21,23 68:2

**stated** 27:6 38:15
45:17 56:6 68:5
**statement** 25:3,7,10
26:5 37:23 41:9
59:21,24,25
**statement's** 18:21
**statements** 25:16,23
26:12 44:25
**states** 1:1 31:24 32:4
64:3
**statute** 7:23 9:10 10:2
10:22 11:25 12:15
13:11 17:13 20:5,14
20:16,22 21:7,11
23:16 24:6,15 26:16
27:16 28:8 32:16,21
33:1 38:3,5,22 40:6
60:7 63:12,17,25
64:15 65:1,3,5,11
65:11,17
**statutes** 9:21 10:7
12:15 15:19,25
65:14
**step** 58:25
**stolen** 27:2
**stop** 11:21 34:17
35:17,20 45:9,25
46:7 55:14,23 56:3
57:3,12 62:4,14,16
62:21
**story** 26:2
**stranger** 44:5
**Street** 2:9 67:24
**stuck** 13:11,15
**subpoena** 4:12,13
**subscribe** 8:8
**subsection** 12:18,24
13:16
**subsequent** 58:12
**substance** 10:10
30:22
**sufficient** 30:5,23
37:9 55:25
**Suite** 2:8
**summary** 7:21,24
**superimposed** 64:25
**supervisor** 6:2 49:17
49:19,19 61:15,18
**supplemental** 38:17
**supposed** 49:12
**Supreme** 16:6 22:15

60:6
**sure** 8:23 11:6 17:3
23:13,21 34:24
51:16
**suspect** 26:19
**swear** 5:1 26:3
**swearing** 25:23
**sworn** 5:4 27:12,21
68:14
**system** 27:15 28:1,18
28:19 30:4

---

**T**

**take** 5:15 25:20 27:14
27:15 29:2,10 39:13
43:14 50:1 55:24
58:1 60:23 61:21
63:4
**taken** 1:12 4:11 56:22
57:20
**takes** 14:3
**talk** 16:17 19:22 25:6
29:22 34:7 35:24
**talking** 22:4,14 47:9
47:10 53:7,12 54:3
54:14 58:2,4
**talks** 64:2
**tapes** 31:1,8,10
**taught** 15:24 18:9
19:25 25:16 39:2
53:23
**teach** 22:7,8 25:2,25
53:9,17
**teaching** 45:22
**telephone** 9:12,13
10:14
**tell** 7:15 18:10 21:2,6
25:21 28:5,10 29:25
31:11 33:3,9 42:7
42:12,15 44:20
45:16 46:10 51:25
52:19 53:4,8,12,13
62:4,5,9,16,19 63:2
**telling** 30:21 62:7,15
62:23
**tendered** 4:16
**term** 48:20 53:14
55:12,17 58:15
**terms** 27:9 29:3,6,8
46:9,10 53:11
**testified** 5:5

**testifying** 36:15 37:11
**testimony** 1:18 25:13
27:12,21 31:2 67:4
**Thank** 48:16 51:18
**Thanks** 5:2
**theme** 20:16
**thereto** 68:6
**thing** 7:14 10:11 20:4
20:15 25:23,24 27:2
27:10 30:11 37:4
48:5 51:4 57:14
**things** 16:25 17:22
22:13 30:19 33:10
36:22,24 39:3,15
42:18 44:2 61:5,8
**think** 10:1 11:17
18:21 22:4 23:12,21
24:7 29:8 31:4
35:23 43:16 54:12
56:11 62:8 66:15
**thought** 7:5
**threat** 19:13 20:7,22
**threaten** 20:18 21:9
38:24 45:1 60:2
**threatening** 18:15
**threatens** 66:2
**three-day** 23:13,16
**ticked** 39:9
**time** 3:19 4:15 6:1
13:24 17:18 18:16
20:9 24:13,18 32:6
34:24,25 35:4,9
37:4 40:20 42:15
43:11 44:23 48:2
49:8 56:3,11 57:8
57:23,25
**times** 29:17
**TJELVAR** 1:3
**told** 11:21 21:19
35:17 41:20 45:25
46:7 52:5 57:12
58:22 62:9
**tolerate** 23:2
**tone** 14:14,14,18
**tool** 31:8
**top** 9:4 18:23
**topic** 9:15 57:14 61:8
**topics** 6:20 7:8 39:7
**totality** 18:19,24
19:11,14 20:11
22:12,20 32:17,18

Donovan Reporting, PC                                            770.499.7499

Case 1:17-cv-03392-TWT    Document 71-17    Filed 03/04/19    Page 78 of 79

Brian S. Batterton                    Everett vs Cobb County, Georgia, et al.                    November 14, 2018

Page  77

39:22 41:5 43:7
  44:15 48:8 56:21
  57:10 60:20
**totally** 52:14 56:18
**train** 10:21 17:2,8
  24:19 25:8 26:6
  37:3 44:13,17,18,19
  45:7,13,14,21 46:1
  46:3,6,16 54:3 60:9
  60:14 61:4,10
**trained** 15:3 20:3
  26:7 27:5,8 33:13
  34:3 43:13 48:9
  61:13
**trainer** 53:9,19,24
  61:3
**training** 3:10 5:22,23
  6:3,10 9:17,23 11:1
  13:1,17,22 14:7
  15:3,7 16:24 17:9
  17:17,18 18:7 19:19
  19:25 23:6,25 24:1
  24:6,12 25:1,14,20
  31:8,12,15 33:4,5,9
  33:12 34:3,14,18,23
  36:14,19,20,23 37:9
  37:22 38:14 42:5,7
  42:10 43:13,17,25
  45:4 46:18 47:19
  49:10 54:7,9 59:5
  59:10,17,22 62:3,7
  64:19
**transcript** 67:4 68:12
**trigger** 24:5
**true** 26:3 37:17 67:3
  68:11
**try** 7:10 29:8 42:20
  59:1
**trying** 57:17
**two** 10:1 33:10 64:3
**two-day** 23:12,15
**two-hour** 10:1
**tying** 11:11
**type** 20:17 27:17
  29:16,18 37:22
  43:25
**typical** 27:3

———————————
          **U**
———————————
**unclear** 50:4
**unconstitutional**

15:20
**understand** 52:14,25
  53:2,4,6,21,23 54:2
  54:21 55:6
**understanding** 11:6
  53:5,8 54:5,6,7,9
  55:5
**Unfortunately** 53:15
**UNITED** 1:1
**University** 5:19
**unlawful** 16:1
**unprotected** 22:9
**unsure** 50:16,16,18
**untrue** 37:24
**untruth** 37:24
**unwanted** 60:11,15
**update** 7:16 8:9 10:2
  18:7
**Update-2015** 3:10
**updates** 8:3,5,8
**upset** 40:3
**upsetting** 52:14
**use** 31:7 33:7 47:3
  61:20
**use-of-force-type**
  61:16
**usual** 69:16
**usually** 55:9
**uttered** 18:20

———————————
          **V**
———————————
**variety** 8:6,11
**various** 7:19 19:24
  20:9 33:15 66:6
**vast** 32:22
**venue** 12:12,15,18
  13:15,18,19 14:3,5
  15:25 16:13 63:11
  63:17,19 65:17
**verbal** 27:12
**verbally** 30:1
**versus** 11:4,18 22:9
**vibration** 14:15
**victim** 20:10 26:1,19
  35:19 51:6,6 57:11
**victim's** 26:1
**video** 61:6,7,23,24,25
  62:5,10,19,23 63:2
**videoed** 61:17
**videoing** 61:11 62:14
  62:16,21

**videos** 19:20
**videotape** 61:14
**videotaping** 17:15
**view** 13:12 43:22 44:2
  48:5 61:19
**viewed** 32:17
**views** 43:22
**violate** 56:15
**violated** 26:17
**violation** 17:12 20:21
  21:13 25:5,6 29:15
  32:9,20 38:3 49:25
  50:5 63:15
**violations** 65:15
**VOLUME** 1:18,19
**vs** 1:4
**vulgarity** 17:1,5,6
  19:3

———————————
          **W**
———————————
**want** 9:16 28:13
  35:24 36:3,5,6,11
  36:12 45:9,17,25
  46:5 54:13 56:12
  58:14,19 59:14
  62:14,22
**wanted** 30:19,20
  40:23 46:14,20
**wants** 30:24
**warned** 45:9
**warning** 31:18 32:10
  33:6,8,25 34:7 47:6
  50:12 55:12,22 57:1
  57:2 62:4,13,14
**warrant** 3:15 25:4
  27:6,11,11,14,16
  28:18,22,23 29:2,10
  29:13 30:5,7,8,13
  31:25 50:1,20,23
  51:5,10,23 52:6
  55:24 57:6 58:1
  63:10
**warrants** 39:3
**wasn't** 10:9 13:24
  31:5 32:9 35:7
  38:22 47:2 50:16
  55:18,19 56:9,10
  57:3
**way** 8:17 9:10 10:7
  30:11 33:16,18 39:1
  43:14 50:13,14

**ways** 14:16
**we'll** 7:14 8:9 50:25
  66:11,12,14,16
**we're** 10:17 20:12
  23:1 59:21
**we've** 5:1 28:2
**webcam** 29:23,24
**website** 8:1
**Wednesday** 1:17
**week** 10:4
**went** 6:2 23:14,15
  28:6 34:11
**whatsoever** 55:23
**whoa** 47:8
**whore** 39:17
**withheld** 41:9
**witness** 4:9,22 6:16
  26:18 32:2 53:2
  54:12 68:13
**witness's** 68:8
**word** 33:6
**words** 7:4 17:24,25
  19:1,4,5,6,10,10,12
  39:15 56:23 57:15
  57:15
**work** 5:17 28:25 55:7
**worked** 5:19,23 6:3
**workload** 34:5
**worry** 25:22
**wouldn't** 14:22 18:11
  32:12,19 64:24 65:3
**write** 34:2
**writing** 34:15 68:7
**written** 4:3 27:12
**wrote** 51:10

———————————
          **X**
———————————

———————————
          **Y**
———————————
**yeah** 5:24 15:2 21:5
  24:22 32:15,15
  40:10 44:19 47:1
  58:25 59:16
**year** 5:20 6:4
**years** 5:15 9:25 31:5
  43:10
**years'** 42:21
**you-all** 10:25

———————————
          **Z**
———————————
**zone** 34:25 35:4
**zones** 34:25 35:9

———————————
          **0**
———————————
**01** 6:4,5
**03** 6:5
**07-01-2015** 3:12

———————————
          **1**
———————————
**1** 7:17 8:14 13:1
  32:12 35:16 42:5
  68:10
**1:17-cv-3392-TWT**
  1:4
**10.B** 68:19
**10:00** 28:25
**100** 2:9
**11-14-2018** 67:25
**11:08** 1:17 4:2
**1104** 2:4
**11th** 60:5
**12:28** 61:1
**12:41** 61:2
**12:49** 1:17 66:17
**13** 32:1
**14** 1:17 4:1
**15-14-37** 69:3
**16-11-39.1** 13:16
  16:19
**18** 3:10

———————————
          **2**
———————————
**2001** 5:24
**2003** 5:24
**2010** 11:9
**2012** 6:5,13 62:8
**2013** 62:8
**2015** 3:13 7:16,17
  8:14 9:6,7,18 12:18
  13:2,10 15:23 16:23
  18:6 19:20 22:8
  23:5,24 24:13 29:8
  31:12 32:4,5 35:16
  35:16 42:6,6 49:11
  62:3
**2016** 6:5,13 15:3
  23:24
**2018** 1:17 4:1 69:18
**237** 67:24
**24** 5:15 32:24,25 33:1
  35:23 42:21
**26** 32:24,25
**27** 3:15
**29th** 69:18

Brian S. Batterton                  Everett vs Cobb County, Georgia, et al.                  November 14, 2018

Page  78

| | | | | |
|---|---|---|---|---|
| **3** | | | | |
| **30(b)(6)** 6:16 9:15 | | | | |
| 12:2 59:5,12 | | | | |
| **30060** 67:24 | | | | |
| **30090** 2:9 | | | | |
| **30904** 2:4 | | | | |
| **350** 2:8 | | | | |
| **36** 41:19 | | | | |
| | | | | |
| **4** | | | | |
| | | | | |
| **5** | | | | |
| **5** 3:4 | | | | |
| **5677-0274-4622-69...** | | | | |
| 69:22 | | | | |
| | | | | |
| **6** | | | | |
| **6** 3:15,17 27:24 28:3 | | | | |
| 32:3 51:1 | | | | |
| **67** 3:5 | | | | |
| **68** 3:6 | | | | |
| **69** 68:10 | | | | |
| | | | | |
| **7** | | | | |
| **7** 3:12 | | | | |
| **7.C** 69:3 | | | | |
| **706.737.4040** 2:5 | | | | |
| **72** 9:3 | | | | |
| **770-428-5801** 67:24 | | | | |
| **770.528.4014** 2:10 | | | | |
| | | | | |
| **8** | | | | |
| **8** 3:10 18:2,4 | | | | |
| **8.B** 4:5 | | | | |
| **833** 3:11 | | | | |
| | | | | |
| **9** | | | | |
| **9** 3:12 7:13,14,15 | | | | |
| 8:13 | | | | |
| **9-11-28(c)** 69:6 | | | | |