IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

AMY EVERETT,

   Plaintiff,

      v.

COBB COUNTY, GEORGIA, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:17-CV-3392-TWT

## OPINION AND ORDER

This is a civil rights action. It is before the Court on the Defendants Cobb County and Officer James W. Hopkins' Motion for Summary Judgment [Doc. 65]. For the reasons stated below, the Defendants' Motion for Summary Judgment is GRANTED.

## I.    Background

The Plaintiff Amy Everett is a resident of Alabama.[1] On January 1, 2015, the Plaintiff's husband, Tjelvar Everett, admitted that he had engaged in an affair while both were working as teachers at Hiram High School in Georgia during the 2006-07 and 2007-08 school years.[2] On January 2, 2015, the Plaintiff attempted to contact her husband's alleged affair partner, Lani

---

[1]      Defs.' Statement of Material Facts ¶ 60 [Doc. 65-2].

[2]      *Id.* ¶ 61.

Miller, through Facebook Messenger.[3] The Plaintiff expressed anger and hurt at Ms. Miller's conduct and directed several profanity-laden insults at Ms. Miller's appearance and character.[4] Ms. Miller did not respond. The Plaintiff sent a similar message on January 10, 2015, demanding an apology, but again did not receive a response.[5] The Plaintiff then called Ms. Miller's place of employment, Harrison High School in Kennesaw, Georgia, to speak to Ms. Miller.[6] The Plaintiff claims that they had a 30-minute conversation in which Ms. Miller admitted to the affair and apologized.[7] The Plaintiff told Ms. Miller that she would place her name on a "revenge website" that lists the names of adulterers and demanded that Ms. Miller publicly confess to the affair.[8] When Ms. Miller did not comply, the Plaintiff proceeded to send a series of emails to Ms. Miller, her co-workers, her supervisors, and her family members over the course of several months.[9] In keeping with the Plaintiff's original messages to Ms. Miller, these emails were profane, insulting, and fixated on Ms. Miller's

---

[3]     *Id.* ¶ 64.

[4]     *Id.*; Defs.' Ex. 3 to Amy Everett Dep., at 71 [Doc. 68-1].

[5]     Defs.' Statement of Material Facts ¶ 64; Defs.' Ex. 3 to Amy Everett Dep., at 72.

[6]     Defs.' Statement of Material Facts ¶ 65.

[7]     *Id.* ¶¶ 65-67.

[8]     *Id.* ¶¶ 69, 72. The Plaintiff never placed Ms. Miller's name on this website. *Id.* ¶ 70.

[9]     *Id.* ¶¶ 75-86.

perceived moral failings.[10] The Plaintiff used various accounts to send these messages, at times posing as Ms. Miller or as Mr. Everett in order to "confess" to the affair on their behalf.[11] On August 24, 2015, the Plaintiff, writing from an account registered under Ms. Miller's name, sent emails to Ms. Miller, Ms. Miller's husband, and Ms. Miller's mother. In one email to Ms. Miller, the Plaintiff said that she planned to "come to Harrison for a visit this week" because she "need[ed] to see [Ms. Miller] cry."[12]

On August 25, 2015, Ms. Miller visited the Cobb County Police Department to file a report.[13] She spoke with Defendant James W. Hopkins, a police detective.[14] Ms. Miller outlined her history with the Plaintiff and provided Defendant Hopkins with the communications that she had received to date.[15] Ms. Miller denied having an affair with the Plaintiff's husband during her interview.[16] After reviewing the information provided by Ms. Miller, Defendant Hopkins determined that probable cause existed to seek a warrant for violations of O.C.G.A. § 16-11-39.1, which criminalizes harassing

---

[10]    *See generally* Defs.' Ex. 3 to Amy Everett Dep.

[11]    Defs.' Statement of Material Facts ¶¶ 75-86, 101-106.

[12]    *Id.* ¶ 80; Defs.' Ex. 3 to Amy Everett Dep., at 76.

[13]    *Id.* ¶ 87.

[14]    *Id.* ¶ 88.

[15]    *Id.* ¶¶ 89, 91-92.

[16]    *Id.* ¶ 93.

communications.[17] Defendant Hopkins took no further action on August 25, but told Ms. Miller that she should forward any additional communications to him.[18]

The Plaintiff resumed emailing on August 26, 2015. On that date, the Plaintiff sent emails "from" Ms. Miller and Mr. Everett to Ms. Miller's co-workers "admitting" to the affair and describing sex acts in lurid detail. The Plaintiff also sent an email to Ms. Miller's husband urging him to divorce Ms. Miller because of the affair.[19] The Millers forwarded these emails to Defendant Hopkins.[20] Defendant Hopkins called a number listed in one of the emails but was unable to reach the Plaintiff.[21] Defendant Hopkins then sent a letter to every email account associated with the Plaintiff, warning her to cease all communication with Ms. Miller or face criminal charges.[22] Defendant Hopkins set a deadline of 1 p.m. on August 26, 2015, with no time zone specified.[23] The Plaintiff, writing from an email address registered under Mr. Everett's name, responded to Defendant Hopkins and insisted that the affair was real, rather

---

[17] *Id.* ¶ 94.

[18] *Id.* ¶ 100.

[19] *Id.* ¶¶ 101-108. *See* Defs.' Ex. 3 to Amy Everett Dep., at 78-80.

[20] Defs.' Statement of Material Facts ¶¶ 105, 108.

[21] *Id.* ¶ 109.

[22] *Id.* ¶¶ 115-16, 118.

[23] *Id.* ¶ 116.

4

than merely suspected as the letter suggested.[24] At 12:36 p.m. CT/1:36 p.m. EST, the Plaintiff, again writing from an email account registered under Mr. Everett's name, emailed Ms. Miller to tell her that she should have named Mr. Everett in her "complaint" to Defendant Hopkins.[25] She further informed Ms. Miller that she would have to come testify in the Plaintiff's divorce proceedings.[26]

After learning of the additional email to Ms. Miller, Defendant Hopkins decided to apply for a warrant for the Plaintiff's arrest.[27] Magistrate Court Judge Hugh Robinson granted the warrant on August 28, 2015.[28] After securing the warrant, Defendant Hopkins recommended to the Cobb County Sheriff's Office that the Plaintiff be extradited from Alabama to face charges in Cobb County.[29] The Sheriff's Office submitted a formal request to the Solicitor's Office to extradite the Plaintiff from Alabama, which the Solicitor's Office then approved.[30] After receiving the extradition request, the Sheriff's Office in Jefferson County, Alabama, arrested the Plaintiff at her home in

---

[24]    *Id.* ¶ 120.

[25]    *Id.* ¶ 121.

[26]    *Id.* ¶ 121.

[27]    *Id.* ¶ 125.

[28]    *Id.* ¶¶ 127, 135.

[29]    *Id.* ¶ 139.

[30]    *Id.* ¶¶ 140-41.

Hoover, Alabama on September 8, 2015.[31] The Plaintiff was taken to the Jefferson County Jail.[32] On September 9, 2015, the Plaintiff's legal counsel negotiated the lifting of the extradition request in return for the Plaintiff voluntarily surrendering to authorities in Cobb County, Georgia.[33] The Plaintiff voluntarily surrendered on September 10, 2015, and was released on bond the same day.[34] On October 18, 2015, the Cobb County Solicitor's Office charged the Plaintiff with violating O.C.G.A. § 16-11-39.1.[35] On March 16, 2016, the Solicitor's Office entered a *nolle prosequi* in the Plaintiff's case and did not pursue the matter further.[36]

In October of 2016, the Plaintiff filed a formal complaint with the Cobb County Police Department regarding Defendant Hopkins' handling of the

---

[31]     *Id.* ¶ 143.

[32]     *Id.* ¶ 147.

[33]     *Id.* ¶ 148.

[34]     *Id.*

[35]     *Id.* ¶ 150.

[36]     *Id.* ¶ 157. The parties dispute the circumstances under which the *nolle prosequi* was entered. The Defendant claims that the Plaintiff received the *nolle prosequi* after completing an anger management evaluation, performing 40 hours of community service, and admitting guilt. *Id.* It is the policy of the Solicitor's Office to enter *nolle prosequi* agreements only in the cases of defendants who have admitted guilt. *Id.* ¶ 154. The Plaintiff admits to completing the evaluation and performing the community service but claims that she never admitted guilt. *See* Pl.'s Resp. to Defs.' Statement of Material Facts ¶ 157 [Doc. 75]. The *nolle prosequi* form submitted in state court does not indicate whether the Plaintiff admitted guilt. *See* Defs.' Ex. 14 to Amy Everett Dep., at 125 [Doc. 68-1].

6

case.[37] The Cobb County Police Department investigated the Plaintiff's claim and determined that the complaint was unfounded.[38] The Plaintiff also filed a formal complaint with the State Judicial Qualifications Commission against Magistrate Judge Hugh Robinson, contending that Judge Robinson wrongly issued the warrant that led to her arrest.[39] The Commission reviewed the complaint and found no impropriety on the part of Judge Robinson.[40]

The Plaintiff and Mr. Everett filed the instant suit on September 6, 2017.[41] The Complaint was filed pro se, but the Plaintiff has been represented by counsel since October 1, 2017.[42] The Plaintiff and her husband named Hopkins, Cobb County, and Ms. Miller as Defendants. Defendant Hopkins was sued in his individual and official capacities. The Plaintiff and her husband sought monetary and injunctive relief for 42 U.S.C. § 1983 violations of their First, Fourth, and Tenth Amendment rights under the U.S. Constitution, as well as for state law claims of false arrest, false imprisonment, and malicious prosecution.[43] On December 18, 2017, the Court dismissed the federal claims

---

[37]    *Id.* ¶¶ 159-60.

[38]    *Id.* ¶¶ 161-165.

[39]    *Id.* ¶ 166.

[40]    *Id.* ¶ 167.

[41]    Compl. [Doc. 1].

[42]    *See* Notice of Appearance [Doc. 9].

[43]    Compl. ¶¶ 126-87.

7

against Ms. Miller.[44] On May 15, 2018, the Court dismissed the remaining state law claims against Ms. Miller, and dismissed Mr. Everett from the case for failure to state a claim against any party.[45] The remaining Defendants have moved for summary judgment.

## II.    Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[46] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[47] The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.[48] The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists.[49]

---

[44]    First Dismissal Order, at 8 [Doc. 20].

[45]    Second Dismissal Order, at 9 [Doc. 37].

[46]    Fed. R. Civ. P. 56(c).

[47]    *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

[48]    *Celotex Corp. V. Catrett*, 477 U.S. 317, 323-24 (1986).

[49]    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III. Discussion

The Plaintiff brings claims under § 1983 for violations of her First and Fourth Amendment rights. The Plaintiff also brings analogous claims for false arrest, false imprisonment, and malicious prosecution under state law. The Court will begin with the federal claims.

### A. Federal Claims

The Plaintiff alleges that her First Amendment rights were violated when Defendant Hopkins sought her arrest under Georgia's "harassing communications" statute, O.C.G.A. § 16-11-39.1, in retaliation for the use of protected speech. The Plaintiff further alleges that her Fourth Amendment rights were violated when she was extradited from Alabama based on a warrant that, according to the Plaintiff, was issued without probable cause. The Plaintiff argues that Defendant Cobb County can be held liable for Defendant Hopkins' conduct because he purportedly acted pursuant to a county-wide policy of arresting individuals merely for using expletives. [50]

---

[50] The Plaintiff's Complaint also references a § 1983 claim for violations of the Plaintiff's Tenth Amendment rights. Compl. ¶ 7. The Complaint does not, however, provide a "short and plain statement of the claim" as required by Federal Rule of Civil Procedure 8(a)(2) or identify any facts giving rise to a Tenth Amendment violation. The Plaintiff suggests in her response brief that the circumstances giving rise to the Fourth Amendment violation might also give rise to a Tenth Amendment violation, but does not explain how or why this is the case. Therefore, insofar as the Plaintiff intended to pursue this claim, summary judgment should be entered in the Defendants' favor because the Plaintiff has failed to state a claim on which relief could be granted and because the Plaintiff has abandoned the claim at summary judgment. *See Fischer v. Fed. Bureau of Prisons*, 349 F. App'x 372, 375 (11th

9

Defendant Hopkins argues that he is entitled to qualified immunity on the § 1983 claims brought against him in his individual capacity. Defendant Cobb County argues that the Plaintiff has failed to show the existence of any unconstitutional policy, custom, or practice that could plausibly give rise to municipal liability, warranting dismissal of the § 1983 claims brought against it and against Defendant Hopkins in his official capacity.

### 1. Whether Defendant Hopkins is Entitled to Qualified Immunity

The doctrine of qualified immunity protects law enforcement officers from suit under § 1983 when certain conditions apply.[51] In order to assert the defense of qualified immunity, the officer must first show that he committed the allegedly wrongful acts within the scope of his discretionary authority.[52]

---

Cir. 2009) ("We note that Fischer has waived any claim related to the blood clotting in his leg because he did not address that issue in response to Dr. Tidwell's motion for summary judgment."); *see also Crayton v. Valued Servs. of Alabama, LLC*, 737 F. Supp. 2d 1320, 1331 (M.D. Ala. 2010) ("[T]he Court finds that Plaintiff has abandoned her non-termination retaliation claims due to her failure to address Defendant's arguments respecting these claims or otherwise provide support for them in her response to the motion for summary judgment."). Furthermore, although the Court need not and does not reach the issue, the Court is not convinced that the Tenth Amendment is a source of individual rights at all. *See Stone v. City of Prescott*, 173 F.3d 1172, 1175 (9th Cir. 1999) ("[I]t is the power of the federal government which is constrained by the Tenth Amendment, not the power of the States. Plaintiffs cannot found a section 1983 claim on the Tenth Amendment because it is neither a source of federal authority nor a fount of individual constitutional rights.").

[51]    *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

[52]    *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

The burden then shifts to the Plaintiff to show (1) that the officer's conduct violated a constitutional right and (2) that the right was clearly established.[53] In order for a constitutional right to be clearly established, the law must have been developed in "a concrete and factually defined context" such that a reasonable government official in the Defendant's place would understand that his conduct violated federal law.[54] Whether a constitutional right is clearly established is a question of law for the court to decide.[55]

There can be no doubt that Defendant Hopkins was acting within the scope of his discretionary authority as a police detective when he investigated the case, secured a warrant for the Plaintiff's arrest, and recommended to the Cobb County Sheriff's Office that the Plaintiff be extradited from Alabama. The question therefore becomes whether the facts viewed in the light most favorable to the Plaintiff show that Defendant Hopkins violated the Plaintiff's clearly established rights under the First or Fourth Amendments.

### a. First Amendment Claim

To establish that Defendant Hopkins unlawfully retaliated against the Plaintiff for exercising her First Amendment rights, the Plaintiff must show

---

[53]  *Id.*

[54]  *Jackson v. Sauls*, 206 F.3d 1156, 1164 (11th Cir. 2000) (quoting *Lassiter v. Alabama A & M Univ. Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994)).

[55]  *Simmons v. Bradshaw*, 879 F.3d 1157, 1163 (11th Cir. 2018).

11

"first, that [her] speech or act was constitutionally protected; second, that [Defendant Hopkins'] retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech."[56] The Plaintiff's argument fails at the first prong of the analysis. The Plaintiff contends that the content of her emails constituted protected speech. In these emails, however, the Plaintiff: (1) demanded an apology using threatening language;[57] (2) stated that she planned to visit Ms. Miller's place of work because she "need[ed] to see [her] cry";[58] (3) repeatedly described the alleged sexual encounter between Ms. Miller and Mr. Everett in detail and told Ms. Miller that she ought to have sex with Mr. Everett again;[59] (4) threatened to upend Ms. Miller's personal and

---

[56]    *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). The Plaintiff's Complaint contains two counts that are styled as "First Amendment" claims, with only one of them explicitly styled as a "retaliation" claim. After review of both counts, however, the Court concludes that the only cognizable First Amendment claim that the Plaintiff has raised is one for retaliation. In any event, because the Court concludes that the Plaintiff's speech was not constitutionally protected, any claim based on the First Amendment necessarily fails.

[57]    Ex. 3 to Amy Everett Dep., at 71 ("I had better get that sincere detailed fucking apology that I deserve from that cunt bitch, and it better be prompt… I don't have forgiveness and I certainly don't have any fucking patience for this shit, so that cunt better get this rolling.").

[58]    *Id.*, at 76 ("I need to see you cry. I think I'll come to Harrison for a visit this week. Poor Lani doesn't wanna [sic] be contacted. Fuck you cunt.").

[59]    *Id.*, at 76 ("Call your lover [phone number]. He misses you. Maybe you can invite him over and fuck on the kitchen counter again."); *id.*, at 79 ("Yes I fucked her. On your kitchen counter. On your sofa. I came in her. didn't [sic] use a rubber.").

12

T:\ORDERS\17\EVERETT\MSJTWT.DOCX

professional life if she did not "confess" to the affair;[60] and (5) followed through on that threat.[61] Communications intended to harass and frighten the recipient are not protected speech.[62] Nor are communications that are obscene.[63] Because the Plaintiff's speech was not constitutionally protected, it necessarily follows that Defendant Hopkins did not violate her First Amendment rights by seeking her arrest pursuant to O.C.G.A. § 16-11-39.1.[64]

---

[60]    Ex. 5 to Amy Everett Dep., at 94 [Doc. 68-1] (transmitting link to website outing adulterers); *id.*, at 95 (asking Ms. Miller whether her principal and her family "know you are a whore?"); *id.*, at 97 (threatening to tell Ms. Miller's minor son "about what a whore his mom is" and claiming that it is "[g]onna [sic] be a long time before this shit ends you slut").

[61]    Ex. 3 to Amy Everett Dep., at 78 (describing the affair to Ms. Miller's co-workers); *id.*, at 80 (same); Ex. 5 to Amy Everett Dep., at 100 (posing as Ms. Miller and "confessing" the affair to Ms. Miller's mother).

[62]    *United States v. Eckhardt*, 466 F.3d 938, 944 (11th Cir. 2006) (citing *United States v. Bowker*, 372 F.3d 365, 380 (6th Cir. 2004), *vacated on other grounds*, 543 U.S. 1182 (2005)).

[63]    *Id.* (citing *Roth v. United States*, 354 U.S. 476, 485 (1957) ("[O]bscenity is not within the area of constitutionally protected speech.")).

[64]    Count II of the Complaint appears to suggest that the Plaintiff's speech was constitutionally protected because her communications were directed at a teacher employed by the County. *See* Compl. ¶ 156 ("Defendant Hopkins actively initiated and procured the extradition for arrest and prosecution of Mrs. Everett in a criminal action in retaliation *for her vocal protest and criticism of a County teacher's extramarital affair*.") (emphasis added). If by this the Plaintiff means to argue that otherwise unprotected speech becomes protected when directed at a state employee, no such categorical rule exists in the Eleventh Circuit. If instead the Plaintiff means to argue that the details of a past affair between two public school teachers are a matter of public or political concern, the Court finds the suggestion risible. In any event, the Plaintiff does not develop this line of argument further at summary judgment, and the Court sees no reason to alter its analysis based on Ms. Miller's vocation.

13

Even if the Plaintiff's speech was protected under the First Amendment, the Plaintiff has not met her burden of proving that her speech was protected under clearly-established law. Defendant Hopkins is entitled to qualified immunity on the Plaintiff's First Amendment claim.

### b. Fourth Amendment Claim

The Plaintiff argues that Defendant Hopkins violated her Fourth Amendment rights by causing her to be arrested without probable cause. The Plaintiff styles her claim as one for false arrest and imprisonment. But, because the Plaintiff was arrested pursuant to a warrant and an extradition request, her claim is properly one for malicious prosecution.[65] "To establish a § 1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; and (2) a violation of [her] Fourth Amendment right to be free from unreasonable seizures."[66] The elements of the common law tort of malicious prosecution are: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice

---

[65] *See Whiting v. Traylor*, 85 F.3d 581, 585 (11th Cir. 1996) ("Here, Whiting says that Defendants applied for and obtained an arrest warrant and—based on the warrant—caused him to be unreasonably 'seized' in 1988. He says also he was unlawfully arrested in February 1989. Obtaining an arrest warrant is one of the initial steps of a criminal prosecution. Under these circumstances (that is, where seizures are pursuant to legal process), we agree with those circuits that say the common law tort 'most closely analogous' to this situation is that of malicious prosecution.").

[66] *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010) (citing *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004); *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003)).

14

and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused."[67] A police officer can be liable for malicious prosecution if he knew or should have known that his application for an arrest warrant "failed to establish probable cause or if he made statements or omissions in his application that were material and perjurious or recklessly false."[68]

The Plaintiff first argues that Detective Hopkins should have known that his warrant application lacked probable cause because the Plaintiff's contacts with Ms. Miller were not punishable under the harassing communications statute.[69] The statute criminalizes contacts with another person "for the purpose of harassing, molesting, threatening, or intimidating such person or the family of such person[.]"[70] The statute exempts "constitutionally protected speech" from its list of proscribed acts.[71] An officer reviewing the emails sent to Ms. Miller could reasonably conclude that the communications were sent with the intent to "harass[], molest[], threaten[], or

---

[67] *Id.* (quoting *Wood*, 323 F.3d at 882).

[68] *Williams v. Scott*, 682 F. App'x 865, 867 (11th Cir. 2017) (quoting *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016)).

[69] The Plaintiff concedes that Defendant Hopkins believed that probable cause existed at the time that he applied for an arrest warrant. *See* Pl.'s Resp. to Defs.' Statement of Material Facts ¶ 94.

[70] O.C.G.A. § 16-11-39.1(a)(1).

[71] *Id.* § 16-11-39.1(e).

intimidat[e]" Ms. Miller and members of her family. And, for reasons that the Court has already discussed, an officer could also reasonably conclude that these communications were not "constitutionally protected speech." The Plaintiff presents no plausible argument to the contrary, and the Court will not deny qualified immunity on the grounds urged by the Plaintiff.

The Plaintiff next argues that the circumstances surrounding her extradition gave rise to a Fourth Amendment violation. As best as the Court can determine, the Plaintiff's argument proceeds as follows: Under Georgia law, the Plaintiff's "conduct" of sending the allegedly harassing emails occurred in Alabama. Because the Plaintiff's allegedly unlawful conduct occurred in Alabama, Defendant Hopkins lacked authority to seek the Plaintiff's arrest under Georgia's harassing communications statute absent an express extraterritorial jurisdiction clause. Because Defendant Hopkins lacked authority to seek the Plaintiff's arrest, the warrant application was not supported by probable cause. Because the warrant application was not supported by probable cause, the resulting extradition gave rise to a Fourth Amendment violation.

The Plaintiff fundamentally misunderstands the circumstances under which Georgia criminal law can be applied extraterritorially. The Plaintiff is correct that, under Georgia law, the "conduct" of sending a harassing or threatening communication occurs at the place where the communication

originates, not where it is received.[72] The Plaintiff argues that Georgia cannot punish out-of-state defendants under the harassing communications statute, because, as a general rule, criminal laws "have no force of themselves beyond the jurisdiction of the state which enacts them."[73] It is unclear whether the Plaintiff believes that an express extraterritorial jurisdiction provision would fix the problem, or whether the Plaintiff believes that no criminal statute can ever be applied extraterritorially without running afoul of the U.S. Constitution. In either case, the Plaintiff is incorrect.

It has been well-settled law for over a century that "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its

---

[72] *Anderson v. Deas*, 279 Ga. App. 892, 893-94 (Ga. Ct. App. 2006) (holding that the conduct of placing a harassing phone call occurs at the place that the call is made); *Huggins v. Boyd*, 304 Ga. App. 563, 565-66 (2010) (holding that the conduct of sending a harassing email occurs at the place from which the email is sent) (citing *Anderson*); *see also LABMD, Inc. v. Tiversa, Inc.*, 509 F. App'x 842, 844 (11th Cir. 2013) ("For purposes of personal jurisdiction under Georgia's long-arm statute, Georgia courts have ruled that—when a defendant uses the telephone or email to contact a Georgia resident—defendant's conduct occurs at the place where defendant speaks into the telephone or types and sends his email.") (citing *Anderson*).

[73] *Huntington v. Attrill*, 146 U.S. 657, 669 (1892); *see also Manchester v. Massachusetts*, 139 U.S. 240, 263 (1891) ("The jurisdiction of a state is co-extensive with its territory; co-extensive with its legislative power.") (quoting *United States v. Bevans*, 16 U.S. 336, 387 (1818) (Marshall, C.J.)); *Grimes v. Greer*, 223 Ga. 628 (1967) ("Generally, penal laws have no extraterritorial effect.")).

power."[74] Georgia's criminal jurisdiction statute asserts that "[i]t is the policy of this state to exercise its jurisdiction over crime and persons charged with the commission of crime to the fullest extent allowable under, and consistent with, the Constitution of this state and the Constitution of the United States."[75] Thus, the question of whether Georgia's harassing communications statute can be applied extraterritorially does not, as the Plaintiff suggests, turn on whether the statute itself contains a jurisdictional provision. Rather, the question is whether some element of the crime, either the conduct element or the result element, occurred within Georgia.[76]

---

[74]    *Strassheim v. Daily*, 221 U.S. 280, 285 (1911) (citing *Simpson v. State*, 92 Ga. 41 (1893) (Holding that it is "beyond question that a criminal act begun in one state and completed in another renders the person who does the act liable to indictment in the latter.")).

[75]    O.C.G.A. § 17-2-1(a).

[76]    The Defendants argue that section (c) of the harassing communications statute permits its extraterritorial application. Section (c) states that "[t]he offense of harassing communications shall be considered to have been committed in the county where: (1) [t]he defendant was located when he or she placed the telephone call or transmitted, sent, or posted an electronic communication; or (2) [t]he telephone call or electronic communication was received." O.C.G.A. § 16-11-39.1(c). The Defendants' reliance on this statutory language is misplaced. This language was added to the statute in 2015 after passage of Senate Bill 72, which updated Georgia's "harassing phone calls" statute and extended its reach to all forms of telephonic and electronic communication. S.B. 72, 153d Gen. Assemb., Reg. Sess. (Ga. 2015). The caption of Senate Bill 72 makes clear that the language regarding the site of the crime was added "to provide for venue" in the appropriate county. *Id.* Venue might well have been appropriate in the county where Ms. Miller received the Plaintiff's emails. But the state must assert some independent basis for criminal jurisdiction. *See Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 793 n.30 (1985) ("Venue provisions come into play only after jurisdiction has been established and concern 'the place where judicial authority may be

18

As set forth in the harassing communications statute, a person commits the crime of harassing communications when he or she "[c]ontacts another person repeatedly via telecommunication, e-mail, text messaging, or any other form of electronic communication for the purpose of harassing, molesting, threatening, or intimidating such person or the family of such person[.]"[77] The Court is unable to locate any Eleventh Circuit or Georgia case law analyzing the elements of the crime or the extraterritorial reach of the statute.[78] But a

---

exercised'; rather than relating to the power of a court, venue 'relates to the convenience of litigants and as such is subject to their disposition.'").

[77]    O.C.G.A. § 16-11-39.1.

[78]    The Plaintiff argues that the reach of the harassing communications statute was settled by the Georgia Court of Appeals rulings in *Anderson* and *Huggins*. It was not. In *Anderson* and *Huggins*, the plaintiffs petitioned for protective orders against out-of-state defendants accused of domestic violence and stalking, respectively. 273 Ga. App. at 770; 304 Ga. App. at 563. The code sections governing such petitions authorize Georgia courts to exercise personal jurisdiction over out-of-state defendants to the extent permitted by Georgia's long-arm statute, O.C.G.A. § 9-10-11. *See* O.C.G.A. § 19-13-2(b) ("For proceedings under this article involving a nonresident respondent, the superior court where the petitioner resides or the superior court where an act involving family violence allegedly occurred shall have jurisdiction, where the act involving family violence meets the elements for personal jurisdiction provided for under paragraph (2) or (3) of Code Section 9-10-91."); O.C.G.A. § 16-5-94(a)-(b) ("A person who is not a minor who alleges stalking by another person may seek a restraining order by filing a petition alleging conduct constituting stalking as defined in Code Section 16-5-90. A person who is not a minor may also seek relief on behalf of a minor by filing such a petition... Jurisdiction for such a petition shall be the same as for family violence petitions as set out in Code Section 19-13-2."). The Georgia Court of Appeals held in both cases that, because the conduct of sending a harassing communication occurs at the place where it is sent, the defendants had not engaged in a "persistent course of conduct... in this state" for the purposes of Paragraph (3) of Georgia's long-arm statute. *Anderson*, 279 Ga. App. at 893-94 ("We, therefore, conclude that Deas did not engage in any conduct, persistent

19

common-sense reading of the statute suggests that the crime is not complete until the harassing communication is received. The word "contact" necessarily implies that a person is, in fact, contacted. An attempted but failed contact would not be punishable under the plain language of the statute. The Court concludes that a necessary result of the crime of harassing communications is that the target, or the family of the target, actually receives the communication. Georgia's criminal jurisdiction statute, consistent with the bounds set by the U.S. Supreme Court, permits extraterritorial application of its criminal laws when the result element of the crime occurs within its borders. Therefore, Defendant Hopkins did not make a mistake as to jurisdiction in seeking the Plaintiff's arrest, and, by extension, could not have violated the Plaintiff's constitutional rights by seeking her arrest in Alabama. Defendant Hopkins is therefore entitled to qualified immunity on the Plaintiff's Fourth Amendment claim.[79]

---

or otherwise, in Georgia, either when he made his daily phone calls to speak to his daughter or when he made the calls that allegedly threatened and harassed Anderson."); *Huggins*, 304 Ga. App. at 566 (citing *Anderson*). As the Court has already explained, Georgia's jurisdiction over *criminal* defendants is governed by its criminal jurisdiction statute, not the long-arm statute. Whereas the long-arm statute allows for personal jurisdiction when tortfeasors engage in a persistent course of *conduct* within Georgia, the criminal jurisdiction statute allows Georgia courts to exercise jurisdiction over crimes and criminal defendants when the conduct *or* the result of the crime occurs within Georgia. *Compare* O.C.G.A. § 9-10-11 *with* O.C.G.A. § 17-2-1.

[79]     In her response brief, the Plaintiff for the first time suggests that her extradition violated the dormant Commerce Clause. *See* Pl.'s Resp. to Defs.' Mot. for Summ. J., at 20-21 [Doc. 73]. Suits for violations of the dormant

20

Even if the Court were to assume *arguendo* that Georgia's harassing communications statute cannot be applied extraterritorially, it does not follow that Defendant Hopkins' conduct violated the Plaintiff's clearly established constitutional rights. The Plaintiff does not cite any relevant authority establishing that extradition based on a jurisdictionally defective warrant is an unreasonable seizure under the Fourth Amendment. To the contrary, clearly established precedent runs counter to the Plaintiff's position. Multiple Circuits, including the Eleventh, have held that arrests made outside of the arresting officer's jurisdiction at most violate state or federal jurisdictional statutes and do not give rise to a Fourth Amendment violation if the officer reasonably believed that the arrest was supported by probable cause.[80] The

---

Commerce Clause can be brought under § 1983. *Dennis v. Higgins*, 498 U.S. 439, 451 (1991). But the Plaintiff "may not amend her complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). In any event, the Plaintiff does not explain how the Defendants interfered with her right to engage in interstate commerce.

[80]    *See United States v. Goings*, 573 F.3d 1141, 1143 (11th Cir. 2009) ("[I]t was irrelevant for purposes of the Fourth Amendment whether Goings's arrest violated state law, so long as it was supported by probable cause.") (citing *Virginia v. Moore*, 553 U.S. 164, 166 (2008)); *see also United States v. Ryan*, 731 F.3d 66, 70 (1st Cir. 2013) ("[A]n extraterritorial arrest is not a per se violation of the Fourth Amendment.") (citing *Moore*); *United States v. Sed*, 601 F.3d 224, 228 (3d Cir. 2010) ("In light of *Moore*, Sed is plainly wrong when he argues that his arrest in violation of Ohio law renders the conduct of the [Pennsylvania] State Police unreasonable *per se* under the Fourth Amendment."); *Pasiewicz v. Lake Cty. Forest Pres. Dist.*, 270 F.3d 520, 526 (7th Cir. 2001) ("The federal government is not the enforcer of state law") (citation omitted). In *Engleman v. Deputy Murray*, the Eighth Circuit suggested in dicta that even an officer with objectively *un*reasonable beliefs

21

Plaintiff has not cited any precedent showing that her clearly established Fourth Amendment rights were violated, and Defendant Hopkins is therefore entitled to qualified immunity even if he, the Cobb County Sheriff's Office, the Cobb County Solicitor's Office, and this Court are wrong that the harassing communications statute can be applied extraterritorially.[81]

Because the Court has concluded that the Plaintiff cannot show that Defendant Hopkins lacked probable cause or that the Plaintiff's Fourth Amendment right to be free of unreasonable seizures was violated, the Court offers no opinion on whether the remaining elements of the common law tort of malicious prosecution are met in this case. In particular, the Court does not address the question of whether entry of the *nolle prosequi* in the Plaintiff's underlying criminal case resolved the case in her favor.[82]

---

regarding his jurisdiction would not violate the Fourth Amendment by arresting a suspect in a neighboring state. 546 F.3d 944, 951 n.5 (8th Cir. 2008).

[81]    In the Eleventh Circuit, evidence that a police officer's supervisors and state prosecutors believed that probable cause existed is strong evidence that the police officer lacked the requisite malice to be liable for malicious prosecution. *Williams v. Scott*, 682 F. App'x 865, 867 (11th Cir. 2017). While Defendant Hopkins does not appear to have consulted with his supervisors prior to applying for the warrant, both the Sheriff's Office and the Solicitor's Office had to sign off on the extradition request before it issued. Defs.' Statement of Material Facts ¶¶ 136-42. The Plaintiff asserts that these entities' review of the extradition request was cursory. But, in the Court's view, the mere fact that the Sheriff's Office and the Solicitor's Office signed off on the request is strong evidence that Defendant Hopkins did not act with malice in seeking the Plaintiff's arrest and extradition.

[82]    The parties dispute whether the Plaintiff admitted guilt as a

22

## 2. Whether Defendant Cobb County and Defendant Hopkins in his official capacity are liable under § 1983

Municipalities are not vicariously liable for the constitutional violations of its police officers under § 1983.[83] Instead, a plaintiff seeking to hold a municipality liable under § 1983 must show that a municipal policy, custom, or practice caused the constitutional deprivation.[84] The Plaintiff claims that she was extradited pursuant to the Defendant's policy of arresting individuals merely for using expletives.[85] The Plaintiff's § 1983 claims against Defendant Cobb County necessarily fail because there is no underlying constitutional violation.[86] The Plaintiff's claims against Defendant Hopkins in his official capacity fail because they are duplicative of the claims brought against Defendant Cobb County itself.[87] Therefore, summary judgment is warranted

---

condition of the *nolle prosequi* being entered. *See supra* note 37.

[83] *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016)(citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 693–94 (1978)).

[84] *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378 (1989); *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1328 (11th Cir. 2015); *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)).

[85] Compl. ¶¶ 161, 168.

[86] *Beshers v. Harrison*, 495 F.3d 1260, 1264 n.7 (11th Cir. 2007) ("We need not address the Appellant's claims of municipal or supervisory liability since we conclude no constitutional violation occurred."); *Vineyard v. Cty. of Murray, Ga.*, 990 F.2d 1207, 1211 (11th Cir. 1993) ("Only when it is clear that a violation of specific rights has occurred can the question of § 1983 municipal liability for the injury arise.").

[87] For the purposes of § 1983, suits against municipal officers are in fact suits against the municipal entity itself. *Brandon v. Holt*, 469 U.S. 464, 471 (1985). When a municipal entity is a party to a § 1983 suit, claims against

23

as to all § 1983 claims brought against Defendant Cobb County and against Defendant Hopkins in his official capacity.

The Court further notes that the Plaintiff has not introduced a scintilla of evidence at summary judgment to substantiate her initial allegation that Defendant Cobb County has a policy of "arresting individuals... in retaliation for the use of profanity."[88] In her response brief, the Plaintiff instead argues that Defendant Cobb County has failed to train its police officers on what constitutes protected speech.[89] In the Court's view, the Plaintiff is impermissibly attempting to amend her Complaint by offering this shifting rationale for Defendant Cobb County's liability in her response brief.[90] In any event, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train,"[91] and "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."[92] The

---

its agents in their official capacities are due to be dismissed. *Cf. Bell v. Houston Cty., Ga.*, No. 5:04-CV-390 (DF), 2006 WL 1804582, at *12 (M.D. Ga. June 27, 2006); *Summers v. City of Dothan, Ala.*, No. 1:08CV-78MEF, 2009 WL 230128, at *1 (M.D. Ala. Jan. 30, 2009).

[88]    Compl. ¶ 161.

[89]    Pl.'s Resp. to Defs.' Mot. for Summ. J., at 10 ("Essentially, the department has an obvious need to train about the application of the First Amendment, to protect speech that does not involve a true threat[.]").

[90]    *See Dennis*, 498 U.S. at 451.

[91]    *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

[92]    *Id.*, at 62.

Plaintiff has not substantiated any such pattern of similar constitutional violations. To the contrary, the only example of a constitutional violation offered up by the Plaintiff is the Defendants' handling of her own case. The Plaintiff cites no precedent to support her argument that the alleged constitutional violation in this case falls within the "narrow range of circumstances" that could give rise to single-incident municipal liability.[93] Therefore, even if Defendant Hopkins had deprived the Plaintiff of her constitutional rights, the Plaintiff has failed to produce evidence from which to hold Defendant Cobb County liable under *Monell* and its progeny.

## B. State Law Claims

The Plaintiff brings state law claims of false arrest, false imprisonment, and malicious prosecution against Defendant Hopkins. The Plaintiff also brings a malicious prosecution claim against Defendant Cobb County. Defendant Hopkins asserts official immunity as a defense to all state law claims brought against him in his individual capacity. Defendant Cobb County asserts sovereign immunity as a defense to the malicious prosecution claim. The Defendants also argue that the Plaintiff's state law claims fail on the merits. The Court turns now to Defendant Hopkins' claim of official immunity.

---

[93] *See id.*, at 63-64.

## 1. Whether Defendant Hopkins is Entitled to Official Immunity

"A suit against a public officer acting in his or her official capacity will be barred by official immunity unless the public officer (1) negligently performed a ministerial duty, or (2) acted with actual malice or an actual intent to cause injury while performing a discretionary duty."[94] There can be no reasonable dispute that Defendant Hopkins was acting with discretion when he investigated the case, submitted a warrant application to the magistrate judge, and recommended to his superiors that the Plaintiff be extradited from Alabama.[95] Thus, in order to overcome Defendant Hopkins' claim of official immunity, the Plaintiff would need to show that Defendant Hopkins acted with actual malice or with the intent to cause the Plaintiff harm. "In the context of official immunity, actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact."[96] The Plaintiff has not presented a scintilla of evidence showing that Defendant Hopkins acted with actual malice or the intent to cause injury. Indeed, the Plaintiff has conceded that

---

[94] *Tant v. Purdue*, 278 Ga. App. 666, 668 (2006) (quoting *Wanless v. Tatum*, 244 Ga. App. 882, 536 S.E.2d 308 (2000)).

[95] *Id.* ("[W]e conclude that Officer Purdue was performing a discretionary act when he concluded from his investigation that Tant had been driving recklessly and under the influence and when he signed the arrest warrant application to that effect.").

[96] *Peterson v. Baker*, 504 F.3d 1331, 1339 (11th Cir. 2007) (quoting *Adams v. Hazelwood*, 271 Ga. 414, 415 (1999)) (internal quotation marks omitted).

Defendant Hopkins genuinely believed that he had probable cause to arrest the Plaintiff.[97] Absent any evidence of actual malice, Defendant Hopkins is entitled to official immunity on all state law claims brought against him in his individual capacity.

### 2. Whether Defendant Cobb County is Entitled to Sovereign Immunity

Under Georgia law, the doctrine of sovereign immunity protects state and local government entities from legal action unless immunity has been specifically waived by the General Assembly.[98] The Court is not aware of, and the Plaintiff does not identify, any express waiver of sovereign immunity that would apply to the Plaintiff's state law claims. Therefore, Defendant Cobb County is entitled to sovereign immunity.[99]

The state law claims against Defendant Hopkins in his official capacity are also due to be dismissed because "any cause of action averred against a municipal police officer in his official, as opposed to his personal/individual, capacity is in reality suit against the municipality."[100] Defendant Hopkins is,

---

[97]   *See* Pl.'s Resp. to Defs.' Statement of Material Facts ¶ 94.

[98]   *Gilbert v. Richardson*, 264 Ga. 744, 745 (1994) (citing Ga. Const. of 1983, Art. I, Sec. II, Par. IX).

[99]   *Cf. City of Atlanta v. Heard*, 252 Ga. App. 179, 181 (2001) (municipal defendant protected by sovereign immunity from the plaintiff's defamation, false arrest, and malicious prosecution claims).

[100]   *Conley v. Dawson*, 257 Ga. App. 665, 667 (2002) (quoting *Pearson v. City of Atlanta*, 231 Ga. App. 96, 101(5) (1998)) (punctuation omitted).

27

therefore, also entitled to sovereign immunity on the Plaintiff's state law claims brought against him in his official capacity.

Because the Court has concluded that Defendant Hopkins and Defendant Cobb County are immune from suit, it need not reach the merits of the Plaintiff's claims. The Court notes, however, that the record evidence cannot plausibly establish that Defendant Hopkins lacked probable cause or acted with malice. Failure to establish these elements would be fatal to the Plaintiff's state law claims even if the Plaintiff could overcome the Defendants' immunity defenses.

## IV.    Conclusion

For the reasons stated above, the Defendants' Motion for Summary Judgment [Doc. 65] is GRANTED.

SO ORDERED, this 26 day of July, 2019.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge